



DOLLAR GENERAL - D BATTERY - POS STICKER DIFFERENCES



ABOVE - DG NORTH OLMSTED 07.29.22



ABOVE DG AMHERST, OH 07.23.22





DOLLAR GENERAL STORE #19792
SPRING VILLAGE, OH 440-517-1669

                                        6.00 S

EVEREADY GOLD A60-5
  039800030061*150

                                        $6.00
SUBTOTAL                                 $0.39
Tax
TOTAL   SALE                            $6.39
CASH                                  $10.00
CHANGE                                  $3.61

ITEMS 1
2022-07-18  20:09:50  15252 02          7732

890161641128939116710916919919916817321171

--------- CUT HERE ---------

* Complete survey at dgcustomerfirst.com *
*           For a chance to              *
* WIN A $100 Gift Card *
* weekly Drawings. Must be 18+ to enter. *
*           Survey Code                  *

         1511-8616-1096-643

--------- CUT HERE ---------

SATURDAY JULY 23RD ONLY!

$5 OFF $25

$5 off your purchase of
$25 or more

$25 or more (pretax) after all other DG
  discounts. Limit one DG $2, $3, or $5
off store coupon per customer. Excludes
phone, gift and prepaid financial cards,
prepaid wireless handsets, Rug Doctor
rental, propane, tobacco and alcohol.
            X3592S62227875321





DOLLAR GENERAL







DOLLAR GENERAL





DOLLAR GENERAL STORE #15252
SHEFFIELD VILLAGE, OH 440-517-1665

COKE ZERO 16OZ CAN                    1.25 T
04900055441-110

SUBTOTAL                             $1.25
Text                                 $0.08
TOTAL     SALE                       $1.33
CASH                                 $2.00
CHANGE                               $0.67

ITEMS 1
2022-07-16   12:01:24   15252 01            4786

8 9011 169500 6 39 156 52 51 01 91 699 65 02 1132

------------- CUT HERE -------------
* Complete Survey at dgcustomerfirst.com *
*            for a chance to            *
* WIN A $100 Gift Card *
* Weekly Drawing. must be 18+ to enter  *
*           Survey Code                 *
* ▓▓▓▓▓▓ 1531-5553-1096-692 ▓▓▓▓▓▓      *
------------- CUT HERE -------------

EXCLUSIVE OFFER
DG DIGITAL COUPONS
SATURDAY JULY 16TH ONLY!
► SIGN UP TODAY ◄
Sign up at dg coupons.c

DOLLAR GENERAL



# EXHIBIT 2

PIF Number:    10000636

Case Name:    WHITE V. KENT; JOSEPH CHEVROLET

Case Number:    CB60520



RECEIVED

1988

ATTORNEY GENERAL OF OHIO
CONSUMER FRAUDS & CRIMES
PUBLIC INSPECTION FILE

IN THE COURT OF APPEALS

FIRST APPELLATE DISTRICT OF OHIO

HAMILTON COUNTY, OHIO

RECEIVED

ATTORNEY GENERAL
CONSUMER FRAUDS
PUBLIC INSPECTION FILE

DEBBIE WHITE,

       Plaintiff-Appellee,   :

vs.                  *

JEFFREY KENT          :
    and
JOSEPH CHEVROLET,      :

       Defendants-Appellants.:

APPEAL NO. C-860520
TRIAL NO. 85CV-06570

D E C I S I O N.

F I L E D
COURT OF APPEALS

MAR 30 1988

CLERK OF COURTS

Civil Appeal from: Hamilton County Municipal Court

Judgment Appealed from is: Affirmed in Part: Judgment Entered
                      and Cause Remanded

Date of Judgment Entry on Appeal: March 30, 1988

David J. Boyd, Esq., 500 Executive Building, 35 East Seventh
Street, Cincinnati, Ohio 45282, for Plaintiff-Appellee.

Lindhorst & Dreidame and Jay R. Langenbahn, Esq., 1700 Central
Trust Center, 201 East Fifth Street, Cincinnati, Ohio 45202, for
Defendants-Appellants.

PER CURIAM.

This **cause** came on to be heard upon the appeal, the tran-
script of the docket, journal entries and original papers; from
the Hamilton County Municipal Court, the transcript **of** the pro-
ceedings, the briefs and the argument of counsel.

Plaintiff-appellee Debbie White (White) was considering the
purchase **of** a new **car** in November 1984. White, accompanied by
her sister and her mother, met with **a** salesman of Joseph Chevro-
let, Jeffrey Kent (collectively, appellants). White explained
that she was interested in a Chevrolet Cavalier station **wagon**
with certain optional equipment.

No vehicle meeting White's specification was available at
appellants' place of business, but Kent suggested that he might
be able to find a suitable car using a computerized **automobile**
"locator" and to have the car brought to his lot. After some nego-
tiations, a "deal" was arranged whereby White agreed to pay **about**
$235.00 per month **for** the car:. An exact price could not be
determined because the particular car which White selected had
not yet been delivered to appellants. Eventually, White
purchased the car.

After she examined the paperwork on the car, it became obvious
to White that $2000.00 had been added to the sticker price of the
automobile. Appellants' explanation for this additional amount
was that White's trade-in was also increased by $2000.00 in order
to give White **some** "equity" in the new car to **make** financing

- 2 -

easier.  As the $2000.00 increase over the sticker price was completely offset by the $2000.00 increase on the value of the trade-in, appellants contended that the price of the new car to White was unchanged from what she had agreed upon.

White was not satisfied with this explanation because she understood the transaction differently.  White believed that she was initially going to receive additional value for her old car rather than a reduction in the sticker price of the new car:. Therefore, according to White, the additional $2000.00 increase in the value of the trade-in should ultimately have been deducted from the original sticker price of the new car,

Subsequently, White filed suit in the Hamilton County Municipal Court under the Ohio Consumer Sales Practices Act, R.C. Chapter 1345.  After a trial by jury, a verdict was returned in favor of White.  Actual damages were found to be $3100.00, and they were trebled pursuant to the statute to $9,300.00.  Further, attorney fees were awarded in the amount $1500.00 for a total judgment in the amount of $10,800.00.

Appellants have assigned three errors to the trial court in this timely appeal.  The first and second assignments of error are interdependent and will be considered together:

First assignment of error

The trial court erred to the prejudice of the appellant [sic] by submitting the issue of treble damages to the jury.

Second assignment of error

- 3 -

> The jury **verdict** is prejudicial to the appellant
> [*sic*] in that it is against the manifest weight of the
> evidence.

It is clear from the complaint that an unfair consumer prac-
tice was being alleged against appellants, **and** therefore, if the
judgment is not against the manifest weight of the evidence, then
the trial court properly submitted the question of treble damages
to the jury.  Accordingly, the result of the second assignment of
error may well be determinative on the first assignment of error.

In the trial **of** a civil suit it has been long established
that "[j]udgments supported by some competent, credible evidence
going to all the essential elements of the case will not be
reversed by a reviewing court as being against the manifest
weight of the evidence." *C. E. Morris Co. v. Foley Construction
Co.* (1978), 54 Ohio St. 2d 279, 376 N.E.2d 578, syllabus.  We
hold that the evidence fully supports the jury's finding of an
unfair consumer practice.

At trial, White, her sister and her mother all testified
that the $2000.00 increase in the value of White's trade-in was
in lieu of a reduction in the sticker price of the new car.
While White argues that **numerous** unfair and unconscionable
consumer practices were committed, **we** think it is sufficient to
note that the statute specifically states that it is **an** unfair
consumer practice for a supplier to indicate that a "specific
price advantage exists, if it does not," R.C. 1345.02(B)(8).  If
the jury believed white and her witnesses, then it could have

- 4 -

found that both Kent, the salesman, and Gary Cunningham, the finance manager, told White that a price advantage existed where it did not.  The testimony was competent and not incredible.

Appellants argued strongly, both at trial. and In oral argument before us, that the deal a5 described by White would not have made economic sense because the dealership would have sold the new car for less than what it coot them, and that White would have received more than she paid for her trade-in after driving it for about two years and putting about 14,000 additional miles on the odometer.

certainly the jury did not have to find that the dealership was planning on losing money,  All that was necessary was that the jury believed that White was told of a price which was not the true price,  The jury could have thought that appellants never had any intention of actually selling the car for the amount they told White, but rather that they intended to increase the purchase price from the beginning of the negotiations.  The jury was completely free to believe all, part or none of what any witness said.  *State v. Antill* (1964), 176 Ohio St. 61, 197 N.E.2d 548.  Accordingly, the jury's verdict was not inconsistent with the manifest weight of the evidence, and the trial court did not err in submitting the issue of treble damages to the jury. The first and second assignments of error are overruled.

In the third assignment of error, appellants claim that the trial court erred in overruling their motion for judgment

notwithstanding the verdict or for a new trial.  In both the
memorandum in support of the motion to the trial court and their
appellate brief *to this* court, appellants incorporate their argu-
ments from the first and second assignments of error.  For the
reasons expressed in the foregoing, we overrule the third assign-
ment of error,

Finally, we note that the amount awarded, **$10,800.00,**
exceeded the **$10,000.00** jurisdictional limit of the municipal
court, R.C. 1901.17.  Therefore, **we vacate** said judgment and we
enter the judgment that the trial court should **have** entered,
**$10,000.00,** pursuant to App. R. 12(B).  **We** remand the **cause** to
the trial court for a determination of **how** the reduction should
be divided between the trebled damages **and** the **award** of attorney
fees.  In all other respects the judgment is affirmed.

**BLACK, P.J., DOAN and KLUSMEIER, JJ.**


**PLEASE NOTE:**

The Court **has** placed of record its own entry in this **case** on
tne date of the **release** of this Decision.

**RECEIVED**
ATTORNEY GENERAL OF OHIO

## IN THE COURT OF COMMON PLEAS
## DELAWARE COUNTY, OHIO

NOV 2 7 2003

CONSUMER PROTECTION SECTION
PUBLIC INSPECTION FILE

| | | |
|---|---|---|
| STATE OF OHIO, *ex rel.* | ) | |
| JIM PETRO | ) | |
| ATTORNEY GENERAL OF OHIO | ) | CASE NO. 01-CVH 01-018 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE W. DUNCAN WHITNEY |
| v. | ) | |
| | ) | |
| LEVEL PROPANE GASES, INC. | ) | AGREED ENTRY & ORDER |
| | ) | |
| Defendant. | ) | |

This matter came to be heard upon the filing of a Complaint by the Attorney General of

Ohio on January 8, 2001. Subsequent to the filing of the Complaint, Defendant Level Propane

Gases, Inc. (Level) filed a Chapter 11 Bankruptcy proceeding in the United States Bankruptcy

Court, N.D. Ohio (Case No. 02-16172). A prior agreement between the parties was rejected

pursuant to 11 U.S.C. Section 365. By signing this Agreed Entry, Level submits to the personal

jurisdiction of this court and consents to the entry of this Agreed Entry and Order ("Agreed

Order").

This Agreed Order shall apply to and bind Level, its shareholder(s), officers, directors,

agents, servants, employees, subsidiaries, successors or assigns, and any person or entity acting

through any corporation or other propane businesses whose acts, practices, or policies are, in any

respect, directed, formulated, or controlled by Level.

**TERMINATION CODE** 5

## DEFINITIONS

As used in this Agreed Order, the following terms shall have the following meanings:

1.  "Advertisement" means any oral, written, graphic, electronic or pictorial statement or representation directed to consumers in the course of business, regardless of the medium of communication employed.

2.  "Business Day(s)" means Monday through Friday of any given week.

3.  "Calendar Day(s)" means Sunday through Saturday of any given week.

4.  "Clear and conspicuous" means that the statement, representation or term being disclosed is of such size, color, contrast and audibility and is so presented as to be readily noticed and understood by the person to whom it is being disclosed. The disclosure of any written statement or term must be in close proximity to the terms it purports to clarify, modify, or explain.

5.  "C.O.D." means cash on delivery.

6.  "Consumer" means a person as defined in R.C. §1345.01(D).

7.  "Contract" means the written agreement entered into between Level and the consumer prior to the filing of this Agreed Order.

8.  "Contract Price" means any of the following:

    A.  a clear, conspicuous, and unambiguous written price representation by Level to a consumer or consumers;

    B.  an oral price quote by any employee or agent of Level including, but not limited to, drivers and customer service representatives that is confirmed by Level;

    C.  a web site quote.

9.     "Courtesy Fill" means Level will deliver propane to consumers according to Level's estimate of the consumers' propane use.

10.    "Lock-in Agreement" means Level's offer to consumers whereby consumers may guarantee a price of propane for a stated price per gallon for a stated period of time.

11.    "Market Price" means the actual price at which propane gas is currently sold, or has recently been sold, in the open market at retail in the usual and ordinary course of trade and competition between sellers and buyers equally free to bargain, as established by records of sales or the last reported price at which the propane sold.

12.    "Material Terms and Conditions" means the price per gallon of propane, delivery date, and fees/charges that the consumer may be required to pay, any conditions affecting the price or delivery date, and any other terms or conditions which may affect the consumer's choice of a propane supplier.

13.    "Minimum Usage" means the minimum number of gallons of propane that a consumer must purchase during the term of the contract in order to avoid the payment of any Underutilization Fee or any other fee or penalty.

14.    "Pre-Buy Agreement" means Level's offer to consumers whereby consumers may pre-pay for a specific amount of propane for a stated price per gallon for a stated period of time by paying for such propane in advance of delivery.

15.    "Represent," "Representing," and "Representation" mean and include any communication, including any advertisement whether made in writing, orally, by picture, design, or other graphics, and made by any means or mode of transmission including, but not limited to, telephonic or electronic transmission.

3

"Represent," "Representing" and "Representation" include any implied representation.

16.    "Underutilization Fee" means the amount a consumer must pay if the consumer does not purchase the minimum number of gallons of propane required under the terms of the contract.  It is also the total amount charged to the consumer as calculated by the minimum gallons of propane gas that must be purchased multiplied by the quoted price per gallon, less the actual gallons purchased multiplied by the actual price charged.

17.    "Will Call" means Level will deliver propane to consumers after the consumers request delivery of propane.

## AGREED FINDINGS OF FACT

1.    Defendant is a corporation incorporated in the State of Ohio.

2.    Defendant was engaged in the business of soliciting for sale and selling liquid petroleum gas, commonly known as propane, and related products and services in Delaware County and numerous other counties throughout Ohio.

3.    Defendant regularly advertised its propane product throughout the State of Ohio.

4.    Level required its customers to enter into written agreements for the purchase of propane.

## AGREED CONCLUSIONS OF LAW

1.    This Court has jurisdiction over the subject matter, issues, and parties to this judgment.

2.    The Ohio Attorney General is the proper party to bring this action and venue is proper.

3.      The Consumer Sales Practices Act, R.C. §1345.01 et seq. governs the business

practices of the Defendant.

4.      At all relevant times hereto, Level was a "supplier" as that term is defined in R.C.

§1345.01 (C) in that it engaged in the solicitation of "consumer transactions" as

that term is defined in R.C. §1345.01(A).

## CONCLUSIONS OF LAW ASSERTED BY THE ATTORNEY GENERAL AND ADOPTED BY THE COURT

1.      A propane supplier's practice of making offers in written or printed

advertisements without stating clearly and conspicuously in close proximity to the

words stating the offer any material exclusions, reservations, limitations,

modifications, or conditions to obtaining the offered propane and/ or the offered

price is an unfair and deceptive act or practice in violation of the Exclusions and

Limitations in Advertisements Rule, O.A.C. §109:4-3-02(A)(1) and the Consumer

Sales Practices Act, R.C. §1345.02(A).

2.      A propane supplier's practice of failing to honor guaranteed or promised prices is

an unfair, deceptive and unconscionable act or practice in violation of the

Consumer Sales Practices Act, R.C. §1345.02(A), R.C. §1345.02(B)(8) and R.C.

§1345.03(A).

3.      A propane supplier's practice of refusing to disclose the price of the propane that

it is delivering to consumers is an unfair, deceptive, and unconscionable act or

practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A), R.C.

§1345.03(A), R.C. §1345.03(B)(5), and the Repairs or Services Rule, O.A.C.

§109:4-3-05.

4.   A propane supplier's practice of advertising that its propane prices are "low" or the "lowest" available when its prices are sometimes substantially higher than its competitors, or promising high quality service, when such is not the case is an unfair and deceptive act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.02(B)(8).

5.   A propane supplier's practice of advertising or promising prompt delivery of propane to consumers without having taken, at the time of the advertisement or promise, commercially reasonable action to insure prompt delivery of propane to consumers is an unfair and deceptive and unconscionable act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A), R.C. §1345.03(A), and the Failure to Deliver Rule O.A.C. §109:4-3-09.

6.   A propane supplier's practice of failing to respond to valid consumer complaints and/or to provide adequate customer service within a reasonable period of time is an unfair and deceptive act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.03(A).   A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by failing to provide consumers who have purchased a propane tank from it with proof of purchase and ownership of the tank.

7.   A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by failing to incorporate all material terms in its contracts with consumers, including clear and conspicuous disclosure of terms relating to price and any pricing program (i.e. Pre-pay, lock-in), any delivery program (i.e. Courtesy Fill, Will Call), minimum usage, tank delivery and pick-up, disconnection, reconnection, pump-outs, and the terms and conditions under

6

which the propane supplier can change the delivery or payment status of the consumer (i.e., from Courtesy Fill to Will Call, C.O.D. or Payment in Advance).

8.    A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by failing to honor its Lock-In Agreement prices as specified in the contract with the consumer.

9.    A propane supplier commits an unfair, deceptive and unconscionable act in violation of R.C. §§1345.02 and 1345.03 by incorporating in its consumer contract, or attempting to enforce, any provision that permits the propane supplier to unilaterally modify the contract with the consumer or any provision that limits the consumer to a specific court of competent jurisdiction when commencing a civil action against the supplier.

10.    A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by misrepresenting any material terms or conditions in connection with the advertisement, offer, sale, or delivery of propane to consumers.

11.    A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 if it fails to use commercially reasonable efforts and standards to determine and provide an appropriately sized propane tank designed to meet the consumer's propane needs.

12.    A propane supplier commits an unfair, deceptive and unconscionable act in violation of R.C. §§1345.02 and 1345.03 by charging a consumer more for an emergency delivery of propane than for a regular delivery of propane when the emergency need was the result of the propane supplier's failure to provide a timely deliver of propane.

7

13.    Until the earlier of (i) a propane supplier obtaining a written agreement with the consumer for the delivery of propane and/or the setting up of a tank, or (ii) a propane supplier receiving payment for the delivery of propane to a consumer, such supplier will be required to remove the tank and any other related equipment at no expense to the consumer if so requested by the consumer in writing.

14.    A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 if it fails to disclose during an oral price quote the price per gallon of propane, the time period for which the quoted price will be available, the time period for which the quoted price applies, and all other material terms and conditions applicable to receiving propane at the quoted price.

## NON-ADMISSION BY LEVEL

Level does not admit that it has engaged in any wrongdoing and the court makes no finding that Level has operated in violation of the Consumer Sales Practices Act §1345.01 et seq. Level enters into this Agreed Order with the Attorney General to resolve the matters before this Court.

## ORDER

For the purpose of effecting this Agreed Order, Level agrees and it is therefore ORDERED, ADJUDGED, and DECREED that:

A.    Level is permanently enjoined from engaging in any act or practice in violation of the Consumer Sales Practices Act, R.C. §§1345.01 et seq., any act or practice prohibited by the Conclusions Of Law Asserted By The Attorney General And Adopted By The Court, and the following described acts:

1.    Charging the consumer for any propane gas not delivered to the consumer; unless the consumer's agreement with Level specifically sets forth the terms and

8

conditions for imposing such a charge and all such terms and conditions have been met;

2.   On a consumer's request therefor, failing to provide all Level consumers who have purchased tanks from Level with proof of ownership necessary for these consumers to exercise their right to have their own tanks filled by Level's competitors;

3.   Falsely representing that Level's prices will remain "level," or words of similar import, or that Level purchases fuel prior to any heating season so as to ensure the customer will not be harmed by rise in fuel prices;

4.   Failing to honor its Lock-in Agreement prices for the term specified in Level's existing Contract with a consumer provided that the consumer is not in material breach of the Contract, said material breach including but not limited to non-compliance with payment terms;

5.   Employing or continuing to employ any unfair or deceptive practices against any consumer who, in good faith, refuses to pay Level for any increased cost of propane or any other fee not specifically authorized by its existing Contract;

6.   Utilizing or enforcing any provision purporting to reserve to Level the unfettered right to modify the Contract unilaterally; or, (ii) any provision limiting the consumer to commencing an action against Level only in a specific court of competent jurisdiction;

7.   Subject to the requirements of paragraph 7 of Section B of this Agreed Entry and Order, and except for purposes of asserting its rights to the following fees for purposes of setoff against a consumer claim, collecting or attempting to collect

9

any fees, charges, penalties or monies Level claims is owed by any Level consumers prior to June 6, 2002 for the following:

a.   underutilization fees;

b.   tank pick up fees and taxes;

c.   tank pump-out fees;

d.   the difference between the price of propane set forth in the consumer's Lock-in Agreement and the cost actually charged. If consumers have not yet paid the increased amount to Level, Level will adjust the consumers' bills to reflect the price of propane set forth in the consumer's pre-buy or lock-in Contract;

e.   for those consumers who were promised a certain price per gallon in writing including, but not limited to, any correspondence or delivery receipts, the difference between the price actually charged and the price of propane represented in the writing;

f.   for those consumers who received delivery of propane after the end of the term of the Contract at an increased price per gallon above the price set forth in their Contracts and who canceled their Contract at the end of the term due to the increase in the price per gallon of propane but were billed at the increased amount, the difference between the amount charged and the amount set forth in their Contracts for any propane used by the consumer.

g.   any lock-in fee if the consumer did not receive the price promised by Level at any time the locked-in price promise was to remain effective;

10

h.  any fees, deposits, or other payments not disclosed in Level's Contract with the consumer or not lawfully charged including, but not limited to, surcharges for consumer's use of credit (or credit card), adjusting the customer's account to zero balance when the customer had a credit balance in the account, miscellaneous fees, deviation fees, and retrieval fees;

i.  any late payment penalty, without qualification, that has been assessed based upon an underutilization charge, a tank pump-out fee, a disconnection fee, reconnection fee, tank pick-up fee, or the difference between the cost quoted for propane and the cost actually charged; and

j.  any late payment fee or returned check fee where such fees were not permitted by law.

B.  Level agrees to comply with the following business practices;

1.  Level shall take commercially reasonable steps to direct all credit reporting agencies to remove any negative or derogatory information regarding Level, which is incorrect, within thirty (30) days of receiving a complaint by a consumer which is supported by evidence that the reporting is incorrect.

2.  Level shall not charge more than the amount allowable under applicable state or federal law for a late payment and shall not collect or attempt to collect any such late charge not specifically disclosed in Level's Contract with the consumer.

3.  Level shall not use any debt collection practices, which are in violation of Ohio or federal laws.

4.  Level shall maintain records, correspondence, receipts and any other documentation relating to all accounts for consumers of Level for a period of

11

three (3) years while they are customers of Level and for a period of two (2) years after termination of any relationship between Level and the consumer.

5. Level shall comply with Ohio's referral sales statutes.

6. Level shall give written notice of any bankruptcy filing to the Attorney General within five (5) business days of such filing.

7. In the event Level or majority voting control of its stock is sold, transferred or conveyed, or Level is merged with and into another entity, the documents that evidence such a transaction shall include a provision that, except for purposes of asserting its rights to the following fees for purposes of setoff against a consumer claim, prohibits Level's successor from collecting or attempting to collect any fees, charges, penalties or monies Level claims is owed by any Level consumers prior to June 6, 2002 for the following:

a. underutilization fees;

b. tank pick up fees and taxes;

c. tank pump-out fees;

d. the difference between the price of propane set forth in the consumer's Lock-in Agreement and the cost actually charged. If consumers have not yet paid the increased amount to Level, Level will adjust the consumers' bills to reflect the price of propane set forth in the consumer's pre-buy or lock-in Contract;

e. for those consumers who were promised a certain price per gallon in writing including, but not limited to, any correspondence or delivery receipts, the difference between the price actually charged and the price of propane represented in the writing;

12

    f.    for those consumers who received delivery of propane after the end of the term of the Contract at an increased price per gallon above the price set forth in their Contracts and who canceled their Contract at the end of the term due to the increase in the price per gallon of propane but were billed at the increased amount, the difference between the amount charged and the amount set forth in their Contracts for any propane used by the consumer.

    g.    any lock-in fee if the consumer did not receive the price promised by Level at any time the locked-in price promise was to remain effective;

    h.    any fees, deposits, or other payments not disclosed in Level's Contract with the consumer or not lawfully charged including, but not limited to, surcharges for consumer's use of credit (or credit card), adjusting the customer's account to zero balance when the customer had a credit balance in the account, miscellaneous fees, deviation fees, and retrieval fees;

    i.    any late payment penalty, without qualification, that has been assessed based upon an underutilization charge, a tank pump-out fee, a disconnection fee, reconnection fee, tank pick-up fee, or the difference between the cost quoted for propane and the cost actually charged; and

    j.    any late payment fee or returned check fee where such fees were not permitted by law.

Provided, however, such successor in interest may assert its right to such fees if a consumer first brings a legal action against such successor and such successor asserts such rights solely for purposes of setoff against the consumer claim; provided, however, such rights to setoff

only may be exercised in compliance with R.C. §1345. Except as expressly provided in this section 7, the Attorney General hereby withdraws its objection to the transfer of some or all of Level's (and its affiliate's) assets free and clear of any interest the Attorney General may have in such assets or with regard to Level or its affiliates.

8.     Upon reasonable request, Level shall provide copies of or access to the requested books, records and documents to the Attorney General at any time upon reasonable notice, and further make available other information to the Attorney General relating to compliance of this Agreed Entry & Order. Level shall make the requested information available at Level's offices or, at Level's election, shall deliver copies of the requested information to the Attorney General, in each case, within fourteen (14) business days of such request. This Section shall in no way limit the Attorney General's right to obtain documents, information, or testimony pursuant to any federal or Ohio law, regulation or rule.

9.     Level shall immediately inform its employees and representatives acting in a supervisory capacity of the existence of, and terms and conditions of, this Agreed Entry And Order and shall direct those persons and/or entities to comply with this Agreed Entry and Order.

10.     Level shall implement and maintain business practices designed in a commercially reasonable manner to minimize customer service related concerns including, but not limited to: failure to provide deliveries, repeated missed delivery dates, inability by consumers to reach Level's customer service representatives, billing questions immediately turned over to Level's collection department regardless of the circumstances, and other billing disputes.

14

11.    Level shall not renew any consumer's existing Contract unless that Contract conforms to the terms of this Agreed Entry And Order and all applicable laws.

12.    Level shall not enter into any Contract with a consumer to provide that consumer with propane unless the Contract conforms to the terms of this Agreed Entry And Order and all applicable laws.

13.    On filing and entry of this Agreed Order, notwithstanding the "Governing Law" paragraph in Level's Contracts, Level hereby agrees not to object to consumer disputes being litigated in the jurisdiction in which the consumer resides. Level further agrees that its consumer contracts are subject to the consumer protection laws of the states in which the consumer resides.

C.    The parties acknowledge that the Attorney General, in his complaint, sought reimbursement for consumers damaged by the alleged illegal conduct of Level. The parties originally contemplated that this case would be settled in conjunction and coordination with the settlement of a class action known as Larry Mick, et al. v. Level Propane Gases, Inc., United States District Court for the Southern District of Ohio, Eastern Division, Case No. C-2-98-959, a class action covering all Ohio consumers potentially eligible for damages through the Attorney General's instant action with the consumer class represented by private counsel. These consumer claims are now subject to, and being addressed in, the pending Level bankruptcy action known as In Re Level Propane Gases, Inc., et al., Debtors, Chapter 11 Case No. 02-16172 (Jointly Administered), United States Bankruptcy Court, Northern District of Ohio, Judge Randolph Baxter presiding.

D.    It is hereby ORDERED that Level shall not represent, directly, or indirectly, that the Attorney General has sanctioned, condoned, or approved any part or aspect of the Defendant's business operation.

15

E.    It is hereby ORDERED that Level is assessed a civil penalty pursuant to R.C. §1345.07(D) in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00). Two Hundred Thousand Dollars is suspended on the condition that Level not violate the terms of this Agreed Entry & Order. The parties hereto agree that such civil penalty is a pre-petition unsecured claim against Level in the amount of Fifty Thousand Dollars ($50,000) pursuant to this remunerative provision, and, to the extent that Level violates the terms of this Agreed Entry & Order, that such civil penalty will be a pre-petition unsecured claim for up to an additional Two Hundred Thousand ($200,000) pursuant to this remunerative provision.

F.    It is hereby ORDERED that Level shall pay Two Hundred and Seventy Five Thousand Dollars ($275,000.00) to the Attorney General for attorney fees and investigation costs. The parties hereto agree that such payment is a pre-petition unsecured claim in the amount of Two Hundred and Seventy-Five Thousand Dollars ($275,000) pursuant to this remunerative provision.

G.    The Attorney General shall give Level fourteen (14) calendar days notice before filing a motion or other pleading seeking contempt of court or other sanctions for violation of this Agreed Entry & Order . The notice shall be in writing and set forth those provisions in the Agreed Entry & Order that the Attorney General believes have been violated. The fourteen (14) calendar days notice period shall provide an opportunity for Level to respond to the assertions of the Attorney General and the parties may use the notice period to attempt a resolution of the concerns. Upon receipt of the written notice, Level may request a meeting with the Attorney General (or a staff person designated by the Attorney General) for the purpose of attempting to resolve the concerns set forth in the Attorney General's notice. The Attorney General shall not unreasonably deny the request for such a meeting. The giving of such notice shall not prevent the Attorney General from beginning such proceeding following the expiration of the fourteen

(14) calendar day period. The Attorney General reserves his right, if there are exigent circumstances regarding Level's service to its Ohio customers, to by-pass the fourteen (14) calendar day notice period and immediately take any and all legal actions to address those exigent circumstances.

     H.    The Attorney General may notify or serve Level as provided under this Agreed Entry & Order or in any subsequent action at the following address and telephone number:

> H. Jeffrey Schwartz, Esq.
> Benesch, Friedlander, Coplan & Aronoff LLP
> 2300 BP Tower, 200 Public Square
> Cleveland, Ohio 44114-2378
> (216) 363-4500

Level shall notify the Attorney General in writing of any change in the notice/service person or contact information.

     I.    Level, if necessary, may notify the Attorney General under this Agreed Entry & Order at the following address and telephone number:

> Mr. David M. Dembinski
> Assistant Attorney General
> Consumer Protection Section
> 30 East Broad Street, 14th Floor
> Columbus, Ohio 43215
> (614) 644-9618

If Mr. Dembinski is unavailable, Level may notify the Attorney General at the following address and telephone number:

> Senior Deputy Attorney General
> Consumer Protection Section
> 30 East Broad Street, 14th Floor
> Columbus, Ohio 43215
> (614) 644-9618

     J.    Failure of the Attorney General to timely enforce any term, condition, or requirement of this Agreed Entry & Order shall not provide, nor be construed to provide, Level a

defense for noncompliance with any term of this Agreed Entry & Order or any other law, rule, or
regulation; nor shall it stop or limit the Attorney General from later enforcing any term of this
Agreed Entry & Order or seeking any other remedy available by law, rule, or regulation.

JUDGE W. DUNCAN WHITNEY

APPROVED:

JIM PETRO
Attorney General

DAVID M. DEMBINSKI
Ohio Sup. Ct. Atty. No. 0006978
MICHAEL S. ZIEGLER
Ohio Sup. Ct. Atty. No. 0042206

Assistant Attorneys General
Consumer Protection Section
30 East Broad Street
State Office Tower - 14th Floor
Columbus, Ohio 43215-3428
614/644-9618

Counsel for Plaintiff

JOHN A. GLEASON
Ohio Sup. Ct. Atty. No. 0039150
Benesch, Friedlander, Coplan & Aronoff LLP
88 East Broad Street, Suite 900
Columbus, Ohio 43215-3506
614/223-9300

Counsel for Level Propane Gases, Inc., Debtor
and Debtor-in-Possession

18



Office of

# TOM ORLANDO
**Lorain County Clerk of Court of Common Pleas**
Lorain County Justice Center, 225 Court St, 1st Floor, Elyria, OH 44035

Public Docket Information

### *NORMAN HUSAR V/S DOLGEN MIDWEST LLC*    Case Number: **22CV207195**

**Case Details**

Type Of Action: Other Civil-CV
Judge:            Miraldi, Judge James
Filed On:         10/11/2022

**Parties**

| Name | Birth Date | Party | Address | Attorney(s) |
|------|-----------|-------|---------|-------------|
| HUSAR, NORMAN | N/A | P | C/O DANNLAW 15000 MADISON AVE LAKEWOOD, OHIO 44107 | |
| DOLGEN MIDWEST LLC | N/A | D | C/O CORPORATION SERVICE COMPANY 3366 RIVERSIDE DR,STE 103 UPPER ARLINGTON, OHIO 43221 | |

**Filter Docket**

☐ Show All          ☐ FILING          ☐ REQUEST

☐ FEES

Filter

| Date | Type | Description |
|------|------|-------------|
| 10/11/2022 | N/A | Filing fee of $300.00, paid by: DANN LAW FIRM CO LPA |
| 10/11/2022 | N/A | Receipt #: 22-0023571 Processed. |
| 10/11/2022 | FILING | COMPLAINT FILED. |
| 10/11/2022 | REQUEST | REQUEST FOR SERVICE FILED. |
| 10/11/2022 | N/A | SUMMONS W/COPY OF COMPLAINT SENT CERTIFIED MAIL TO: DOLGEN MIDWEST LLC ARTICLE #9414726699042202719822 |
| 10/19/2022 | N/A | Certified Mail Return : Article # : 9414726699042202719822, Delivered Date : 10/14/2022, Reason : Signed Receipt for Certified Mail Returned and Filed., Party : DOLGEN MIDWEST LLC, Note : |
| 11/14/2022 | FILING | NOTICE OF REMOVAL FILED BY DEFT |
| 11/17/2022 | N/A | Defendant has timely filed a notice of removal to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. Sec. 1446. Therefore, the clerk of courts shall transfer the above-captioned case to United States District Court for the Northern District of Ohio, forthwith. |

11/17/2022 FEES        FEES ADDED:

**Print Docket**        **Close**

CMCSch,Cat12,Parker

# U.S. District Court
## NORTHERN DISTRICT OF OHIO (Cleveland)
## CIVIL DOCKET FOR CASE #: 1:22-cv-02044-JG

Husar v. Dolgen Midwest, LLC                          Date Filed: 11/14/2022
Assigned to: Judge James S. Gwin                      Jury Demand: Both
Demand: $5,000,000                                    Nature of Suit: 890 Other Statutory Actions
Case in other court: Lorain County Common Pleas, 22-cv-207195   Jurisdiction: Federal Question
Cause: 28:1441 Petition for Removal

**Plaintiff**

**Norman Husar**                    represented by   **Brian D. Flick**
*on behalf of himself and those similarly*           DannLaw
*situated*                                           15000 Madison Avenue
                                                     Lakewood, OH 44107
                                                     513-645-3488
                                                     Fax: 216-373-0536
                                                     Email: bflick@dannlaw.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Marc E. Dann**
                                                     Dann Law
                                                     15000 Madison Avenue
                                                     Lakewood, OH 44107
                                                     216-373-0539
                                                     Fax: 216-373-0536
                                                     Email: notices@dannlaw.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Michael A. Smith , Jr.**
                                                     Dann Law
                                                     15000 Madison Avenue
                                                     Lakewood, OH 44107
                                                     216-373-0539
                                                     Fax: 216-373-0536
                                                     Email: msmith@dannlaw.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Whitney E. Kaster**
                                                     DannLaw
                                                     15000 Madison Avenue
                                                     Lakewood, OH 44107
                                                     216-452-1029
                                                     Email: wkaster@dannlaw.com
                                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Dolgen Midwest, LLC**<br>*doing business as*<br>Dollar General | represented by | **R. Trent Taylor**<br>McGuireWoods<br>800 East Canal Street<br>Richmond, VA 23219<br>804-775-1182<br>Fax: 804-225-5409<br>Email: rtaylor@mcguirewoods.com<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Travis C. Gunn**<br>McGuireWoods<br>800 East Canal Street<br>Richmond, VA 23219<br>804-775-7622<br>Fax: 804-698-2039<br>Email: tgunn@mcguirewoods.com<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Brenna L. Fasko**<br>Thompson Hine<br>3900 Key Center<br>127 Public Square<br>Cleveland, OH 44114-1291<br>216-566-5500<br>Fax: 216-566-5800<br>Email: brenna.fasko@thompsonhine.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Elizabeth B. Wright**<br>Thompson Hine - Cleveland<br>3900 Key Tower<br>127 Public Square<br>Cleveland, OH 44114<br>216-566-5500<br>Fax: 216-566-5800<br>Email:<br>elizabeth.wright@thompsonhine.com<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 11/14/2022 | 1 | **Notice of Removal** from Lorain County Common Pleas, case number 22CV207195 with jury demand, Filing fee paid $ 402, receipt number AOHNDC-11710412. Filed by Dolgen Midwest, LLC. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1 - Summons and Complaint, # 3 Exhibit 2 - Complaint without missing page, # 4 Exhibit 3 - State Court |

| | | |
|---|---|---|
| | | Notice of Notice of Removal, # [5](#) Exhibit 4 - Financial Information). (Wright, Elizabeth) (Entered: 11/14/2022) |
| 11/14/2022 | [2](#) | Corporate Disclosure Statement identifying Corporate Parent Dollar General Corporation for Dolgen Midwest, LLC, filed by Dolgen Midwest, LLC. (Wright, Elizabeth) (Entered: 11/14/2022) |
| 11/14/2022 | [3](#) | **Motion** for attorney Travis C. Gunn to Appear Pro Hac Vice. Filing fee $ 120, receipt number AOHNDC-11710467, filed by Defendant Dolgen Midwest, LLC. (Attachments: # [1](#) Declaration in Support of Gunn PHV). (Wright, Elizabeth) (Entered: 11/14/2022) |
| 11/14/2022 | [4](#) | **Motion** for attorney Trent Taylor to Appear Pro Hac Vice. Filing fee $ 120, receipt number AOHNDC-11710490, filed by Defendant Dolgen Midwest, LLC. (Attachments: # [1](#) Declaration in Support of Taylor PHV). (Wright, Elizabeth) (Entered: 11/14/2022) |
| 11/14/2022 | [5](#) | **Motion** for leave to file exhibit under partial seal, filed by Defendant Dolgen Midwest, LLC. (Wright, Elizabeth) (Entered: 11/14/2022) |
| 11/14/2022 | | Judge James S. Gwin assigned to case. (L,MI) (Entered: 11/14/2022) |
| 11/14/2022 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Thomas M. Parker. (L,MI) (Entered: 11/14/2022) |
| 11/14/2022 | [6](#) | Magistrate Consent Form issued. (L,MI) (Entered: 11/14/2022) |
| 11/16/2022 | [7](#) | Supplement to **Motion** for attorney Travis C. Gunn to Appear Pro Hac Vice; **Motion** for attorney Trent Taylor to Appear Pro Hac Vice, filed by Dolgen Midwest, LLC. (Related document(s) [3](#) , [4](#) ). (Attachments: # [1](#) Exhibit A - Declaration of R. Trent Taylor, # [2](#) Exhibit B - Declaration of Travis C. Gunn) (Wright, Elizabeth) (Entered: 11/16/2022) |
| 11/21/2022 | | **Order** [non-document] granting Motion for appearance pro hac vice by attorney Travis C. Gunn for Dolgen Midwest, LLC. Local Rule 5.1(c) requires that attorneys register for NextGen CM/ECF and file and receive all documents electronically. NextGen CM/ECF registration can be done online at www.pacer.gov. Login with your PACER credentials, go to the Maintenance tab, click Attorney Admissions/E-File Registration, select Ohio Northern District Court and then select Pro Hac Vice. <span style="color:red">If you were previously granted pro hac vice status and are already registered to file electronically, it is not necessary to register again.</span> Judge James S. Gwin on 11/21/22. (Related Doc # [3](#) )(T,A) (Entered: 11/21/2022) |
| 11/21/2022 | | **Order** [non-document] granting Motion for appearance pro hac vice by attorney R. Trent Taylor for Dolgen Midwest, LLC. Local Rule 5.1(c) requires that attorneys register for NextGen CM/ECF and file and receive all documents electronically. NextGen CM/ECF registration can be done online at www.pacer.gov. Login with your PACER credentials, go to the Maintenance tab, click Attorney Admissions/E-File Registration, select Ohio Northern District Court and then select Pro Hac Vice. <span style="color:red">If you were previously granted pro hac vice status and are already registered to file electronically, it is not necessary to register again.</span> Judge James S. Gwin on 11/21/22. (Related Doc # [4](#) )(T,A) (Entered: 11/21/2022) |
| 11/21/2022 | [8](#) | **Motion** to dismiss for failure to state a claim filed by Defendant Dolgen Midwest, LLC. (Attachments: # [1](#) Memorandum in Support, # [2](#) Exhibit A - SOP 88 (Customer Overcharges)(Wright, Elizabeth) (Entered: 11/21/2022) |
| 11/21/2022 | [9](#) | **Answer** to Complaint with Jury Demand (Related Doc # [1](#) ) filed by Dolgen Midwest, LLC. (Wright, Elizabeth) (Entered: 11/21/2022) |
| 11/28/2022 | [10](#) | **Case Management Conference Scheduling Order** signed by Judge James S. Gwin on 11/28/22 setting a case management conference on 1/11/2023 at 12:00 PM to be held by video conference (Cleveland) before Judge James S. Gwin. This Court requires the |

| | | |
|---|---|---|
| | | attendance of (1) all parties, (2) lead counsel, and (3) a representative with full authority for settlement purposes. (Attachments: # 1 Parties' Planning Meeting Report, # 2 Local Rule 30.1)(T,A) (Entered: 11/28/2022) |
| 12/02/2022 | 11 | Unopposed **Motion** for extension of time until 01/09/2023 to file response/reply to 8 **Motion** to dismiss for failure to state a claim filed by Plaintiff Norman Husar. Related document(s) 8 . (Flick, Brian) (Entered: 12/02/2022) |
| 12/08/2022 | | **Order** [non-document] entered by Judge James S. Gwin on 12/8/22 granting plaintiff's 11 Unopposed **Motion** for extension of time until 01/09/2023 to file response/reply to 8 **Motion** to dismiss for failure to state a claim . No further extensions. (T,A) (Entered: 12/08/2022) |
| 01/02/2023 | 12 | Preliminary Estimate/Budget of Amount of Fees and Expenses filed by Norman Husar. Related document(s) 10 .(Flick, Brian) (Entered: 01/02/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/04/2023 10:06:25 | | |
| **PACER Login:** | merinolawpc | **Client Code:** | 07457-Button |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-02044-JG |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **NORMAN HUSAR**, on behalf of himself and those similarly situated, | | |
| Plaintiff(s), | | |
| v. | | **Case Number** _____ |
| **DOLGEN MIDWEST, LLC** d/b/a DOLLAR GENERAL | | |
| Defendant. | | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, as well as the Class Action Fairness Act ("CAFA"), Defendant Dolgen Midwest, LLC ("Dollar General" or "Defendant") removes the above-entitled action from the Lorain County Court of Common Pleas, Lorain County, Ohio, to the United States District Court for the Northern District of Ohio, Eastern Division, on the grounds of original jurisdiction under CAFA. In support of this Notice of Removal, and in accordance with 28 U.S.C. § 1446, Dollar General states as follows:

### PROCEDURAL BACKGROUND

1.     Plaintiff Norman Husar, a citizen and resident of Ohio, filed a complaint in the Lorain County Court of Common Pleas, Lorain County, Ohio, on October 11, 2022, captioned *Norman Husar v. Dolgen Midwest, LLC d/b/a Dollar General*, Case No. 22-cv-207195 ("State Court Action").

2.     On October 14, 2022, process of this complaint was served on Dollar General's registered agent.