## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH WOLF, CARMEN WOLF, ON BEHALF OF THEMSELVES AND THOSE SIMILARLY SITUATED,<br><br>                            Plaintiff,<br><br>vs.<br><br>DOLGEN NEW YORK, LLC D/B/A DOLGEN,<br><br>                           Defendant. | Civil Case No.: 7:23-cv-00558-PMH<br><br>SECOND AMENDED CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs, Joseph Wolf ("Joseph") and Carmen Wolf, ("Carmen", collectively, the "Plaintiffs"), on behalf of themselves and those similarly situated, by way of Complaint, state:

### NATURE OF THE ACTION

1. This is a consumer protection class action against DOLGEN NEW YORK, LLC D/B/A DOLGEN ("DOLGEN") arising out of Defendant's policies and practices of regularly charging Plaintiffs and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at its Dollar General stores in New York.

2. The class action claims arise from Defendant's regular practice of charging customers a higher price at the cash register on various items than the price advertised on the in-store shelves, in violation of N.Y. GEN. BUS. LAW § 349, and New York common law on behalf of consumers.

### VENUE AND JURISDICTION

3.      The Court has personal jurisdiction over Defendant because it regularly conducts business transactions in this District and have committed the complained of acts in this District. For example, Defendant maintains a store in White Lake, New York, which is in this District.

4.      Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d)(2), as the amount in controversy is in excess of $5 million and Plaintiffs are citizens of a different state than Defendant.

## PARTIES

5.      Plaintiffs reside in East Elmhurst, New York and own a vacation home in Bethel, New York.

6.      Defendant DOLGEN who operates stores trading as "Dollar General" in the State of New York. DOLGEN is incorporated under the laws of the State of Kentucky with a principal place of business at 100 Mission Ridge, Goodlettsville, Tennessee.

## FACTS RELATED TO DOLGEN

7.      Plaintiffs and all others similarly situated are persons who shop at Dollar General stores in New York.

8.      DOLGEN operates dollar stores that offer a variety of inexpensive merchandise, including home products, seasonal products, consumables, and apparel. The company's business model is about offering products at competitive prices (typically less than $10) in a convenient, small-store format. Its core customer category includes low-to-middle-income customers. The company's stores are located in convenient locations that are easily accessible to its customers. It follows a small-box format and the stores have an easy ''in and out'' shopping set-up.[1]

---

[1] See https://marketrealist.com/2017/04/dollar-general-why-small-format-stores-are-key/

9.    DOLGEN caters mainly to low-and-middle-income customers in rural and suburban areas. The company's core customers earn around $40,000 a year or below, $20,000 below the median income. Dollar General looks to build stores in rural areas where a big box retailer or grocery store is not within 15 or 20 miles. Around 75% of Dollar General stores are in towns with 20,000 or fewer people.[2]

10.    As of March 2022, DOLGEN owned and operated approximately Five-Hundred Fifty-Five (555) Dollar General stores in New York, with more locations scheduled to open.[3]

## FACTS RELATED TO PLAINTIFFS' TRANSACTIONS

11.    Plaintiffs regularly shop at the Dollar General located at 1334 NY-17B, White Lake, NY 12786 ("Dollar General White Lake").

12.    While shopping at Dollar General White Lake in late summer 2022, Joseph noticed discrepancies between the prices of merchandise advertised on the shelves and what they were charged and paid at checkout.

13.    When there was a price discrepancy, Plaintiffs were charged and paid more than the advertised price.

14.    In September 2022, Joseph made two purchases at the White Lake Dollar General store, using Carmen's credit card, of which Joseph is an authorized user, during which Defendant charged them a higher price for its merchandise than advertised shelf price. The discrepancies are outlined below:

(See **Exhibit 1:** Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|

---

[2] See https://www.cnn.com/2019/07/19/business/dollar-general-opposition
[3] *See* https://www.statista.com/statistics/1121086/number-of-dollar-general-stores-in-the-united-states-by-state/

| 18-Sep-22 | White Lake | Clover Valley | 2% Lactose Free Milk | $4.15 | $4.25 | $0.10 |
| 04-Sep-22 | White Lake | Clover Valley | 2% Lactose Free Milk | $4.15 | $4.25 | $0.10 |

15.    On or about October 10, 2022, a lawsuit was commenced against Defendant in the Superior Court of New Jersey, Law Division, Monmouth County, stylized *Ryan Button on behalf of himself and others similarly situated v. Dollar General Corporation, et al.*, assigned docket number MON-L-002774-22 (the "NJ Overcharge Matter"). A copy of the complaint, docket sheets, and an excerpt from the Notice of Removal is attached as **Composite Exhibit 2**[4].

16.    On or about November 4, 2022, Defendant was served with the summons and complaint in the NJ Overcharge Matter. *See Exh. 1*, p. 54 at ¶ 2.

17.    On or about October 11, 2022, another lawsuit was commenced against Defendant in the Court of Common Pleas, Lorain County, Ohio, stylized *Norman Husar, on behalf of himself and those similarly situated v. Dolgen Midwest, LLC d/b/a Dollar General*, assigned docket number 22-CV-207195 (the "OH Overcharge Matter").  A copy of the complaint, docket sheets, and an excerpt from the Notice of Removal is attached as **Composite Exhibit 3**[5].

---

[4] On December 5, 2022, the Defendant (under various entities) in the NJ Overcharge Matter removed the matter to the United States District Court for the District of New Jersey. As such, docket sheets for both the state court and federal court are attached.

[5]  On November 14, 2022, the Defendant (under various entities) in the OH Overcharge Matter removed the matter to the United States District Court for the Northern District of Ohio. As such, docket sheets for both the state court and federal court are attached

18.    On or about October 14, 2022, Defendant (under various entities) was served with the OH Overcharge Matter summons and complaint. *See Exh. 2*, p. 98 at ¶ 2.

19.    On or about November 1, 2022, the State of Ohio, through its Attorney General, commenced an action against DGC, stylized *State of Ohio ex rel. Attorney General Dave Yost v. Dollar General Corporation d/b/a Dollar General*, assigned docket number cv-2022-11-1812 (the "OH AG Matter"). A copy of the complaint and docket sheet is attached as **Composite Exhibit 4**.

20.    On or about November 9, 2022, DGC was served with the OH AG Matter summons and complaint. *See Exh. 3*, p. 8.

21.    The plaintiffs in the NJ and OH Overcharge Matters and the OH AG Matter all alleged that Defendant (under various entities) engaged in a practice of regularly charging consumers a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at Defendant's stores. *See Exhibits 1-4*.

22.    On or about December 11, 2022, Joseph, again using Carmen's credit card, made another purchase at the White Lake Dollar General store during which Dollar General *still* charged them a higher price for its merchandise than the advertised shelf price. The discrepancy is outlined below:

(See **Exhibit 5:** Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|---|---|---|---|---|---|---|
| 11-Dec-23 | White Lake | Land o Lakes | Low Fat Vanilla Yogurt | 3 for $2.00 | 3 for $2.25 | $0.25 |

23.     Defendant used the same procedures that they employed in charging a higher price than advertised to Plaintiffs when selling the same and/or similar merchandise to numerous other consumers in its New York stores.

24.     In the three-year period before the Complaint was filed, Defendant charged prices that were higher than advertised that were same or similar to the advertisements described, *supra*, to numerous consumers in its New York stores.

25.     It is Defendant's policy and practice to charge a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in Defendant's New York stores.

***Defendant Routinely Overcharges Consumers at a Rate Which Well Exceeds Acceptable Industry Standards.***

26.     The National Institute for Standards and Technology (NIST) is part of the U.S. Department of Commerce. *See* 15 U.S.C. § 272(a).

27.     One of the NIST's functions is to "cooperate with the States in securing uniformity in weights and measures laws and methods of inspection." *See* 15 U.S.C. § 272(a)(4).

28.     Through this, the NIST publishes an annual handbook which, amongst other functions, sets forth examination procedures for states to conduct price verification inspections in stores like Dollar General. The latest version of the handbook is NIST Handbook 130 (the "NIST Handbook"). *See* NIST Handbook, Part V[6].

29.     The Handbook further states "[a]ccuracy information, based on a percentage of errors found in a sample and the ratio of overcharges to undercharges, constitutes useful criteria for evaluating the "pricing integrity" of the store." *See* Handbook, Part V, Section 10.1.

---

[6] The 2022 Edition of the Handbook can be accessed at https://www.nist.gov/document/nist-hb130e2022 (last visited May 12, 2023).

30. The NIST Handbook states, in relevant part that "[t]he accuracy requirement for a sample must be 98 % or higher to "pass" a single inspection.". *See* NIST Handbook 130, at Part V, § 10.2.

31. For example, to be compliant under NIST Handbook 130, at Part V, § 10.2, a store would need to have charged a higher price than advertised on 2, or less, products out of 100 products examined per store.

32. Defendant, routinely throughout the proposed class period, charged prices higher than advertised more than the 2%-or-less rate that is purportedly acceptable by the NIST Handbook.[7]

33. Between Plaintiffs September 4 and September 18, 2023 visits to Dollar General, DOLGEN overcharged them on two (2) out of the three (3) items they purchased, or a 66.67% overcharge rate. *See* Exhibit 1.

34. Meanwhile, during Plaintiffs' December 11, 2022 visit to Dollar General, DOLGEN overcharged them on one (1) out of the four (4) items they purchased, or a 25% overcharge rate. *See* Exhibit 5.

35. Defendant has been audited by various state agencies in New York, which includes the Monroe County Department of Weights and Measures, New York State Department of Agriculture and Markets Bureau of Weights and Measures, Colombia County Weights & Measures, and Fulton County Department of Weights and Measures.  **See Composite Exhibit 6**.

---

[7] Plaintiffs do not concede the NIST Handbook is a defense to any of Plaintiffs' claims and expressly reserve all rights to contest any overcharge by Defendant as part of the causes of action stated herein.

36.     On November 17, 2022, Defendant was found to have charged a higher price than advertised on 78 out of 100 items sampled (78% overcharge rate). *Id.* at 16.

37.     On November 30, 2022, Defendant was found to have charged a higher price than advertised on 23 out of 75 items sampled (30.67% overcharge rate). *Id.* at 1.

38.     On December 5, 2022, Defendant was found to have charged a higher price than advertised on 6 out of 25 items sampled (24% overcharge rate). *Id.* at 7.

39.     On December 8, 2022, Defendant was found to have charged a higher price than advertised on 32 out of 100 items sampled (32% overcharge rate). *Id.* at 21.

40.     On December 27, 2022, Defendant was found to have charged a higher price than advertised on 23 out of 100 items sampled (23% overcharge rate). *Id.* at 11.

41.     Based on audits conducted by various state entities in New York, it is obvious that Defendant continually charged a higher price than advertised at rates well above the allegedly acceptable 2% within its stores over the last three years.

42.     The audits further demonstrate that Defendant maintains poor "pricing integrity" policies at its New York stores.

## CLASS ACTION ALLEGATIONS

43.     This action is brought and may properly proceed as a class action, pursuant to the provisions of Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs bring this action on behalf of themselves and all others similarly situated. Plaintiffs seek certification of the class defined as follows:

**CLASS**:

All consumers who at any time on or after the day three years prior to the date on which this Complaint was filed, paid more for merchandise than the advertised price labeled on the shelf at a Dollar General store located in New York.

Specifically excluded from any class is any judge or magistrate involved in this matter.

44.    The class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

45.    There are thousands if not tens or hundreds of thousands of consumers who meet the class definition.

46.    There are questions of law and fact common to the members of class. These common questions include but are not limited to:

     a.    Whether the mis-priced shelf price labels violate N.Y. GEN. BUS. LAW § 349;

     b.    Whether Defendant engaged in "consumer-oriented" conduct under N.Y. GEN. BUS. LAW § 349;

     c.    Whether Defendant's conduct was materially misleading under N.Y. GEN. BUS. LAW § 349;

     d.    Whether Defendant's practice is likely to mislead a reasonable consumer acting reasonably under the circumstances under N.Y. GEN. BUS. LAW § 349.

     e.    Whether Defendant's practice of charging consumers higher prices on merchandise than advertised was likely to mislead a reasonable consumer.

     f.    Whether Plaintiffs and members of the class suffered injury as a result of Defendant's conduct under N.Y. GEN. BUS. LAW § 349;

     g.    Whether Defendant should be enjoined from charging consumers higher prices on merchandise than advertised;

     h.    Whether Defendant's conduct evidences a high degree of moral culpability, or whether Defendant's conduct is so flagrant as to transcend mere carelessness, or

whether Defendant's conduct constitutes willful or wanton negligent or recklessness, so as to warrant punitive damages.

47.    Plaintiffs' claims are typical of the claims of the members of the class which he represents because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by Defendant in their dealings with Plaintiffs and putative class members.

48.    Plaintiffs have no interests antagonistic to those of the class.

49.    Plaintiffs will fairly and adequately protect the interests of the class, and have retained competent counsel experienced in the prosecution of consumer litigation and class actions.

50.    Proposed Class Counsel has investigated and identified potential claims in this action.

51.    Proposed Class Counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

52.    Defendant has acted, or refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

53.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the class are significant to those class members, the amount is modest compared to the expense and burden of individual litigation. A class action will cause an orderly and expeditious administration of the claims of the class, and will foster economies of time, effort, and expense.

54.    The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

55.    A class action will cause an orderly and expeditious administration of the claims of the subclass, and will foster economies of time, effort and expense.

56.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

## CLASS CLAIMS

### COUNT ONE (On Behalf of Plaintiffs and the Class)
### Violation of N.Y. GEN. BUS. LAW § 349

57.    Plaintiffs repeat and re-allege all of the prior allegations as if set forth at length herein.

58.    Defendant has engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. GEN. BUS. LAW § 349.

59.    Defendant's acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

60.    Defendant's misrepresentations and false, deceptive, and misleading statements and omissions with respect to charging consumers more than the price advertised on its unit price labels at Dollar General's New York stores, constitute deceptive practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. in violation of N.Y. GEN. BUS. LAW § 349.

61.    Defendant's false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase merchandise from Dollar General's New York stores.

62.    Defendant's improper consumer-oriented conduct is misleading in a material way in that it, inter alia, induced Plaintiffs and other Class Members to purchase and/or pay an overcharged price for Defendant's merchandise and goods.

63.    Defendant knew at the time it advertised via its unit price shelf labels certain goods to Class
members and prospective customers that the consumers would be charged a higher price
than advertised and that its promise was false because at the time of the unit price labeling
Defendant itself are in control of setting forth both the advertised price and the price
consumers are charged at checkout. This is further evidenced by Defendant's actions in
still overcharging its consumers as of December 11, 2022, two (2) months *after* two
separate lawsuits were filed against Defendant making similar allegations. As such, an
award of punitive damages for Defendant's conduct is appropriate under GBL 349.

64.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices,
Plaintiffs and the other members of the Class suffered and continue to suffer injuries based
on the difference of the price advertised on the shelf versus the price charged at checkout.
As a result of Defendant's recurring deceptive acts and practices, Plaintiffs and other Class
Members are entitled to monetary and compensatory damages, injunctive relief, restitution
and disgorgement of all moneys obtained by means of Defendant's unlawful conduct,
interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as
well as statutory damages of $50 per item of merchandise or good purchased pursuant to
GBL § 349.

65.    Plaintiffs and Class Members further seek equitable relief against Defendant. Pursuant to
N.Y. GEN. BUS. LAW § 349, this Court has the power to award such relief, including but
not limited to, an order declaring Defendant's practices as alleged herein to be unlawful,
an Order enjoining Defendant from undertaking any further unlawful conduct, and an order
directing Defendant to refund to Plaintiffs and the Class all amounts wrongfully
overcharged.

66.    Defendant know full well that it overcharges consumers, and the misrepresentations it makes with regard to its advertised prices were made for the purpose of inducing consumers to purchase merchandise at its New York stores, so that it can reap outrageous profits to the direct detriment of New York consumers without regard to the consequences its actions cause such consumers. As such, Defendant's actions are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, or accompanied by wanton and willful disregard for consumers' well-being. Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendant as follows:

*On behalf of themselves and all others similarly situated as to the Class*

a.    Certification of the class, as defined herein, for equitable relief pursuant to Rule 23(b)(2);

b.    Appointment of named Plaintiffs, Joseph Wolf and Carmen Wolf, as Class Representatives and appointment of their attorneys as Class Counsel;

c.    Injunctive relief requiring Defendant to provide an accounting identifying all members of the class;

d.    Injunctive relief requiring Defendant to provide an accounting of all overcharges during the class period;

e.    A declaratory judgment that Defendant violated GBL 349;

f.    A declaratory judgment that Defendant's actions in providing its New York customers with shelf advertisements that understate the actual price of the merchandise charged to its customers, like those Plaintiffs encountered, violate GBL 349.

g.      A declaratory judgment requiring Defendant to cease providing unlawful advertisements to its customers in New York and also to cease charging more than the price advertised on the shelf of its New York stores.

h.      Injunctive relief enjoining Defendant from engaging in future violations of GBL 349;

i.      Equitable relief requiring Defendant to disgorge all improper gains received due to their violations of New York state laws directly to identifiable class members, via a *cy pres* award;

j.      Injunctive relief requiring Defendant to provide notice to all members of the class that their purchases at Dollar General stores in New York may have violated of GBL 349 and that if they were harmed or aggrieved or sustained and ascertainable loss that they can bring individual actions for treble damages, statutory damages, and punitive damages under the GBL 349 and for an award of attorneys' fees and costs pursuant to GBL 349;

k.      An award of reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the court's equitable powers and the GBL 349;

l.      Certification of the Class, as defined herein, for monetary relief pursuant to Rule 23(b)(3);

m.      Actual damages;

n.      Statutory damages of $50.00 per violation;

o.      Treble actual damages for willfully or knowingly violating GBL 349;

p.      Reasonable attorneys' fees and costs of suit in connection with this action, pursuant to GBL 349.

q.      Punitive damages pursuant to GBL 349;

r.    Pre-judgment and post-judgment interest; and

s.    Such other and further relief as the Court deems equitable and just.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues subject to trial.

*/s/ Javier L. Merino*
Javier L. Merino, Esq.
THE DANN LAW FIRM. PC
1520 U.S. Hwy. 130 – Suite 101
North Brunswick, NJ  08902

Adam A. Edwards*
aedwards@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

Gary Klinger*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
221 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
 gklinger@milberg.com

J. Hunter Bryson
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
hbryson@milberg.com

*Pro Hac Vice* application forthcoming

*Attorneys for Plaintiffs, on behalf of*
*themselves and others similarly*
*situated*

Date: May 30, 2023