**McGuireWoods**

McGuireWoods LLP
1251 Avenue of the Americas
20th Floor
New York, NY 10020-1104
Phone: 212.548.2100
Fax: 212.548.2150
www.mcguirewoods.com

Philip A. Goldstein
Direct: 212.548.2167
pagoldstein@mcguirewoods.com

June 17, 2024

**By ECF**
Hon. Philip M. Halpern, U.S.D.J.
The Hon. Charles L. Brieant Jr. Federal Building and Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

      Re:    *Wolf et al. v. Dolgen New York, LLC*, Case No. 7:23-cv-00558-PMH
               **Request for Summary Judgment Pre-Motion Conference**

Dear Judge Halpern,

Pursuant to § 4(E)(vii) of your Individual Practices and the April 29, 2024 Order (ECF 57), Dolgen New York, LLC ("DG") seeks a pre-motion conference for its summary judgment motion.

Plaintiff J. Wolf (whose father is Plaintiffs' counsel here and who "warned" him about DG prices ***before*** the first purchase) took photos of the shelf prices ***before*** making his purchases to "verify that [DG] was charging accurate prices," yet claims he was unaware of what those prices were (itself fatal to Plaintiffs' claim). Also, Plaintiffs attempt to require perfection on prices when both federal and state law allow reasonable variations. Plaintiffs' claim does not pass the proverbial smell test, and summary judgment should be granted.

**1. GBL § 349.** For their sole claim, a GBL § 349 claim, Plaintiffs cannot prove that DG's conduct was "materially misleading" or that they "suffered injury as a result of the allegedly deceptive act or practices." *Telesco v. Starbucks Corp.*, 682 F. Supp. 3d 397, 403 (S.D.N.Y. 2023).

***First***, DG's conduct was not misleading because "the allegedly deceptive practice was fully disclosed" to Plaintiffs. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020).[1]

---

[1] *See also, e.g., id.* at 501-02 (ads for "Angus Steak" sandwiches—made with beef, not steak—not misleading because they had "multiple zoomed-in images that clearly depict the 'steak' in the Products as a beef patty"); *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *7-8 (S.D.N.Y. July 9, 2014) (18% gratuity on bill not misleading when disclosed on menu); *Sands v. Ticketmaster-New York, Inc.*, 207 A.D. 687, 687 (1st Dep't 1994) (similar).

Hon. Philip M. Halpern, U.S.D.J. June 17, 2024 | Page 2

In pricing practices cases, "the focus is whether the amount of the charge is disclosed." *Zuckerman v. VMG Direct Mktg., Inc.*, 290 A.D.2d 330, 330-31 (1st Dep't 2002) (dismissing overcharging claim because "promotional materials se[t] forth the exact amount to be charged"). At New York DG stores, "the amount of the charge" is always "disclosed." *Id.* Before a customer pays for a product, the point-of-sale price is displayed on a customer-facing electronic display. (DG 56.1 ¶¶ 49-52.) These displays (of which Plaintiffs took photos) show customers the actual price of each item they are buying before they pay. (*Id.* ¶¶ 58-59, 80, 107, 111-12.) DG discloses, before payment, precisely what Plaintiffs allege was deceptively withheld: the point-of-sale price. The evidence shows that the electronic displays at the White Lake store were working at all times when Plaintiffs made the purchases at issue. (*Id.* ¶ 82.)

**Second**, DG's conduct was not misleading also because it was not "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Himmelstein v. Matthew Bender & Co.*, 37 N.Y.3d 169, 178 (2021). DG prominently displays the purchase price on the point-of-sale display.[2] DG also immediately provides its customers a receipt memorializing the price for each product purchased. (DG 56.1 ¶¶ 53-57, 62.) Receipts enable customers "to check whether [they] have been correctly charged" before leaving the store. *Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 8 (Ill. Ct. App. 1997).[3] And, DG provides opportunities for customers to question the price charged. Where there is a discrepancy between point-of-sale price and shelf price, DG's price match policy honors the lower one; there is also a refund policy.[4] (DG 56.1 ¶¶ 68-72.) Many

---

[2] *See also, e.g.*, *Grgat v. Giant Eagle, Inc.*, 135 N.E.3d 846, 852 (Ohio Ct. App. 2019) (retailer not liable when a "customer is explicitly informed" of the price "on the computer screen . . . at the checkout"); *Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 249 (Neb. App. 2007) (no deceptive acts because, among other things, the cash register display).
[3] *See also, e.g.*, *Kahn v. Walmart, Inc.*, 2023 WL 2599858, at *3 (N.D. Ill. Mar. 21, 2023) (dismissing case over price discrepancies because the receipt permitted customers "to compare the prices [the retailer] charged [them] with the advertised shelf pricing[, which] dispelled any potential deception"); *Grgat*, 135 N.E.3d at 852 (finding no deception when the price was "also set out in writing in the customer's receipt"); *Reinbrecht*, 742 N.W.2d at 249 (similar).
[4] *See also, e.g.*, *Tudor*, 288 Ill. App. 3d at 210-11 (a "money-back guarantee if the scanned price differs from the shelf price" helped defeat a consumer deception claim based on price discrepancies).

DG customers in New York took advantage of these policies, **including Plaintiff**. (*Id*. ¶¶ 51-53, 58.) Also, Plaintiff produced *no* evidence to show how reasonable consumers interpret the challenged conduct in light of the above; DG's expert testified that the above should work to prevent price discrepancies in DG stores and that customers use such safeguards. (*Id*. ¶¶ 69-70.)

**Third**, Plaintiffs cannot establish that the price discrepancies were *materially* misleading. *See Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp.2d 410, 413 (S.D.N.Y. 2004). A material deception "involves information that is important to consumers," "likely to affect" their purchasing decisions. *Id.* at 414.[5] The "deception" alleged here is a small discrepancy between three items' shelf prices and their point-of-sale prices—a total of $0.45 for all three products. (DG 56.1 ¶¶ 10, 12, 16, 19.) Plaintiffs offered no evidence that they (or anyone else) would *not* have purchased the products had they known that the shelf price did not match the point-of-sale price. (*Id.* ¶¶ 124-25, 138-39, 152-53.) Also, Plaintiffs *kept* shopping at DG after learning of the price issues and made no effort to avoid paying the higher price when doing so. (*Id.* ¶¶ 65, 66, 171.)

**Fourth**, Plaintiffs cannot prove actual injury, that is, that they "purchased a product and did not receive the full value of [the] purchase." *Alexandre v. Alcon Labs., Inc.*, 2024 WL 623707, at *4 (S.D.N.Y. Feb. 14, 2024) (Halpern, J.). "In the consumer goods context, . . . . a plaintiff must [prove] something more than . . . deception; for example, that the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health." *Id.*[6] Plaintiffs have no evidence that the price of the at-issue products was inflated or affected their health. They can prove only that the price was mislabeled at the shelf. That is not actual injury.

---

[5] *See also, e.g.*, *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp.3d 241, 247-48 (S.D.N.Y. 2019) (dismissing GBL claims when alleged misrepresentation about a product "is not likely to affect consumers' decision in purchasing the product," the representation was not immaterial).

[6] *See also, e.g.*, *Segovia v. Vitamin Shoppe, Inc.*, 2017 WL 6398747, at *1 (S.D.N.Y. Dec. 12, 2017) (no actual injury when the plaintiff "did not provide the prices of competing products for comparison," nor "testify at any point in his deposition that but for Defendant's lactase-specific claims, he would have been unwilling to pay Defendant's price").

***Fifth***, Plaintiffs cannot prove "causation under the [GBL]," which requires evidence that they "saw the relevant misleading statements before" purchasing the products, *Wise v. Combe Inc.*, 2024 WL 1178851, at *6 (S.D.N.Y. Mar. 19, 2024) (Halpern, J.), and then "made the purchases as a result of [those] misrepresentations," *Lin v. Canada Goose US, Inc.*, 640 F. Supp.3d 349, 360 (S.D.N.Y. 2022). Plaintiffs have no such evidence. Mrs. Wolf never saw the shelf prices for the products Mr. Wolf bought. (DG 56.1 ¶ 29.) And Mr. Wolf said that he paid no attention to the shelf price for at least two of the products and does not contend that he made any purchases *because of* the lower shelf price. (*Id.* ¶¶ 84, 100, 114, 124, 138, 152.) Plaintiffs cannot prove causation.

**2. Other Statutes and Regulations.** It is "a complete defense" if "the act or practice is . . . subject to and complies with the rules and regulations of" a federal agency. GBL § 349(d). One agency, the National Institute for Standards and Technology ("NIST"), publishes NIST Handbook 130 to govern price accuracy at retail stores, which has been adopted by New York. (DG 56.1 ¶¶ 97-106.) *See* 1 N.Y.C.R.R. 220.14. New York also enacted its own, almost-identical law, stating that "[p]enalties may only be imposed for . . . [o]vercharges found in a sample selected using the procedures . . . of this section when overcharges number more than two percent of the sample." N.Y. Agric. & Mkts. Law § 197-b(3)(a). These laws do not penalize price discrepancies if, pursuant to pricing audits, there are less than 2% price discrepancies at a store; they functionally permit some reasonable variation. (DG 56.1 ¶ 74.) Also, the New York law allowing a 2% rate of price discrepancies prevails over the GBL statute prohibiting deception. *See Bursco v. Braun*, 645 N.E.2d 724, 727 (N.Y. 1994) (holding that specific act repeals general act if they conflict).[7]

Plaintiffs have no evidence that the White Lake store at issue failed an audit where more than 2% of products had a price discrepancy. (DG 56.1 ¶ 77.) The price discrepancies at issue

---

[7] NIST Handbook 44 and New York law (1 N.Y.C.R.R. 220.2(a)) require that cash register displays be positioned so a reasonable consumer can accurately read and observe them; this occurred here. This too bars Plaintiffs' claim.

were thus reasonable variances and comply with federal and state law, foreclosing their GBL claim. Plaintiffs should not be permitted to impose a rule that narrows these reasonable variations.

**3. Voluntary Payment.** The voluntary payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003).[8] Before their transactions, Plaintiffs knew of purported price discrepancies at DG, had been "warned" by Mr. Wolf's father (counsel in this case) about those price discrepancies, and were acting on that knowledge. (DG 56.1 ¶¶ 5, 162-64, 167, 170.) Mr. Wolf even took photos of the shelf prices *before* purchase for two transactions and did so one minute after the other transaction. (*Id*. ¶¶ 86-87, 89, 98, 100, 110.) But Plaintiffs never brought these price discrepancies to the attention of DG employees. (*Id*. ¶¶ 65-66.) The voluntary payment doctrine bars their claim.

**4. Injunctive Relief.** Customers allegedly deceived into buying a product are unlikely to be deceived again and so "are not likely to encounter future harm of the kind that makes injunctive relief appropriate." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). Plaintiffs know of and are on the lookout for potential price discrepancies. (DG 56.1 ¶ 68, 109, 127.) They will not encounter future harm and lack standing to seek injunctive relief. *See Berni*, 964 F.3d at 147.

**5. Punitive Damages.** "[P]unitive damages, as generally understood, are unavailable under [GBL] § 349." *Guzman v. Harris*, 2017 WL 4386369, at *2 (S.D.N.Y. Sept. 29, 2017).

                                              Respectfully Submitted,
                                              */s/ Philip A. Goldstein*
                                              Philip A. Goldstein

Enclosure; cc: All Counsel of Record (via ECF)

---

[8] *See also, e.g.*, *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006) (the doctrine "bar[s] recovery by any RCN subscriber who, having experienced slower than advertised service, continued to pay for and use RCN's high speed internet service"); *Wurtz v. Rawlings Co.*, 2016 WL 7174674, at *6-*8 (E.D.N.Y. Nov. 17, 2016) (the doctrine applies to GBL claims).