

Columbus | Cincinnati | Cleveland | New Jersey | New York

Javier L. Merino, Esq.*

201-355-3440  JMerino@DannLaw.com  216-373-0536
Direct Telephone  Email  Fax

June 26, 2024

**Via ECF**
Hon. Philip M. Halpern, U.S.D.J.
The Hon. Charles L. Brieant Jr. Federal Building and Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

      Re: *Wolf et al. v. Dolgen New York, LLC*, Case No. 7:23-cv-00558-PMH
           Opposition to Request for Summary Judgment Pre-Motion Conference

Dear Judge Halpern,

      Pursuant to § 4(E)(vii) of Your Honor's Individual Practices and April 29, 2024 Order (D.E. 57), Joseph Wolf and Carmen Wolf ("Wolfs") oppose Dollar General's ("DG") request for a pre-motion conference for its summary judgment motion.

      DG does not dispute it overcharged the Wolfs and failed hundreds of pricing audits. Indeed, a DG executive conceded its practices cause consumers like the Wolfs to be "mad" and "humiliated" while other consumers noted the practices amounted to a "bait and switch", were "illegal", that a consumer "will obviously be angry" over a $0.20 overcharge, and even noted that DG "could get sued" for a $0.76 overcharge. When drawing all factual inferences in the Wolfs' favor, they have established that any motion for summary judgment by DG would be futile. Thus, as discussed herein, DG's request for a pre-motion conference should be denied.

      **1. GBL 349**. As set forth below, the Wolfs have established that DG's overcharging was "materially misleading" and that by paying for the overcharges, they "suffered injury as a result of" DG's deceptive acts and practices. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

      Whether an act is materially misleading is defined objectively and looks to whether the act is likely to mislead a reasonable consumer acting reasonably under the circumstances. *Spagnola*

NJ Address  DannLaw.com  NY Address
1520 U.S. Highway 130, Suite 101  877-475-8100  42 Broadway, 12th Floor
North Brunswick, NJ 08902  *Licensed in NJ and NY  New York, NY 10007
  By Appointment Only

*v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Such a determination "is usually a question of fact." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013). **DG does not dispute the Wolfs' claims that the shelf labels falsely advertised the price charged at checkout**. (DG 56.1 ¶¶ 2-3, 5-8, 43, 115-117). This is critical as "[t]he primary evidence in a consumer-fraud case arising out of allegedly false advertising is…the advertising itself." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). Inaccurate shelf unit labels are considered misleading. *See Vassilios Kukorinis v. Walmart, Inc.*, 2020 U.S. Dist. LEXIS 265146, at *14 (S.D. Fla. May 29, 2020); *see also Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 274 (S.D.N.Y. 2014) (representations of cost to print of $0.75 per page were "materially misleading")[1]. A DG executive conceded that overcharges make customers "mad" and "humiliated", while other DG consumers have complained that the practice of overcharging consumers is a "bait and switch" and is otherwise misleading confirms that overcharging "is likely to mislead a reasonable consumer". (DG 56.1 ¶¶ 61, 70).

Despite admitting to overcharging the Wolfs and other consumers, DG claims that since the overcharged price of the product allegedly appears on its register for a fleeting moment that it can be excused for misrepresenting the price of the product on its shelf label. DG's position is unavailing, and the cases it relies upon are readily distinguishable. DG's position contradicts the Second Circuit's holding that in deceptive marketing cases, "context is crucial." *Fink*, 714 F.3d at 742, and "a reasonable consumer should not be expected to consult," for example, a "panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018); *see also Engram v. GSK*

---

[1] DG's reliance upon *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp.3d 241, 247-48 (S.D.N.Y. 2019) is unavailing as the court found that "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount," and thus that the "natural" label was not misleading. *Id.* Conversely, reasonable consumers rely upon shelf labels to make pricing decisions, as DG's executive conceded.

*Consumer Healthcare Holdings (US) Inc.*, 2021 U.S. Dist. LEXIS 189143, at *10 (E.D.N.Y. Sept. 30, 2021) ("[C]ontextual information on the reverse of a product's packaging cannot overcome bold and blatant misstatements on the front.").[2] DG relies upon caselaw that are unrelated to the issues in this matter and are readily distinguishable. For example, in *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020), the disclosure was contained within the *same* television advertisement that contained the allegedly misleading practice. No such disclosure exists within the shelf label advertisement here. Neither *Zuckerman v. BMG Direct Marketing*, 290 A.D.2d 330, 737 N.Y.S.2d 14 (1st Dep't 2002) nor *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *7-8 (S.D.N.Y. July 9, 2014) are applicable as neither concerns false advertising. In *Grgat v. Giant Eagle, Inc.*, 135 N.E.3d 846, 852 (Ohio Ct. App. 2019) the promotion at issue was accurately and "expressly stated in the tag or sign", which is *exactly the opposite* of what occurred here, where DG misrepresented the price on the shelf tag.[3] At best, for DG, whether a reasonable consumer is still deceived by the false shelf labels after a register displays the overcharged price is for the jury to decide.[4]

Next, DG contends that since it provides customers with receipts *after* completing the purchase, it can be absolved of its misrepresentations. However, as set forth above "a reasonable consumer should not be expected to consult," for example, a "panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Mantikas*, 910 F.3d at 637. Furthermore, this position ignores that "[t]he primary evidence in a consumer-fraud case

---

[2] The court further recognized that in "claims that are outright false" context cannot save the day. *Id.* This is critical as DG's shelf labels undisputably misrepresented the price charged at checkout. ((DG 56.1 ¶¶ 2-3, 5-8, 43, 115-117)
[3] *Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 249 (Neb. App. 2007) suffers from substantially the same distinction.
[4] It is considered "materially misleading to suggest a product contains a greater proportion of a preferred ingredient than it actually does, even where there is a visible ingredients list that states the correct composition of the food." *Hoffmann v. Kashi Sales, L.L.C.*, 646 F. Supp. 3d 550, 558 (S.D.N.Y. 2022)

arising out of allegedly false advertising is…the advertising itself." *Fink*, 714 F.3d at 742.[5]

Yet, Plaintiffs proved actual injury through Defendants "causing [them] to pay more for defendant's products than [they] should have." *Dunham v. Sherwin-Williams Co.*, 636 F. Supp. 3d 308, 316 (N.D.N.Y. 2022). "This prong may be satisfied through an allegation that a plaintiff overpaid for the product." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 68 (E.D.N.Y. 2017)[6]. Here, DG does not dispute that for the products in question, Wolfs paid a higher price at checkout than the advertised shelf label. Therefore, the Wolfs "overpaid for the product[s]". *Id.*[7] DG's reliance upon *Alexandre v. Alcon Labs., Inc.*, 2024 WL 623707, at *4 (S.D.N.Y. Feb. 14, 2024) (Halpern, J.) and *Segovia v. Vitamin Shoppe, Inc.*, 2017 WL 6398747, at *1 (S.D.N.Y. Dec. 12, 2017), Inc., is misplaced as the Wolfs *did* prove they paid more for products than they should have. (DG 56.1 ¶¶ 2-3, 5-8, 43, 115-117)

"[B]y alleging that the defendant's misleading or deceptive advertising campaign caused a price premium", the Wolfs can show "both injury and causation". *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 99-100 (S.D.N.Y. 2022). "Under this theory of injury, an individual's awareness of an alleged misrepresentation plays no role in the causation analysis because reliance plays no role in it." *Id.* at 103. Timestamped photographic evidence proves that Mr. Wolf looked at a majority of the shelf labels *before* purchasing the products for his visits. (*Id.* ¶ 100). DG pleads no facts that Carmen did not likewise analyze her labels before purchase either.

---

[5] *Tudor* and *Kahn,* relied upon by DG, do not apply. In *Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207, 209 (1997), the court relied upon "the high accuracy rate of the scanners" to find no deceptive conduct. Here, Dollar General failed several hundred audits and has paid millions in fines. (56.1 ¶ 55). The holding in *Kahn v. Walmart, Inc.*, 2023 WL 2599858, at *3 (N.D. Ill. Mar. 21, 2023) was based on the Illinois' Consumer Fraud Act which imports on consumers "an unbounded duty of inquiry". *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 944 (7th Cir. 2001) (Wood, J., concurring). This conflicts with 2nd Circuit precedent that a consumer is not responsible to consult outside information to verify a misrepresentation. *See Mantikas*, 910 F.3d at 637.

[7] *See also Kukorinis*, 2020 U.S. Dist. LEXIS 265146, at *18 (damages sufficiently pled where "Walmart listed a unit price that did not reflect the price charged at check out").

Hon. Philip M. Halpern, U.S.D.J. | June 26, 2024 | Page 5

**2. Other Statutes and Regulations**. DG claims that compliance with the NIST is a "complete defense". First, NIST Handbook 130 is *not* a "rule" or "regulation". It merely is a non-regulatory publication that provides guidelines and best practices for the management of information security programs. "Moreover, GBL § 349's safe harbor provision does not apply to approvals by state agencies *at all*." *Patane v. Nestlé Waters N. Am., Inc.*, 478 F. Supp. 3d 318, 349 (D. Conn. 2020). Even if compliance with NIST Handbook 130 was somehow a complete defense, DG failed *hundreds* of audits at its stores statewide and has been cited for engaging in rampant overcharging practices, demonstrating failed compliance with the NIST. (DG 56.1 ¶¶ 55, 77).

**3. Voluntary Payment Doctrine**. DG's reliance upon the voluntary payment doctrine is misplaced as it does not apply the claims are predicated on a lack of full disclosure, such as here, where the claims are premised on DG's shelf labels failing to fully disclose accurate pricing. *See Samuel v. Time Warner Inc.*, 10 Misc. 3d 537, 809 N.Y.S.2d 408, 418 (N.Y. Sup. Ct. 2005).[8]

**4. Injunctive Relief**. The Wolfs' demonstration of DG's ongoing overcharging practices show a likelihood of imminent future harm across class members. *See Allen v. Koenigsmann*, 2023 U.S. Dist. LEXIS 57051, at *16 (S.D.N.Y. Mar. 31, 2023) (distinguishing *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) as the *Berni* complaint only alleged past harms).

**5. Punitive Damages**. DG ignores "there is a tension in New York law between" as to "awarding punitive damages under section 349." *Bueno v. LR Credit 18, LLC*, 269 F. Supp. 3d 16, 19 (E.D.N.Y. 2017). DG's reckless overcharging warrants punitive damages. (DG 56.1 ¶¶ 55, 77).

Respectfully Submitted,
/s/ Javier L. Merino
Javier L. Merino

Cc: All Counsel of Record (via ECF)

---

[8] *See also McCracken v. Verisma Sys.*, 131 F. Supp. 3d 38, 50 (W.D.N.Y. 2015) (doctrine did not apply where plaintiffs "allege that they were materially misled by Verisma's omissions in failing to disclose it was going to charge them an amount greater than its actual costs incurred in copying their records.")