Philip A. Goldstein, Esq.
M<small>C</small>G<small>UIRE</small>W<small>OODS</small> LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020-1104
Phone:  (212) 548-2100
Fax:  (212) 548-2150
*pagoldstein@mcguirewoods.com*
*Counsel for Defendant Dolgen New York, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X
JOSEPH WOLF, CARMEN WOLF,                          :     Case No. 7:23-cv-00558 (PMH)
ON BEHALF OF THEMSELVES AND THOSE                  :
SIMILARLY SITUATED,                                :
                                                   :
                    Plaintiffs,                    :
                                                   :
            v.                                     :
                                                   :
DOLGEN NEW YORK, LLC D/B/A DOLGEN,                 :
                                                   :
                    Defendant.                     :
---------------------------------------------------------------- X

**DECLARATION OF MIA SAVALOJA IN SUPPORT OF**
**DOLGEN NEW YORK, LLC'S RULE 56.1 STATEMENT**

I, Mia Savaloja, being of full age, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1.      I am over 18 years of age.  I am currently employed by Dollar General Corporation as Senior Director, Store Operations Planning and Communication, and am authorized to make this declaration on behalf of Defendant Dolgen New York, LLC d/b/a Dolgen ("Dollar General"). I have worked in this and other roles for the company since approximately April 13, 2013.  In my capacity as Senior Director, Store Operations Planning and Communication, a position I have held since May 2023, as well as in prior positions, and in the normal course and scope of my duties, I

1

am familiar with, among other things, Dollar General's point of sale (POS) systems, including registers where Dollar General customers purchase products.

2. I am aware of the litigation filed in New York with the case caption *Joseph Wolf et al. v. Dolgen New York, LLC d/b/a Dolgen*, bearing case number 7:23-cv-00558, pending in the United States District Court for the Southern District of New York.

3. I state the following facts which are all based on my personal knowledge gained through my employment with Dollar General and my review of the company's business records. These business records were generated in the ordinary and regular course of Dollar General's business and are kept in the ordinary and regular course of Dollar General's business.

4. Dollar General stores are "self-service" retail stores where products are displayed for sale on store shelves. Self-service means a customer can browse, inspect, and remove items from a store shelf that they are interested in buying without having to consult with an employee.

5. For each product on store shelves, a label is affixed to the shelf in close proximity to the product. This shelf label contains information about the product including, among other things, the name and price of the product.

6. When a customer is ready to buy a product, the customer takes the product to a register for checkout.

7. Dollar General uses both self-checkout registers and employee-operated registers.

8. Self-checkout registers are where the customer can scan and pay for merchandise on their own by using a self-guided electronic system, typically without assistance from Dollar General employees.

9. Employee-operated registers are where the customer provides a Dollar General employee the products to be purchased, the employee scans the products, and then the customer pays the total sale price.

10. At both employee-operated and self-checkout registers, when an item is scanned during the checkout process, that item's name and scan price are shown on a customer-facing electronic display.

11. At the end of the checkout process, after all products have been scanned and the customer is ready to pay, the customer-facing electronic display shows the total sale price owed to complete the transaction.

12. At an employee-operated register, after the customer pays the total sale price, the Dollar General employee hands the customer any change as well as a receipt. At self-checkout registers, change is dispensed, if any, and a printed receipt is provided to the customer.

13. The receipt identifies various information about the transaction, including the names of the products purchased, the price of each product, the applicable sales tax, the total sale price, the method and amount of payment, and any change returned to the customer.

14. A receipt may also identify if there was a price override.

15. One of the reasons employees perform a price override is to comply with Dollar General's Price Match Policy.

16. As part of my employment, I am personally aware of the substance of Dollar General's Price Match Policy. I am familiar with Dollar General's record-keeping procedures for Dollar General's written policies (like the Price Match Policy).

17. A true and accurate copy of Dollar General's Price Match Policy is attached as Exhibit A. The document attached as Exhibit A was generated and kept in the ordinary course of

business. In the regular course of Dollar General's business, it generates records like Exhibit A. Persons with knowledge of Dollar General's Price Match Policy created the document attached as Exhibit A.

18.    The Price Match Policy reflected in the document attached as Exhibit A was effective for all New York Dollar General stores from at least January 1, 2020, to present.

I declare under penalty of perjury under the laws of the United States of America, and pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct. Executed on May __15__, 2024.

_____
Mia Savaloja