## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOSEPH WOLF, CARMEN WOLF, ) Case No: 7:23-cv-00558-PMH
ON BEHALF OF THEMSELVES AND )
THOSE SIMILARLY SITUATED, )
 )
   Plaintiffs, )
 )
 )
  vs. )
 )
 )
DOLGEN NEW YORK, LLC )
D/B/A DOLGEN )
 )
   Defendant. )


## PLAINTIFFS JOSEPH WOLF AND CARMEN WOLF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DOLGEN NEW YORK, LLC'S MOTION FOR <u>SUMMARY JUDGMENT</u>

Javier L. Merino, Esq    Scott C. Harris, Esq. (*pro hac vice*)
**THE DANN LAW FIRM**    **MILBERG COLEMAN BRYSON PHILLIPS**
1520 US 130, Ste. 101    **GROSSMAN, PLLC**
North Brunswick, NJ 08902   900 W. Morgan Street
Phone: (201) 355-3440    Raleigh, NC 27603
Fax: (216) 373-0536    Tel.: (919) 600-5000
jmerino@dannlaw.com    sharris@milberg.com


*Counsel for Plaintiffs Joseph Wolf, Carmen Wolf, and the Putative Class*

## <u>**TABLE OF CONTENTS**</u>

**INTRODUCTION**................................................................................................................ 1

**BACKGROUND** ............................................................................................................... 2

**ARGUMENT** ................................................................................................................... 3

   I.   Legal Standard ......................................................................................................... 3

   II.   Plaintiffs Proved a Prima Facia GBL § 349 Claim Against Dollar General ...................... 4

      A.   Dollar General's Conduct Was Materially Misleading.................................... 4

      B.   The Wolfs Showed Actual Injury ............................................................... 10

      C.   The Wolfs Showed Causation ..................................................................... 12

   III.   NIST Handbook 130 Does Not Shield Dollar General from Liability........................... 13

      A.   NIST Handbook 130 Is Advisory, Not Law ................................................. 13

      B.   Inapplicability of NIST Handbook's 2% Error Rate to GBL § 349 Claims .............. 16

      C.   Dollar General Fails to Provide Evidence of Compliance with NIST ....................... 17

   IV.   New York State Weights and Measures Law Does Not Preempt Plaintiffs' GBL § 349 Claims ...................................................................................................................... 17

      A.   The AML Is Not a Special Statute ............................................................... 18

      B.   There Is No Conflict Between the AML and GBL 349................................... 19

      C.   Private Right of Action under GBL § 349 ................................................... 20

   V.   The Voluntary Payment Doctrine Does Not Bar Plaintiffs' Claims ................................. 22

      A.   Lack of Disclosure of Material Facts .......................................................... 22

   VI.   Plaintiffs Have Standing to Seek Injunctive Relief.................................................... 23

      A.   Risk of Repeat Harm Is Real ..................................................................... 23

   VII.   Punitive Damages Are Justified Under GBL § 349 ....................................................... 24

      A.   High Degree of Moral Culpability.............................................................. 24

   VIII.  Public Interest in Deterrence ................................................................................... 25

**CONCLUSION** ............................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexandre v. Alcon Labs., Inc.*, 2024 WL 623707 (S.D.N.Y. Feb. 14, 2024)................................11

*Allen v. Koenigsmann*, 2023 U.S. Dist. LEXIS 57051 (S.D.N.Y. Mar. 31, 2023) ....................... 24

*Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011)............................................................... 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).................................................................... 3

*Barkley v. Olympia Mortg. Co.,* 557 F. App'x 22 (2d Cir. 2014) .................................................. 24

*Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019) .......................... 9

*Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020) ..................................................................... 24

*Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410 (S.D.N.Y. 2004).................................... 10

*Bristol Vill., Inc. v. La.–Pac. Corp.*, 916 F.Supp.2d 357 (W.D.N.Y. 2013)................................. 24

*Brockington v. Dollar Gen. Corp.*, 695 F. Supp. 3d 487 (S.D.N.Y. 2023)................................... 12

*Broder v. Cablevision Sys. Corp*, 418 F.3d 187 (2d Cir. 2005)..................................................... 20

*Bueno v. LR Credit 18, LLC*, 269 F. Supp. 3d 16 (E.D.N.Y. 2017).............................................. 25

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014) ........................................ 9

*Caro Capital, LLC v. Koch*, 653 F. Supp. 3d 108 (S.D.N.Y. 2023) ............................................. 23

*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020) .............................................. 6

*Cohen v. Narragansett Bay Ins. Co*., 2014 WL 4701167 (E.D.N.Y. Sept. 23, 2014) .................. 25

*Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001) ................................................................... 19

*Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324 (S.D.N.Y. 2019) ...................................... 12

*Cty. of Niagara v. Shaffer*, 607 N.Y.S.2d 466 (App. Div. 1994).................................................. 18

*Dinan v. SanDisk LLC*, 844 Fed. Appx. 978 (9th Cir. 2021) ........................................................ 15

*Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152 (2d Cir. 2007) ........................................ 3

*Dumont v. Reily Foods Co.*, 934 F.3d 35 (1st Cir. 2019) ................................................................ 5

*Dunham v. Sherwin-Williams Co.*, 636 F. Supp. 3d 308 (N.D.N.Y. 2022) ................................... 10

*Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337 (S.D.N.Y. 2020)............................................11

*Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 9, 2013) ........................................................................................................................................11

*Empire Healthchoice, Inc. v. Philip Morris USA, Inc*., 393 F.3d 312 (2d Cir. 2004) .................. 16

*Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, 2021 U.S. Dist. LEXIS 189143 (E.D.N.Y. Sept. 30, 2021) .......................................................................................... 5

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) ......................................... 4, 22

*Fishon v. Peloton Interactive*, Inc., 620 F. Supp. 3d 80 (S.D.N.Y. 2022) .............. 12, 13

*Forest Glen Realty, LLC v. T11 Funding*, 175 N.Y.S.3d 292 (App. Div. 2022) .......... 18

*Gansberg v. Kroger*, No. 2022-CH-08071, slip op. (Ill. Cir. Ct., Cook Cnty. Apr. 7, 2023) .......... 9

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...... 4

*Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38 (E.D.N.Y. 2017) ....................... 10, 14

*Grgat v. Giant Eagle, Inc.*, 135 N.E.3d 846 (Ohio Ct. App. 2019) .................................. 7

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 150 N.Y.S.3d 79, 171 N.E.3d 1192 (2021) .......................................................... 10

*In re Colum. Coll. Rankings Action*, 2024 U.S. Dist. LEXIS 54098 (S.D.N.Y. Mar. 26, 2024)... 12

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 U.S. Dist. LEXIS 123824, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ................................................................................ 14

*Kahn v. Walmart Inc.*, 107 F.4th 585 (7th Cir. 2024) ............................................ 4, 8, 9

*Karlin v. IVF Am., Inc. et. al.*, 712 N.E.2d 662 (1999) .............................................. 21

*Lancaster v. Am. Textile Co., Inc.*, 719 F. Supp. 3d 204 (N.D.N.Y. 2024) ................... 5

*Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) ................................................. 5

*Martinez v. Lvnv Funding, LLC*, 2016 U.S. Dist. LEXIS 136613, 2016 WL 5719718 (E.D.N.Y. Sept. 30, 2016) ............................................................................... 21

*Matter of Buenos Hill Inc. v. Saratoga Springs Planning Bd.*, 206 N.Y.S.3d 902 (Sup. Ct. 2024) ........................................................................................ 18

*Matter of Zelazny Family Enters., LLC v. Town of Shelby*, 116 N.Y.S.3d 127 (App. Div. 2019). 19

*Midland Funding, LLC v. Giraldo*, 961 N.Y.S.2d 743 (N.Y. Dist. Ct. 2013) .............. 25

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107 (2d Cir. 2017) ........... 20

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) .............................................. 4

*People ex rel. McCurdy v Warden, Westchester County Corr. Facility*, 164 AD3d 692, 83 N.Y.S.3d 520) ................................................................................................ 18

*Pryor v. Rochester*, 60 N.E. 252 (N.Y. 1901) .......................................................... 18

*Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243 (Neb. App. 2007) ............................... 8

*Relativity Travel, Ltd. v. JP Morgan Chase Bank*, 831 N.Y.S.2d 349 (Sup. Ct. 2006) .......... 11

*Salgiobria Enters., LLC v. Cheney Bros., Inc.*, 2022 WL 7049246 (S.D. Fla. Aug. 16, 2022)..... 15

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F.Supp.3d 109 (S.D.N.Y. 2016) ....................................................................................... 19, 21

*Segovia v. Vitamin Shoppe, Inc.*, 2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017)...........................11

*Singleton v. Fifth Generation, Inc.*, 2016 U.S. Dist. LEXIS 14000, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)......................................................................................................................... 14

*Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009).................................................................. 4

*Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259 (S.D.N.Y. 2014)................................... 17, 22

*Stutman v. Chem. Bank*, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000)........................................... 10

*Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000) ................................................................10, 11, 12

*Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6 (Ill. Ct. App. 1997) ............................................. 8

*Watts v. Jackson Hewitt Tax Serv.*, 579 F. Supp. 2d 334 (E.D.N.Y. 2008) ....................................11

*Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208 (2d Dep't 2010) ..................................................... 24

*Wise v. Combe Inc.*, No. 22-CV-10787 (PMH), 2024 U.S. Dist. LEXIS 48593 (S.D.N.Y. Mar. 19, 2024) ........................................................................................................................................ 13

**Statutes**

GBL § 349........................................................................................................................... passim

N.Y. Agric. & Mkts. Law §§ 176, 197-b(3)(a)............................................................................ 18

**Other**

McKinney's Cons Laws of NY, Book 1, Statutes § 391 ................................................................. 19

NIST Handbook 130 .................................................................................................................... 14

Report of the Committee on New York State Antitrust Law of the Antitrust Law Section of the New York State Bar Association: A Proposed New State Law Making Deceptive Acts or Practices Unlawful, 1968 N.Y. St. B.A. Antitrust L. Symp. 114, 128, 129 .............................. 21

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................................... 3

## INTRODUCTION

Plaintiffs Joseph and Carmen Wolf (the "Wolfs" or "Plaintiffs") file this brief in opposition to Defendant Dolgen New York, LLC's ("Dollar General") Motion for Summary Judgment. Dollar General fails to establish that as a matter of law, the Wolfs' claims under GBL § 349 must be dismissed. Dollar General also fails to establish there are no material facts in dispute.

The Wolfs' claims arise out of various purchases they made at a Dollar General in White Lakes, New York where Dollar General charged a higher price at checkout than the price it advertised on the shelf. ***Dollar General does not dispute that it overcharged the Wolfs***. Additionally, Dollar General failed *hundreds* of pricing audits during the time period in which the Wolfs were overcharged. *Both* Dollar General executives *and* customers note that misrepresenting the price of a product on the shelf is materially misleading, demonstrating that a reasonable Dollar General customer would be misled by Dollar's overcharging practices. Also, by paying more at checkout than the price advertised on the shelf, the Wolfs were injured. Thus, the Wolfs have satisfied the elements of a claim under GBL § 349.

Unable to escape that it overcharged the Wolfs and that it otherwise engaged in rampant overcharging during the same timeframe, Dollar General uses a shotgun approach and lodges numerous arguments attempting to escape liability, which, for the reasons set forth in further detail below, summarily fail. For example, Dollar General claims it has a complete defense pursuant to guidelines published by the National Institute for Standards and Technology ("NIST"). However, GBL § 349 *does not* apply to guidelines. It only applies to rules and regulations. Dollar General then misrepresents the law by claiming that New York allows for a 2% rate of price discrepancies, relying upon a regulation that is limited in its application to when a weights and measures department can and cannot penalize a store. However, this regulation says *nothing* about such a

1

standard being "lawful" in the context of a consumer claim. Dollar General then claims the Wolfs' claims are barred by the Voluntary Payment Doctrine ("VPD"). However, the VPD is inapplicable in the context of deceptive consumer claims. Dollar General then posits that the Wolfs lack standing to seek injunctive relief, even though the record shows the threat of a future harm by Dollar General's ongoing overcharging. Last, Dollar General attempts to escape punitive damages by arguing they are unavailable under GBL § 349 which is also incorrect. For the reasons discussed in detail herein, the Wolfs respectfully request that the Court deny summary judgment.

## BACKGROUND

Over at least a three-year period, Dollar General systematically overcharged its customers, including the Wolfs. *See* Local Civ. R. 56.1 Statement of Facts ("SOF") ¶¶ 2-3, 5-7, 23-42, 55; Goldstein Decl. Ex. 1 (Compl. ¶¶ 14, 22), 3 (J. Wolf Tr. 70:6-8), 4 (C. Wolf Tr. 85:21-86:13, 91:15-92:17, 93:1-16, 148:16-149:2), 13 (WOLF_000001-02), 15 (WOLF_000005-6), 53 ((OPP002-0000178, p. 7, 10). During this period, Dollar General failed *hundreds* of pricing audits in New York and otherwise paid *millions* of dollars in fines to various state agencies across the country. SOF ¶ 55; Merino Decl. Exh. 6; Merino Decl. Exh. 8. A third-party company Dollar General hired to evaluate its pricing practices reinforced Dollar General's poor pricing practices and found that in comparison to fellow retailers, Dollar General was "lagging" as Dollar General had "[u]nreliable price execution" and "stores not having the right price at time of store opening". The evaluator also noted "[u]nreliable pricing compliance". SOF ¶ 55; Merino Decl. Exh. 9 (McKinsey-Wolf-000681-92). Dollar General's own customers regularly complained about its pricing practices, noting that overcharging a product by $0.20 was a "bait and switch", that overcharging is "illegal", that a consumer "will obviously be angry" over a $0.20 overcharge, and that Dollar General "could get sued for" overcharging a product by $0.76. SOF ¶ 55; Merino Decl.

2

5 (DG_WOLF_0003576, 0003577, 0041216-7). Dollar General's senior director of store operations admitted a typical customer would be "mad" and "humiliated" over being charged $21.35 when the final price should be $20.00. SOF ¶ 55; Merino Decl. Exh. 4 (DG_WOLF_0011319-321)).

The Wolfs reside in East Elmhurst, New York and own a vacation home in Bethel, New York, and they regularly shop at the Dollar General store in White Lake, New York. SOF ¶ 1; Goldstein Decl. Exh. 1 (Compl. ¶¶ 5, 11). Over the course of four transactions, Dollar General overcharged the Wolfs on six (6) items. SOF ¶¶ 2-3, 5-7, 23-42, 55; Goldstein Decl. Ex. 1 (Compl. ¶¶ 14, 22), 3 (J. Wolf Tr. 70:6-8), 4 (C. Wolf Tr. 85:21-86:13, 91:15-92:17, 93:1-16, 148:16-149:2), 13 (WOLF_000001-02), 15 (WOLF_000005-6), 53 ((OPP002-0000178, p. 7, 10. The Wolfs seek to represent a class of consumers who shopped at Dollar General stores in New York and are seeking relief for themselves and the class. SOF ¶ 9; Goldstein Decl. Ex. 4 (C. Wolf. Tr. 150:18-151:3, 157:19-158:2).

## ARGUMENT

### I.  Legal Standard

Rule 56 of the Federal Rules of Civil Procedure dictates that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it may affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences from that evidence in the light most favorable to the non-moving party. *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007).

## II.    Plaintiffs Proved a Prima Facia GBL § 349 Claim Against Dollar General

To successfully assert a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). "A court may make this determination as a matter of law, although usually such a determination is a question of fact." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (citations omitted). Dollar General does not dispute its conduct was consumer oriented. As set forth below, the Wolfs established prongs (2) and (3) - that Dollar general's overcharging was "materially misleading", and that by paying for the overcharges, the Wolfs "suffered injury as a result of" the overcharges.

### A.   Dollar General's Conduct Was Materially Misleading

Whether an act is materially misleading is defined objectively and looks to whether the act is likely to mislead a reasonable consumer acting reasonably under the circumstances. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). To that end, "[t]he primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself." *Id.*

As the Seventh Circuit Court of Appeals noted, "[i]f shelf prices are not accurate, they are likely to mislead reasonable consumers." *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024). There, the Court of Appeals considered claims nearly identical to those present here. *Id.* The Court, applying the "reasonable consumer" standard, held that "[i]t is neither 'unreasonable' nor 'fanciful' for consumers to believe Walmart will sell them its merchandise at the prices advertised on its shelves." *Id.* at 598. Here, Dollar General does not dispute the Wolfs' claims that the shelf labels

falsely advertised the price charged at checkout. SOF ¶¶ 2-3, 5-8, 43, 115-117; Goldstein Decl. Ex. 1 (Compl. ¶¶ 14, 22); Merino Decl. Exh. 1 (DG_WOLF_0001764); Goldstein Decl. Exh. 13 (WOLF_00001-02); Goldstein Decl. Exh. 16 (WOLF_000007-09). Therefore, Dollar General's acts are likely to mislead a reasonable consumer acting reasonably under the circumstances.

Despite its admissions, Dollar General raises three arguments in opposition to this prong which are each addressed in turn. *First*, Dollar General claims the overcharge was "fully disclosed" to the Wolfs, and based on this claim, contends the conduct cannot be materially misleading. D.G. Mem. at 7–12. However, Dollar General's position is factually and legally flawed. Factually, Dollar General's contention that the overcharge was "fully disclosed" while admitting the shelf label was inaccurate (and that nowhere on the shelf label was the true price disclosed) is illogical. Likely recognizing the deficiency of its position, Dollar General claims its register displays and its receipts provided to customers *after* checkout somehow amount to a "full disclosure" despite the inaccuracy of the shelf label. However, Dollar General's position contradicts the well settled notion that "in determining whether a reasonable consumer would be misled, courts view each allegedly misleading statement in light of its context in the advertisement as a whole." *Lancaster v. Am. Textile Co., Inc.*, 719 F. Supp. 3d 204, 218 (N.D.N.Y. 2024) (quotation omitted). As the Second Circuit noted, "a reasonable consumer should not be expected to consult," for example, a "panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018); *see also Dumont v. Reily Foods Co.*, 934 F.3d 35, 40-41 (1st Cir. 2019); *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, 2021 U.S. Dist. LEXIS 189143, at *10 (E.D.N.Y. Sept. 30, 2021) ("[C]ontextual information on the reverse of a product's packaging cannot overcome bold and blatant

misstatements on the front.").[1] The same principles apply here. In assessing the overcharging, the primary focus is on the advertisement itself, which as Dollar General concedes, misrepresented the prices of the products. SOF ¶¶ 2-3, 5-8, 43, 115-117; Goldstein Decl. Ex. 1 (Compl. ¶¶ 14, 22); Merino Decl. Exh. 1 (DG_WOLF_0001764); Goldstein Decl. Exh. 13 (WOLF_00001-02); Goldstein Decl. Exh. 16 (WOLF_000007-09). Furthermore, a reasonable consumer cannot be expected to double check the price of a product at the register while checking out or to review its receipt ***after*** purchase to ensure it was accurately charged. Such a position contradicts the fact a consumer should not be obligated to double check the price of a product before checkout.

Dollar General relies upon inapplicable caselaw. For example, in *Chufen Chen v. Dunkin' Brands, Inc.*, the claims were premised on Dunkin Donuts' ("Dunkin") allegedly deceptive television advertisements. 954 F.3d 492 (2d Cir. 2020). However, the court rejected a finding of deception, as the disclosure was contained ***within the advertisement itself***. Here, there is no such disclosure within the advertisement - the shelf label. In fact, the opposite is true, as the shelf labels misrepresent the price charged at checkout.

Dollar General then pivots and makes the false claim that Plaintiffs somehow knew the overcharged price would be rung up at the register *before* checking out. To support this theory, Dollar General first claims that somehow Mr. Wolf's vigilance and awareness of Dollar General's *general* practices equate to knowing what Dollar General is going to charge for a *particular* product on any given day. This is implausible considering: (1) a typical Dollar General store has approximately 19,000 products on its shelves; and (2) Dollar General stores are notified of price changes by corporate headquarters through Dollar General's START task management system.

---

[1] The court further recognized that in "claims that are outright false" context cannot save the day. *Id.* This is critical as Dollar General's shelf labels indisputably misrepresented the price charged at checkout. SOF ¶¶ 2-3, 5-8, 43, 115-117.

SOF, ¶¶ 21, 24; Wilner Exp. Rep. pp. 5-6; Goldstein Decl. Exh. 35 (DG_WOLF_0040637). Dollar General fails to provide *any* evidence the Wolfs could know what the START system is going to transmit regarding its 19,000 products on any given day or that they knew ahead of time exactly what would be charged at checkout (or what the shelf label would advertise).

Dollar General then points to a text Ms. Wolf sent to her husband before his December 11, 2022 purchase reminding him to take photos of the products' prices as some sort of indication Ms. Wolf knew there would be an overcharge. D.G. Mem. At 10. What Dollar General fails to mention is Ms. Wolf testified she "was unaware" of the shelf tag prices before the December 11, 2022 purchase. SOF ¶ 105; Goldstein Decl. Exh. 12 (Pltfs' First Am. RFA Resp.) No. 14. Furthermore, Ms. Wolf's regularly took photos of the shelf prices for purposes of comparison shopping – "[t]o compare whether Dollar General and another store have -- who has the better price for the same item I want." SOF ¶¶ 120-121; Goldstein Decl. Exh. 4 (C Wolf Tr.) 50:16- 51:5. Dollar General's position also contradicts Mr. Wolf's testimony that he did not discover he had been overcharged for yogurt until *after* the purchase. SOF ¶ 84; Goldstein Decl. Exh. 3 (J. Wolf. Tr.) 116:7-10. It also contradicts his testimony that for this purchase, walking into the store, he had no "expectation that I was going to be overcharged walking in there." SOF ¶ 84; Goldstein Decl. Exh 3 (J. Wolf. Tr.) 116:24-117:9. In sum, the Wolfs did not, and could not, know what was to be charged at the point of sale before checkout. At the very least, this is an issue of fact to be decided at trial.

Dollar General's position likewise fails as a matter of law, as the cases it relies upon are distinguishable. Dollar General first cites cases which do not pertain to false advertising.[2] Otherwise, in both *Grgat v. Giant Eagle, Inc.*, 135 N.E.3d 846, 852 (Ohio Ct. App. 2019) and

---

[2] *See Zuckerman v. BMG Direct Marketing*, 290 A.D.2d 330, 737 N.Y.S.2d 14 (1st Dep't 2002), *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *7-8 (S.D.N.Y. July 9, 2014), and *Lewis v. Hertz Corp.*, 181 A.D.2d 493, 494 (1st Dep't 1992)

*Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 249 (Neb. App. 2007), both advertisements **accurately** stated the prices, meanwhile, **exactly** the opposite occurred here.

**Second**, Dollar General contends "Plaintiffs have no evidence to prove how a reasonable consumer would interpret the challenged conduct, much less proving how a reasonable consumer would have been misled by Dollar General's practices." D.G. Mem. at 12. The record belies Dollar General's statement. First, Mia Savaloja, the then-senior director of store operations, wrote that Dollar General's typical customer would be "mad" and "humiliated" over being charged $21.35 when the final price should be $20.00. SOF ¶ 61; Goldstein Decl. Exh. 5 (M. Savaloja Tr. 18:24-19:3), Merino Decl. Exh. 4 (DG_WOLF_0011319-321). Next, **Dollar General's own customers** noted in complaints to Dollar General overcharging a product by $0.20 was a "bait and switch", that overcharging is "illegal", that a consumer "will obviously be angry" over a $0.20 overcharge, and that Dollar General "could get sued for" overcharging a product by $0.76. SOF ¶ 61; Merino Decl. 5 (DG_WOLF_0003576, 0003577, 0041216-7. Thus, the record reinforces that a typical Dollar General customer would be misled by its overcharging practices.

Dollar General then cites to its "price match policy" to claim its conduct was not deceiving, relying *heavily* upon the *Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 8 (Ill. Ct. App. 1997). Yet, Dollar General does not attempt to distinguish the Seventh Circuit Court of Appeals' decision in *Kahn*, even though *Kahn* significantly narrowed *Tudor*. *Kahn*, 107 F.4th at 605-06. Specifically, *Kahn* found *Tudor* distinguishable "[s]ince a high accuracy rate and a money-back policy are not alleged here". *Id*. Regarding the money-back policy, the Court noted:

> The money-back policy in *Tudor* went beyond a mere refund of the price difference. Jewel's policy was to give the consumer the item for free as a bounty for catching the price discrepancy. That policy went well beyond merely honoring the shelf price and offered stronger evidence of a retailer's lack of intent for the consumer to rely on inaccurate prices than a policy that merely refunds the price difference. Offering consumers the full value of the item as a bounty gives them an incentive to look for

price discrepancies and shifts the balance of incentives for the retailer closer to optimal deterrence.

*Id.* at 606 n.9. Dollar General fails to identify such a robust price match policy here. Also, Dollar General customers complained that Dollar General refused to refund them overcharges, raising doubts as to the effectiveness of Dollar General's price match policy. SOF ¶ 50; Merino Decl. Exh. 5 (DG_WOLF_0003340, 0003363, 0003380, 0003410-11, 0041278). Likewise, Dollar General fails to identify "a high accuracy rate". Just the opposite is true, as Dollar General failed *hundreds* of pricing audits in New York and otherwise paid millions of dollars in fines to state agencies across the country. SOF ¶ 55; Merino Decl. Exh. 6; Merino Decl. Exh. 8.

Dollar General then argues that because it provides customers with a receipt ***after*** checkout, its overcharging practices are not misleading. However, "[a] sales receipt provided to a consumer ***after*** a purchase cannot show what was supposedly advertised", in this case, the shelf price. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737-38 (7th Cir. 2014) (emphasis added). Rather, any correction "must have been made to [the consumer] before the purchase of the merchandise." *Id.* at 738; *accord*, *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646-47 (7th Cir. 2019) (reversing dismissal on pleadings; receipt listing net weight of candy did not necessarily dispel alleged deception created by oversized packaging); *Gansberg v. Kroger*, No. 2022-CH-08071, slip op. at 2-3 (Ill. Cir. Ct., Cook Cnty. Apr. 7, 2023) (denying motion to dismiss; receipt provided by grocery store did not dispel deception created by inaccurate shelf pricing). "Because Walmart does not provide a receipt to its customers until after they pay and close the transaction, the receipt does not necessarily dispel the deception created by inaccurate shelf pricing." *Kahn*, 107 F.4th at 599. Here, Dollar General's actions are identical to Walmart's in *Kahn*.

Dollar General then attempts to create a distinction between establishing whether conduct is likely to mislead a reasonable consumer acting reasonably under the circumstances and whether

conduct is materially misleading. ***These two are one in the same***, as "[a] defendant's actions are materially misleading when they are likely to mislead a reasonable consumer acting reasonably under the circumstances." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 150 N.Y.S.3d 79, 85, 171 N.E.3d 1192 (2021). The Wolfs demonstrated that Dollar General's actions are likely to mislead a reasonable consumer acting reasonably under the circumstances and simultaneously established that Dollar General's conduct was materially misleading. Yet, Dollar General claims that Plaintiffs must show how the overcharge affected their purchasing decisions. However, Dollar General's position has been rejected by New York's Courts of Appeals, which held "reliance is *not* an element of a section 349 claim." *Stutman v. Chem. Bank*, 709 N.Y.S.2d 892, 896, 731 N.E.2d 608, 612 (2000) (emphasis in original). Dollar General cites one case for its reliance argument, *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004). However, *Bildstein*'s reliance holding was grounded on New York Appellate Division's caselaw which found that reliance was required to establish a GBL 349 claim. *Bildstein*, 329 F. Supp. 2d at 413 (citing *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) However, this *Stutman* holding was overturned on appeal. *Stutman*, 95 N.Y.2d at 30. As *Bildstein* was based on a standard which was overturned on appeal, *Bildstein*, and in turn, Dollar General's position, is fundamentally flawed. Thus, this Court must follow Court of Appeals precedent and reject any attempt by Dollar General to inject a reliance threshold into a GBL 349 claim.

### B. The Wolfs Showed Actual Injury

Plaintiffs proved actual injury Dollar General "caus[ed] [them] to pay more for defendant's products than [they] should have." *Dunham v. Sherwin-Williams Co.*, 636 F. Supp. 3d 308, 316 (N.D.N.Y. 2022); *see also Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 68 (E.D.N.Y. 2017). Here, Dollar General does not dispute that for the products in question, the Wolfs paid a higher

price at checkout than the advertised shelf price. As such, "[t]he deception is the false and misleading label, and the injury is the purchase price." *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, 2013 U.S. Dist. LEXIS 174174, at *12 (S.D.N.Y. Dec. 9, 2013) Therefore, since the Wolfs "overpaid for the product[s]", they demonstrated actual injury. *Id.*[3]

Dollar General contends, without support, that the Wolfs are required to show they paid higher than the products' fair market value at checkout. However, "[a]lthough plaintiffs sometimes point to comparators in support of a price premium claim, a plaintiff is not required to do so in order to allege injury." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 352 (S.D.N.Y. 2020) (internal citation omitted); *Axon v. Fla. 's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (holding it is sufficient for a plaintiff to allege "that the price of the product was inflated as a result of defendants deceptions [to] meet[] the injury requirement" and that it is not necessary for the plaintiff "to identify the prices of competing products");

Dollar General relies upon *Alexandre v. Alcon Labs., Inc.*, 2024 WL 623707, at *4 (S.D.N.Y. Feb. 14, 2024) and *Segovia v. Vitamin Shoppe, Inc.*, 2017 WL 6398747, at *1 (S.D.N.Y. Dec. 12, 2017) to contend the Wolfs must somehow "must plead something more" beyond overpaying for the product. Dollar General's argument is misplaced as the Wolfs *did* prove they paid more for products than they should have. SOF ¶¶ 2-3, 5-8, 43, 115-117. Dollar General's position is also misplaced as Courts consistently affirm that an overcharge equates to injury. *See Stutman*, 95 N.Y.2d 24; *Relativity Travel, Ltd. v. JP Morgan Chase Bank*, 831 N.Y.S.2d 349, 349 (Sup. Ct. 2006); *Watts v. Jackson Hewitt Tax Serv.*, 579 F. Supp. 2d 334, 349 (E.D.N.Y. 2008).

---

[3] *See also Kukorinis*, 2020 U.S. Dist. LEXIS 265146, at *18 (damages sufficiently pled where "Walmart listed a unit price that did not reflect the price charged at check out").

As for Dollar General's comments regarding Ms. Wolf's injuries occurring *after* the complaint was filed - there is no basis to conclude that injuries which occur *after* a lawsuit somehow do not count, and courts reject attempts to limit the same. *See*, *e.g. Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 334 (S.D.N.Y. 2019) (rejecting the same premise).

### C.  The Wolfs Showed Causation

To "satisf[y] the causation requirement," "[n]othing more is required" than a loss "because of defendant[s'] deceptive act." *Stutman*, 95 N.Y.2d at 30. "[B]y alleging that the defendant's misleading or deceptive advertising campaign caused a price premium", the Wolfs show "both injury and causation". *Fishon v. Peloton Interactive*, Inc., 620 F. Supp. 3d 80, 99-100 (S.D.N.Y. 2022). "Under this theory of injury, an individual's awareness of an alleged misrepresentation plays no role in the causation analysis because reliance plays no role in it." *Id.* at 103.

Dollar General claims that to prove causation, the Wolfs must provide evidence showing both that they saw the shelf prices and that they purchased the products as a result of the shelf prices. D.G. Mem. at 16-17. However, just last year, the Southern District of New York rejected Dollar General's theory. *See Brockington v. Dollar Gen. Corp.*, 695 F. Supp. 3d 487 (S.D.N.Y. 2023). There, the Court noted that:

> a plaintiff can also plead both injury and causation under GBL §§ 349…by alleging that the defendant's misleading or deceptive advertising campaign caused a price premium, that the price premium was charged both to those who saw and relied upon the false representations and those who did not, and that, as a result of the price premium, plaintiff was charged a price she would not otherwise have been charged but for the false campaign."

*Id.* at 509-10 (quoting *Fishon*, 620 F. Supp. 3d at 100). "The rationale for allowing a plaintiff to plead a price premium injury — even though he or she never saw any relevant advertising or marketing — is that 'reliance is not an element of a section 349 claim.'" *In re Colum. Coll. Rankings Action*, 2024 U.S. Dist. LEXIS 54098, at *40 (S.D.N.Y. Mar. 26, 2024).

Dollar General claims *Wise v. Combe Inc.*, No. 22-CV-10787 (PMH), 2024 U.S. Dist. LEXIS 48593, at *16 (S.D.N.Y. Mar. 19, 2024) supports its position. However, the case is distinguishable. There, the plaintiff alleged she "relied on "Defendant's representations . . . that the Product was suitable for daily use on her vulva" in deciding to purchase these products." *Id.*, at *4. "In that circumstance, her injury—the difference between the value of what she received and what he thought she was receiving—does not exist if she did not believe the two were different." *Fishon*, 620 F. Supp. 3d at 101. As the *Fishon* Court recognized:

> while a reliance- or exposure-based theory of injury is one way to plead that a defendant's misrepresentation caused harm, it is not the only way. The operative question is whether a plaintiff suffered an injury because of a defendant's misrepresentation; it is not whether that injury was tied to plaintiff's reliance on the misrepresentation.

*Id.* at 103. Here, the Wolfs do not plead a reliance-based theory. Instead, by "alleging that they paid a higher price—"increased costs"—for their products because of Defendant's widespread misrepresentations about the [price] of the product, Plaintiffs have pleaded an injury that was attributable to Defendant's alleged misrepresentation, regardless of whether they ever personally saw the representation." *Id.*

## III. NIST Handbook 130 Does Not Shield Dollar General from Liability

Dollar General's attempt to sidestep responsibility for pervasive overcharging, under the false premise that NIST Handbook 130 provides a "complete defense" under General Business Law (GBL) § 349(d) is nothing more than hiding behind general industry guidelines and a half-hearted defense. Plaintiffs ask this Court to reject these excuses and hold Dollar General accountable for its failure to protect customers from deceptive pricing.

### A. NIST Handbook 130 Is Advisory, Not Law

The safe harbor provision is governed by GBL § 349(d). It "requires Defendant to identify a 'rule' or 'regulation' with which it has complied." *Greene*, 262 F. Supp. 3d at 70. NIST Handbook 130 is neither federal law nor a binding regulation.[4] It provides voluntary guidelines developed to assist states in establishing uniform standards. Courts consistently hold that mere compliance with industry best practices or guidelines, such as those in NIST Handbook 130, is insufficient to invoke safe harbor protections under GBL § 349(d). *See Greene*, 262 F. Supp. 3d at 71 (denying motion to dismiss under GBL safe harbor defense where unclear that a regulatory agency letter constituted a "rule" or "regulation" within the scope of the safe harbor provisions); *Singleton v. Fifth Generation, Inc.*, 2016 U.S. Dist. LEXIS 14000, 2016 WL 406295, at *8 (N.D.N.Y. Jan. 12, 2016) (denying motion to dismiss based on GBL safe harbor where the United States Alcohol and Tobacco Tax and Trade Bureau approved the alcohol label at issue and reasoning, *inter alia*, the Bureau informed applicants that such approvals do not relieve an applicant from "liability for violations of the Federal Alcohol Administrative Act . . ., which itself prohibits false and misleading labeling"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 U.S. Dist. LEXIS 123824, 2013 WL 4647512, at *22 (E.D.N.Y. Aug. 29, 2013) (denying motion to dismiss and reasoning, *inter alia*, "it is not clear that FDA's [non-binding] guidance on 'natural' labeling is a 'rule or regulation' within the meaning of §§ 349(d) and 350-d"). Further, the GBL's safe-harbor provisions—which insulate actors that comply with agency regulations—do not apply here. First, the only "regulation" at issue is the NIST Handbook stating "[t]he accuracy requirement for a sample must be 98 % or higher to "pass" a single inspection.". *See NIST Handbook 130*, at Part V, § 10.2; *Compl.* at ¶30, which applies only "for use in routine

---

[4] *See*: https://csrc.nist.gov/topics/laws-and-regulations (last visited: November 4, 2024) *"NIST, itself, is not a regulatory agency."* (emphasis in original).

inspections," and specifically carves out that, "[n]othing in this procedure should be construed or interpreted to redefine any state or local law or limit any jurisdiction from enforcing any law, regulation, or procedures that relates to the accuracy of advertisements of retail prices, or any other legal requirement," and, thus, has no bearing on any of the challenged pricing discrepancies. *Id.*

Dollar General claims each of *Dinan v. SanDisk LLC*, 844 Fed. Appx. 978 (9th Cir. 2021); *Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011); and *Salgiobria Enters., LLC v. Cheney Bros., Inc.*, 2022 WL 7049246 (S.D. Fla. Aug. 16, 2022) stand for the proposition that the "NIST…can be the basis for application of safe harbor provisions in various state deceptive trade practices acts." What Dollar General fails to mention is that in *each* of the cases, there was a federal *or* state statute at issue which *specifically* incorporated the NIST. Thus, it was not the NIST that was a standalone basis to apply safe harbor provisions (as Dollar General insinuates), but instead, it was a statute or regulation which *incorporated* the NIST and which together formed the basis for a safe harbor provision. *See Dinan v. SanDisk LLC*, 844 Fed. Appx. 978 (9th Cir. 2021) ("Both California and federal law expressly authorize use of the metric system in commerce. See 15 U.S.C. § 204…id. § 205b; Cal. Bus. & Prof. Code § 12301….the metric system for the United States is interpreted and defined by the NIST."); *Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011) (Cal. Bus. & Prof. Code § 12107 and Cal. Code Regs. tit. 4, § 4000 adopt by reference the NIST standards); *Salgiobria Enters., LLC v. Cheney Bros., Inc.*, 2022 WL 7049246 (S.D. Fla. Aug. 16, 2022) ("Florida Department of Agriculture regulation adopting and incorporating by reference NIST's Handbook 133 as the standard for procedures to test packaged goods for net weight").

Dollar General failed to mention this because there is no such federal statute that incorporates the NIST Handbook 130 and/or the 2% threshold as permissible.[5]

Because the NIST guidance lacks preemptive force, the safe harbor provision does not apply.[6] For the safe harbor to apply, Dollar General must demonstrate compliance with binding federal or state regulations, not voluntary standards that lack the force of law. *See Empire Healthchoice, Inc. v. Philip Morris USA, Inc*., 393 F.3d 312 (2d Cir. 2004) ("No case holds that when deception is alleged, unrelated regulatory provision immunizes.")

### B.  Inapplicability of NIST Handbook's 2% Error Rate to GBL § 349 Claims

The NIST Handbook's 2% error rate applies specifically to regulatory audits conducted by state officials and does not create an exemption for overcharges affecting individual consumers. Plaintiffs are actual consumers who suffered real financial harm, not hypothetical statistics in a state audit. Defendants misapply the meaning and intent of the NIST Examination Procedure for Price Verification, which is for NIST administrators, in effort to shift the responsibility to Plaintiffs. Defendant's claim that "Plaintiffs do not allege they used these procedures in their transactions,"[7] is neither relevant nor required for any of Plaintiffs' causes of action, including the GBL. Plaintiffs' GBL § 349 claims arise from documented overcharges that Dollar General imposed on customers—not hypothetical compliance with state audit sampling protocols. GBL §

---

[5] To the extent Dollar General may try to argue that any of New York's state statutes or regulations incorporate the NIST (an argument it made in its pre-motion letter but failed to make in its brief), *see* D.E. 63 at 4, "GBL § 349's safe harbor provision does not apply to approvals by state agencies at all." Patane v. Nestlé Waters N. Am., Inc., 478 F. Supp. 3d 318, 349 (D. Conn. 2020).

[6] Courts routinely hold that similar questions of whether agency action constitutes a "rule and regulation" or "statute" under the GBL's safe harbor will turn on whether that action possesses preemptive power. *See Von Koenig v. Snapple Beverage Corp*., 713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010) (discussing California's consumer-protection statute). FDA enforcement-discretion letters lack preemptive force*, Reid v. Johnson & Johnson*, 780 F.3d 952, 965 (9th Cir. 2015).

[7] D.G. Mem. at p. 21

349 protects consumers from deceptive business practices, and Dollar General cannot excuse specific incidents of overcharging by referencing a generalized regulatory tolerance level. Dollar General does not dispute the Wolfs' claims that the shelf labels falsely advertised the price charged at checkout. SOF ¶¶ 2-3, 5-8, 43, 115-117) This is critical as "[t]he primary evidence in a consumer-fraud case arising out of allegedly false advertising is…the advertising itself." *Fink*, 714 F.3d at 742; *see also Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 274 (S.D.N.Y. 2014) (representations of cost to print of $0.75 per page were "materially misleading").

### C. Dollar General Fails to Provide Evidence of Compliance with NIST

Even assuming, *arguendo*, that the NIST Handbook constitutes a "rule and regulation" applicable to GBL 349(d)'s safe harbor provision, Dollar General's reliance on a presumed error rate fails without concrete evidence that its internal pricing practices meet the specific audit procedures outlined in NIST Handbook 130. Plaintiffs' claims do not concern isolated or randomly sampled errors but thousands of instances of overcharging affecting actual consumers. Whether the White Lake store failed a governmental price audit is not determinative and the evidence shows that Dollar General failed several hundred pricing audits in New York during the class period, and the Wolfs were overcharged. (Merino Decl. Exh. 6). Plaintiffs undisputed claim that Dollar General materially misled them causing them to pay more than they should have is directly actionable under § 349 and does not become non-actionable simply because Dollar Generals misconduct also happens to violate the NIST guidelines for best practices. Therefore, Dollar General cannot rely on a hypothetical compliance with state regulatory standards to shield itself from liability under GBL § 349.

## IV. New York State Weights and Measures Law Does Not Preempt Plaintiffs' GBL § 349 Claims

Dollar General argues New York's Agriculture and Markets Law (AML), which governs weights and measures, preempts Plaintiffs' GBL § 349 claim. This assertion is incorrect.

### A.  The AML Is Not a Special Statute

"In the case of a conflict between a general statute and a special statute governing the same subject matter, the general statute must yield". *Forest Glen Realty, LLC v. T11 Funding*, 175 N.Y.S.3d 292, 296 (App. Div. 2022) (quoting *People ex rel. McCurdy v Warden, Westchester County Corr. Facility*, 164 AD3d 692, 694, 83 N.Y.S.3d 520); *see* McKinney's Cons Laws of NY, Book 1, Statutes § 397 at 574). "A special law is '[a] state statute which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages'". *Forest Glen Realty, LLC*, 175 N.Y.S.3d at 296 (quoting N.Y. Mun. Home Rule Law § 2). Meanwhile, the AML provides:

> Nothing in this section shall be construed to prohibit a political subdivision of the state from continuing to implement and enforce any local pricing law or regulation in effect prior to the effective date of this section. Where a political subdivision has a local pricing law in effect prior to the effective date of this section, the provisions of this section shall have no force and effect until such time as the political subdivision repeals its local pricing law. ***Any political subdivision of the state not having any local pricing law or regulation in effect prior to the effective date of this section shall adopt and implement the pricing accuracy provisions set forth in this section or by regulations adopted pursuant to this section***.

N.Y. Agric. & Mkts. Law §§ 176, 197-b(5) (emphasis added). Thus, since the AML applies to *all* counties, it is *not* a "special statute", and instead, it is a general statute. *See Pryor v. Rochester*, 60 N.E. 252, 253 (N.Y. 1901); *Matter of Buenos Hill Inc. v. Saratoga Springs Planning Bd.*, 206 N.Y.S.3d 902, 908 (Sup. Ct. 2024) (law providing for "general, statewide application…is a general law", not a specific law); *Cty. of Niagara v. Shaffer*, 607 N.Y.S.2d 466, 467 (App. Div. 1994) ("The Social Services Law is a general law which addresses matters of State-wide concern"). Thus, there is no conflict at play here warranting any repeal.

### B.  There Is No Conflict Between the AML and GBL 349

Even assuming, *arguendo*, that the AML was considered a "special statute", it does not conflict with GBL § 349. "[I]n the absence of an irreconcilable conflict, statutory provisions are to be read together whenever possible." *Matter of Zelazny Family Enters., LLC v. Town of Shelby*, 116 N.Y.S.3d 127, 129 (App. Div. 2019) (citing McKinney's Cons Laws of NY, Book 1, Statutes § 391).  First, the plain language of the AML evidences that it is specifically limited to address the scope of penalties the commissioner or the municipal director of weights and measures may impose on a store. N.Y. Agric. & Mkts. Law §§ 176, 197-b(4)(b). There is nothing in the AML suggesting it is intended to govern the scope of claims a private consumer can bring related to overcharging. Nor does the AML state it is lawful for a business to overcharge customers so long as the overcharging rate is less than 2%. GBL § 349 is a consumer protection statute with a broad mandate to protect the public from deceptive business practices, and the AML cannot overrides this statute or suggests that consumers cannot bring claims under it. Dollar General's assertion is wrong—the AML does not supersede consumer rights under GBL § 349.  GBL § 349 is not restricted or preempted by other laws unless explicitly stated. *See* NIST Handbook 130, at Part V, p. 207. Dollar General's reliance on *Bursco v. Braun* misinterprets the precedent, as it applies to situations where a specific statute explicitly supersedes a general one.

Dollar General's other cases likewise are inapplicable. For instance, *Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001) merely "stands for the proposition that a § 601 claim is not necessarily a § 349 violation." *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F.Supp.3d 109, 117 (S.D.N.Y. 2016). This is wholly irrelevant to the

issues here.[8] The Second Circuit distinguished the two cases on which Dollar General relies—
*Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001), and *Broder v. Cablevision Sys. Corp*, 418
F.3d 187 (2d Cir. 2005)—on the basis that in those cases the alleged wrongful acts were not
"inherently deceptive" and could not be re-characterized as "deceptive" "simply on the grounds
that they violate another statute which does not allow for private enforcement." 875 F.3d at 127.
The Second Circuit made clear "a GBL claim is viable where the plaintiff 'make[s] a free-standing
claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim' under
another statute that is not independently actionable." *Id*. (quoting *Broder*, 418 F.3d at 200). Dollar
General's overcharing of its consumers is a textbook example of an inherently deceptive act and
precisely the type of deceptive practice NY GBL § 349 was intended to prevent. *See Nick's Garage,
Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 124 (2d Cir. 2017) (GBL § 349 is aimed at
misrepresentations that are "'likely to mislead a reasonable consumer acting reasonably under the
circumstances"' (quoting *Stutman*, 95 N.Y.2d at 29). The AML does not contain language
preempting GBL § 349, and there is no legal basis for Dollar General's argument that specific
weights and measures statutes override general consumer protections.

### C.  Private Right of Action under GBL § 349

Contrary to Dollar General's "no private right of action" argument, while the AML
provides specific enforcement mechanisms for state inspectors to conduct regulatory audits, it does
not limit private parties from pursuing GBL § 349claims. Plaintiffs' allegations of deceptive

---

[8] Further, in *Gift & Luggage Outlet, Inc. v. People*, 194 Misc. 2d 582, 585, 756 N.Y.S.2d 717, 719
(Sup. Ct. 2003) regards the Attorney General bringing a case under General Business Law §§ 870
and 873, it does not address recovery for overcharge on behalf of private citizens. *Broder v.
Cablevision Sys. Corp*., 418 F.3d 187, 200 (2d Cir. 2005) narrowly involved issues concerning the
construction, scope, and application of a particular section of federal law, namely, PSL § 224–
a(7)(c)  which "involved federal regulation of cable companies." *See Barone v. Bausch & Lomb,
Inc*., 372 F. Supp. 3d 141, 154 (W.D.N.Y. 2019).

pricing are actionable independently of the AML's provisions. A claim based on deceptive conduct under consumer protection laws remains viable even when such conduct also violates another statute or regulation, as long as there is no conflict between applying the consumer protection laws and the other regulatory scheme. For instance, in *Samms*, 163 F. Supp.3d 109, the court denied the defendant's motion for summary judgment finding "no basis" for the defendant's argument that the plaintiff's GBL § 349 claim must be dismissed where the underlying conduct also would support a GBL § 601 claim. *Id.* at 117. Similarly, in *Martinez v. Lvnv Funding, LLC*, 2016 U.S. Dist. LEXIS 136613, 2016 WL 5719718 (E.D.N.Y. Sept. 30, 2016), the court rejected the defendants' argument that the plaintiff's GBL § 349 claim was "merely an artfully crafted complaint against abusive debt collection practices under GBL § 601," and explained "simply because a given set of facts would give rise to a claim under GBL § 601[,]" it did not mean that a private action under GBL § 349 would necessarily be barred. 2016 U.S. Dist. LEXIS 136613, [WL] at *2.

Nonetheless, even if Dollar General's baseless claims are taken as true, the AML is about state enforcement, not a roadblock to private consumer claims. Plaintiffs aren't challenging regulatory standards—they're pursuing Dollar General for deceptive pricing under GBL § 349, which has nothing to do with state-administered weights and measures rules. To argue otherwise drives a stake through the heart of the intent of GBL § 349 which was to counter evolving forms of deceptive conduct. *See Karlin v. IVF Am., Inc. et. al.*, 712 N.E.2d 662 (1999); *Dole, Merchant and Consumer Protection*: The New York Approach to the Regulation of Deceptive Trade Practices, 53 Cornell L.Rev. 749, 749 (1968); Report of the Committee on New York State Antitrust Law of the Antitrust Law Section of the New York State Bar Association: A Proposed New State Law Making Deceptive Acts or Practices Unlawful, 1968 N.Y. St. B.A. Antitrust L. Symp. 114, 128, 129. The Act was designed as a substantive new remedy to apply "to all deceptive

acts or practices declared to be unlawful, *whether or not subject to any other law of this state*." See New York General Business Law § 349(g) (McKinney 1994) (emphasis supplied). Plaintiffs are not challenging state-administered weights and measures standards; rather, they allege Dollar General engaged in deceptive pricing practices misleading consumers and violating GBL § 349.

## V.    The Voluntary Payment Doctrine Does Not Bar Plaintiffs' Claims

Dollar General's invocation of the voluntary payment doctrine is also misguided. The doctrine bars recovery of payments voluntarily made with ***full knowledge*** of the facts *and* in the absence of fraud or mistake, *Fishon*, 620 F. Supp. 3d at 105, neither of which is here.

### A.    Lack of Disclosure of Material Facts

The voluntary payment doctrine does not apply when "a plaintiff's claim is predicated on a lack of full disclosure by defendant." *Fink*, 810 F. Supp.2d at 649. Plaintiffs' GBL 349 claims are predicated on a lack of full disclosure because Dollar General failed to accurately disclose the prices of the products charged at checkout. Plaintiffs further allege they were materially misled by Dollar General's omissions in failing to disclose the accurate price on its shelf labels. In similar cases, courts have found that the voluntary payment doctrine does not bar a GBL 349 claim. *See Spiro*, 73 F. Supp. 3d at 275 ("That defendants disclosed in advance their intention to charge $0.75 per page, or that plaintiffs 'voluntarily agreed' to pay this figure, does not preclude a claim under Section 349(a), where defendants allegedly failed to disclose that their actual costs were below that figure.") (citations omitted); *Fink*, 810 F. Supp.2d at 649 (denying summary judgment to internet provider and finding voluntary payment doctrine inapplicable where "[i]ssues of disclosure, notice, and authorization [we]re very much contested", customers alleged defendant made misrepresentations about its high-speed internet service to increase its profits, and customers alleged that defendant's policy was to misrepresent to customers the reasons for slow service).

Dollar General claims because it "fully disclosed the pricing on the register displays which have screens showing individual and total amounts owed" that this amounts to Plaintiffs having "full disclosure." However, since Dollar General conceded it overcharged the Wolfs[9], there is a genuine issue of material fact as to whether there was "full disclosure", and as such, application of this doctrine should be rejected. *See Caro Capital, LLC v. Koch*, 653 F. Supp. 3d 108, 130 (S.D.N.Y. 2023); *Fink*, 810 F. Supp.2d at 649.

## VI. Plaintiffs Have Standing to Seek Injunctive Relief

Dollar General asserts that Plaintiffs, as past purchasers, lack standing to seek injunctive relief. However, this position overlooks established principles allowing standing for injunctive relief where a deceptive practice is likely to recur and affect future transactions.

### A. Risk of Repeat Harm Is Real

Dollar General's pattern of pricing discrepancies shows that future consumers are at risk. Weights and Measures Audits demonstrate that in 2022, Dollar General failed 123 government audits, and in 2023, Dollar General failed another 69 audits. In September 2023, the State of Missouri filed a petition for injunction, restitution, civil penalties, and other relief against Dollar General based on their ongoing conduct. SOF ¶ 55; Merino Dec. Exh. 8. Dollar General hired a third-party company to evaluate its (lack of) pricing compliance, and the company noted that ongoing changes had to be made to address "unreliable pricing compliance". Injunctive relief would protect all customers, preventing further harm from Dollar General's flawed pricing practices. In cases of deceptive business practices, injunctive relief serves the purpose of preventing ongoing harm to the public. Plaintiffs are entitled to seek injunctive relief on behalf of consumers who may be subject to future overcharges, especially where Dollar General has shown

---

[9] See SOF ¶¶ 2-3, 5-8, 43, 115-117; Goldstein Decl. Ex. 1 (Compl. ¶¶ 14, 22); Merino Decl. Exh. 1 (DG_WOLF_0001764); Goldstein Decl. Exh. 13 (WOLF_00001-02); Goldstein Decl. Exh. 16 (WOLF_000007-09).

a history of systematic discrepancies. This matter is inapposite of *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020), unlike the plaintiff in *Berni* who was "by his own admission," "not deceived by Barilla's packaging," here, Plaintiffs' established they were mislead by Dollar General's deceptive practices. *See Allen v. Koenigsmann*, 2023 U.S. Dist. LEXIS 57051, at *16 (S.D.N.Y. Mar. 31, 2023) (distinguishing *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) as the *Berni* complaint only alleged past harms).

## VII.    Punitive Damages Are Justified Under GBL § 349

Dollar General asserts that punitive damages are unavailable under GBL § 349. This claim mischaracterizes New York law, as courts recognize that punitive damages may be awarded under GBL § 349 where a defendant's conduct is morally culpable or evinces a "high degree of moral turpitude. *See Wilner v. Allstate Ins. Co*., 893 N.Y.S.2d 208, 218 (2d Dep't 2010) ("Under General Business Law § 349 consumers may recover actual damages in any amount … Moreover, the plaintiffs may seek both treble damages and punitive damages.") The Second Circuit adopted the position in *Wilner* in *Barkley v. Olympia Mortg. Co.,* 557 F. App'x 22, 26 (2d Cir. 2014) noting ("punitive damages may be awarded for a violation of GBL § 349").

### A.  High Degree of Moral Culpability

Plaintiffs allege Dollar General's conduct was more than negligent; it was intentional and widespread, affecting a significant number of consumers. Such allegations, if proven, support an award of punitive damages under GBL § 349. Contrary to Dollar General's assertion, courts in New York acknowledge that punitive damages can be appropriate under GBL § 349 where a defendant's actions reflect a willful disregard for consumer rights. See, e.g., *Bristol Vill., Inc. v. La.–Pac. Corp*., 916 F.Supp.2d 357, 371 (W.D.N.Y. 2013) (noting §349 "expressly allows for the recovery of limited punitive damages." Consistent with this rationale, federal courts within the

Second Circuit, as well as state courts, adopted *Wilner*. S*ee, e.g., Cohen v. Narragansett Bay Ins. Co*., 2014 WL 4701167 (E.D.N.Y. Sept. 23, 2014) (holding "there is no precise limit on the amount of punitive damages" a plaintiff may collect under section 349 and arguments asserting any such limit "stemmed from [a] misreading of the statutory language with respect to treble damages, given that noting in the statute 'govern[s] the award of punitive damages.'" (quoting *Barkley I*, 2012 WL 2357295, at *17 n.16)). *Midland Funding, LLC v. Giraldo*, 961 N.Y.S.2d 743 (N.Y. Dist. Ct. 2013) ("If successful [on a §349 claim], the party may recover 'actual damages in any amount,' together with treble damages punitive damages, and attorney's fees.").

## VIII.    Public Interest in Deterrence

Dollar General ignores that "there is a tension in New York law as to "awarding punitive damages under section 349." *Bueno v. LR Credit 18, LLC*, 269 F. Supp. 3d 16, 19 (E.D.N.Y. 2017). What is clear, however, is that Dollar General's practices of overcharging the Wolfs and other customers for years warrants an award of punitive damages. An award of punitive damages would serve the public interest by deterring Dollar General and other retailers from engaging in deceptive pricing practices. The conduct at issue has potential ramifications for a wide consumer base, justifying punitive damages as a means to promote compliance with fair pricing standards. Punitive damages aren't just about compensation—they're a powerful tool to stop businesses from deceiving consumers. Dollar General's actions call for deterrence, and punitive damages are fully appropriate here.

<u>**CONCLUSION**</u>

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Dollar General's Motion.

Dated: November 29, 2024
    North Brunswick, NJ

/s/ Javier L. Merino
Javier L. Merino
THE DANN LAW FIRM
1520 US 130, Ste. 101
North Brunswick, NJ 08902
Phone: (201) 355-3440
Fax: (216) 373-0536
Email: jmerino@dannlaw.com


Adam A. Edwards*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
aedwards@milberg.com


Scott C. Harris*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
900 West Morgan Street
Raleigh, NC 27603
Tel: 919-600-5003
hbryson@milberg.com

*Counsel for Plaintiffs Joseph Wolf, Carmen
Wolf, and the Putative Class*

*\*Admitted pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 29, 2024 a true and accurate copy of the foregoing was sent via electronic means to the following parties:

Philip A. Goldstein, Esq. at pagoldstein@mcguirewoods.com
McGuireWoods LLP
1251 Avenue of the Americas
20th Floor
New York, NY 10020
212-548-2167
Fax: 212-715-6275


Richard Trent Taylor, Esq. at rtaylor@mcguirewoods.com
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
804-775-1182

*Attorneys for Defendant Dolgen New York, LLC d/b/a Dolgen*


*/s/ Scott C. Harris*
Scott C. Harris

*Counsel for Plaintiffs Joseph Wolf, Carmen Wolf, and the Putative Class*