# EXHIBIT 8

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI**

| | | |
|---|---|---|
| STATE OF MISSOURI ex rel. | ) | |
| Attorney General Andrew Bailey, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| AGRICULTURE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | Division: |
| DOLGENCORP, LLC, d/b/a | ) | |
| DOLLAR GENERAL, | ) | |
| | ) | |
| Serve Registered Agent: | ) | |
| CSC-LAWYERS INCORPORATING | ) | |
| SERVICE COMPANY | ) | |
| 221 Bolivar Street | ) | |
| Jefferson City, MO 65101, | ) | |
| | ) | |
| Defendant. | ) | |

**PETITION FOR INJUNCTION, RESTITUTION,
CIVIL PENALTIES, AND OTHER RELIEF**

**INTRODUCTION**

Missouri consumers, like many Americans across the country are

paying more for food and necessary household items as a result of the high

inflation of the last few years. In a recent Gallup poll, 61% of Americans

report experiencing financial hardship due to inflation, with the cumulative

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

impact hitting households with an annual household income of less than $40,000 especially hard.

Consumers are doing their best to make every dollar stretch as far as possible, flocking to discounters, including Dollar General. Rather than offering bargains or discounts, Dollar General is routinely overcharging Missouri consumers for every day staples and the necessities of life. Worse still, consumers are being deceived as to the prices they are actually paying for these items. Candles, toilet paper, lip balm, lemonade, tire foam and drink coolers all have one thing in common at Dollar General stores across the state of Missouri: the prices charged at the point of sale are frequently higher than the prices listed on the shelf.

In an extensive statewide investigation conducted by the Missouri Department of Agriculture and the Missouri Attorney General's Office, 92 of the 147 locations where investigations were conducted failed inspection. Price discrepancies ranged up to as much as $6.50 per item, with an average overcharge of $2.71 for the over 5,000 items price checked by investigators. This civil action seeks to hold Dollar General accountable for its unfair and deceptive pricing practices and ensure that Missouri consumers are treated fairly.

Plaintiff, the State of Missouri, ex rel. Andrew Bailey Attorney General ("Plaintiff") brings this Petition for Injunction, Restitution, Civil Penalties,

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

and Other Relief against Dolgencorp, LLC, ("Dolgencorp"), d/b/a Dollar General, ("Dollar General"), ("Defendant"), for violations of the Missouri Merchandising Practices Act. Upon information and belief, Plaintiff states as follows:

## PARTIES

1.    Andrew Bailey is the Attorney General of the State of Missouri and brings this action in his official capacity pursuant to Chapter 407, RSMo.

2.    The Missouri Department of Agriculture through its Division of Weights, Measures, and Consumer Protections is tasked with verifying price accuracy of retail stores pursuant to Chapter 413.

3.    Dolgencorp, LLC is a corporation organized under the laws of the State of Tennessee located at 100 Mission Ridge, Goodlettsville, TN, 37072. Defendant Dolgencorp advertised, solicited, sold, and offered to sell merchandise in Missouri under the trade name Dollar General. It can be served through its registered agent at: CSC-LAWYERS INCORPORATING SERVICE COMPANY, 221 Bolivar Street, Jefferson City, MO 65101.

4.    At all times relevant to the facts alleged in this petition, Defendant Dolgencorp, doing business as Dollar General, has done and does business within the State of Missouri by, among other activities, advertising merchandise to be sold in its more than 600 retail stores within the State of

3

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

Missouri and by selling such merchandise in retail stores within Missouri.

5.      Any acts, practices, methods, uses, solicitations or conduct of the Defendant alleged in this Petition include the acts, practices, methods, uses, solicitations or conduct of the Defendants' employees, agents, or other representatives acting under Defendants' direction, control, or authority.

## JURISDICTION

6.      This Court has subject matter jurisdiction pursuant to Article V, § 14 of the Missouri Constitution.

7.      This Court has authority over this action pursuant to § 407.100, which allows the Attorney General to seek injunctive relief, penalties, and other relief in circuit court against persons who violate § 407.020.

8.      This Court has personal jurisdiction over Defendants pursuant to the Missouri Merchandising Practices Act, §§ 407.010, RSMo, *et seq.*, and § 506.500, RSMo.

9.      This court has authority over this action pursuant to § 407.100, which allows the Attorney General to seek injunctive relief, restitution, penalties, and other relief in circuit court against persons who violate § 407.020, RSMo.

## VENUE

10.     Venue is proper in this Court pursuant to § 407.100.7, RSMo, which provides that "any action under this section may be brought in the

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

county in which the defendant resides, in which the violation alleged to have been committed occurred, or in which the defendant has his principal place of business."

11.    Defendants have engaged in the acts, practices, methods, uses, solicitation and conduct described below that violate § 407.020, RSMo, in St. Louis City, Missouri, among other places.  Thus venue is proper in this Court.

## **MERCHANDISING PRACTICES ACT**

12.    Section 407.020, RSMo provides in pertinent part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice… Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement, or solicitation.

13.    Section 407.100.1, RSMo states:

> Whenever it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, the attorney general may seek and obtain, in an action in a circuit court, an injunction prohibiting such person from continuing such methods, acts, uses, practices, or solicitations, or any combination thereof, or engaging therein, or doing anything in furtherance thereof.

5

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

14.  "Person" is defined as "any natural person or his legal representative, partnership, firm, for-profit or not-for-profit corporation, whether domestic or foreign, company, foundation, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." § 407.010(5), RSMo.

15.  "Merchandise" is defined as "any objects, wares, goods, commodities, intangibles, real estate, or services." § 407.010(4), RSMo.

16.  "Trade" or "commerce" is defined as "the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated. The terms "trade" and "commerce" include any trade or commerce directly or indirectly affecting the people of this state." § 407.010(7), RSMo.

17.  Defendants have advertised, marketed, and sold merchandise in trade or commerce within the meaning of § 407.010, RSMo.

18.  Pursuant to § 407.145, RSMo, the Attorney General has promulgated rules explaining and defining terms in §§ 407.010-407.145 of the Merchandising Practices Act. The rules relevant to the Merchandising Practices Act allegations herein include the provisions of 15 CSR 60.

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

19.    "Seller", as used in Chapter 407 and the rules found at 15 CSR 60-7.010 et seq., "means any person who offers, advertises or sells any product for sale…in this state" and it includes "any officer, agent, employee, salesperson or representative of a seller."

## **ALLEGATIONS OF FACT**

20.    Plaintiff incorporates all allegations as stated above.

21.    Defendant has been, at all times relevant to this action, engaged in the business of selling consumer goods in the State of Missouri, including in St. Louis City.

22.    Defendant offers sales of food and household goods at over 600 retail locations throughout Missouri using advertisements on their shelves to display the price of goods.

23.    Defendant engages in trade or commerce that directly or indirectly affects Missouri residents and others as defined by § 407.010(7).

24.    When the goods are scanned for purchase at the register, the price that is charged to the consumer is consistently different than the price advertised on the shelf.

25.    Missouri consumers are damaged when they pay prices higher than the advertised price, whether they realize the pricing difference at the point of sale or not.

26.    Over the course of the past 18 months, Plaintiff inspected the

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

pricing practice at multiple retail stores owned or operated by Defendant in Missouri. In the course of such inspections, Plaintiff randomly selected items listed for purchase throughout the store to verify a product's listed prices in comparison with the Point of Sale scanned price.

27.    Plaintiff's inspection of hundreds of items at Dollar General's retail stores revealed that its stores had numerous pricing discrepancies in which the price of merchandise at checkout or point of sale was higher than the price that had been advertised for the merchandise on the shelf or on a display. Dollar General's representations of prices on its shelves and displays were false and misleading as to the prices then in effect and available to consumers.

28.    On April 17, 2023, investigators with the Missouri Department of Agriculture Weights, Measures and the Missouri Attorney General's Office, visited the Dollar General Store #24045 located at 7700 S. Broadway, St. Louis, MO 63111.

29.    The inspection was conducted pursuant to the ongoing investigation into alleged pricing discrepancies at Dollar General stores.  The inspection was performed according to the Department of Agriculture's rules and regulations and was conducted in an unbiased manner, where 50 items were randomly selected throughout the store to verify a product's listed prices in comparison with the Point of Sale scanned price.

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

30.    According to the Inspectors with the Department of Agriculture, if more than two items were in violation (inconsistent pricing), the store fails the inspection.

31.    Four out of 50 items were in violation, giving the store an 8% violation rate. The items and prices that were in violation are as follows:

| Number | Item | Listed Price | Scanned Price |
|--------|------|--------------|---------------|
| 1 | Tostitos Scoops 10oz | $4.60 | $4.00 |
| 2 | Sun Chips Cheddar 7oz | $3.75 | $4.00 |
| 3 | Gatorade Frost Glacier Freeze 28oz | $1.45 | $1.70 |
| 4 | Sterilite Latching Box 106Q/100L | $16.50 | $18.00 |

32.    On April 17, 2023, investigators with the Missouri Department of Agriculture Weights, Measures and the Missouri Attorney General's Office, visited the Dollar General Store #10880 located at 4488 Lemay Ferry Rd, St. Louis, MO 63111.

33.    The inspection was conducted pursuant to the ongoing investigation into alleged pricing discrepancies at Dollar General stores.  The inspection was performed according to the Department of Agriculture's rules and regulations and was conducted in an unbiased manner, where 50 items were randomly selected throughout the store to verify a product's listed prices in comparison with the Point of Sale scanned price.

34.    According to the Inspectors with the Department of Agriculture,

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

if more than two items were in violation (inconsistent pricing), the store fails

the inspection.

35.    Six out of 50 items were in violation, giving the store a 12%

violation rate. The items and prices that were in violation are as follows:

| Number | Item | Listed Price | Scanned Price |
|---|---|---|---|
| 1 | Hershey's Milk Chocolate with Almonds, 4 full size bars | $4.35 | $4.50 |
| 2 | BodyArmor Tropical Punch 16oz | $1.40 | $1.45 |
| 3 | Vigo Saffron Yellow Rice 9oz | $1.65 | $1.00 |
| 4 | Hanes 6 Men's Crew Socks pairs with one free pair | $7.50 | $7.75 |
| 5 | Comfort Bay Fast Dry Bath Towel | No price shown | $6.50 |
| 6 | Connect 4 Card Game | No price shown | $2.75 |

36.    On April 18, 2023, investigators with the Missouri Department of

Agriculture Weights, Measures and the Missouri Attorney General's Office,

visited the Dollar General Store #13375 located at 5501 E. Truman Rd.,

Kansas City, Missouri 64127.

37.    The inspection was conducted pursuant to the ongoing

investigation into alleged pricing discrepancies at Dollar General stores.  The

inspection was performed according to the Department of Agriculture's rules

and regulations and was conducted in an unbiased manner, where 50 items

were randomly selected throughout the store to verify a product's listed prices

in comparison with the Point of Sale scanned price.

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

38.     According to the Inspectors with the Department of Agriculture, if more than two items were in violation (inconsistent pricing), the store fails the inspection.

39.     Six out of 50 items were in violation, giving the store a 12% violation rate. The items and prices that were in violation are as follows:

| Number | Item | Listed Price | Scanned Price |
|--------|------|--------------|---------------|
| 1 | Suddenly Pasta Salad, twin pack, 15 oz. | $3.65 | $4.00 |
| 2 | True Living scented candle, twilight forest, 18 oz. | $5.00 | $6.00 |
| 3 | JB Weld, Clear Weld, fluid 0.47 oz. | $5.00 | $6.55 |
| 4 | True Living, Meal Prep Round Storage containers, 5 count | $4.25 | $4.50 |
| 5 | Temptations, Meaty Bites-Salmon flavor, 1.5 oz. | $2.75 | $2.95 |
| 6 | ChapStick total hydration, soothing vanilla, 12 oz. | $3.00 | $3.25 |

40.     Prices, availability and the terms of sale of merchandise offered by Dollar General are likely to be considered important by consumers when contemplating making a purchase from Dollar General and are likely to cause the consumer, in whole or in part, to make a particular purchase of Dollar General's merchandise.

41.     Dollar General falsely advertised merchandise for sale at a reduced price from its current or customary price.

42.     Dollar General engages in or has engaged in and is likely to engage in unfair and deceptive practices which result in injury, loss or damage to consumers.

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

## VIOLATIONS OF LAW

### COUNT I – MISREPRESENTATION

43.    Plaintiff incorporates all allegations stated above.

44.    Under the MMPA, a "misrepresentation is an assertion that is not in accord with the facts." 15 CSR 60-9.070.

45.    Dollar General engages in misrepresentations in violation of § 407.020, RSMo and 15 CSR 60-9.070 by asserting that prices on its shelves and displays for products that are not in accord with the facts of what the customer will actually be charged for those products.

46.    As a result of Dollar General's misrepresentations, Missouri consumers have suffered an ascertainable loss.

### COUNT II – DECEPTION

47.    Plaintiff incorporates all allegations stated above.

48.    Under the MMPA, a "deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." 15 CSR 60-9.020.

49.    Dollar General engages in deception in violation of § 407.020, RSMo and 15 CSR 60-9.020 in that it's listed prices for products have the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression in consumers regarding the price they will actually be charged for those products.

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

## COUNT III – CONCEALMENT/SUPPRESSION OF MATERIAL FACTS

50.    Plaintiff incorporates all allegations stated above.

51.    Under the MMPA, "[c]oncealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers." 15 CSR 60-9.110(1).

52.    "Suppression of a material fact is any method, act, use or practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated." 15 CSR 60-9.110(2).

53.    Dollar General engages in concealment and/or suppression of material facts in violation of § 407.020, RSMo and 15 CSR 60-9.110 in that its actions alleged herein operate to hide or keep from consumers the material fact of the prices they will be charged for products, and/or is likely to curtail or reduce the ability of consumers to take notice of those material facts.

## COUNT IV - UNFAIR PRACTICES

54.    Plaintiff incorporates all allegations stated above.

55.    Under the MMPA, an unfair practice is any practice that "is unethical, oppressive or unscrupulous" and "[p]resents a risk of, or causes, substantial injury to consumers." 15 CSR 60-8.020(1).

56.    Dollar General engages in unfair practices in violation of § 407.020, RSMo and 15 CSR 60-8.020 because its actions alleged herein are unethical, oppressive or unscrupulous and present a risk of or cause

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

substantial injury to consumers.

## **RELIEF**

WHEREFORE, Plaintiff prays this Court enter judgment:

1.      Finding that Defendant violated the provisions of § 407.020.

2.      Issuing a preliminary injunction prohibiting and enjoining Dollar General and its agents, servants, employees, representatives, and other individuals acting at its direction from engaging in any of the acts and practices described herein that this Court declares unlawful;

3.      Issuing a permanent injunction prohibiting and enjoining Dollar General and its agents, servants, employees, representatives, and other individuals acting at its direction from engaging in any of the acts and practices described herein that this Court declares unlawful;

4.      Award a civil penalty to the state of one thousand dollars for each violation of § 407.020;

5.      An award of restitution payable to the State as may be necessary to restore to any person who has suffered any ascertainable loss as a result of Defendant's unlawful practices;

6.      An additional award equal to 10% of any restitution awarded in this action payable to the State to the credit of the Merchandising Practices Revolving Fund as required by § 407.140.3;

Electronically Filed - CITY OF ST. LOUIS - September 13, 2023 - 12:15 PM

7. Disgorgement of Defendant's ill-gotten gains acquired in connection with its unlawful practices;

8. Requiring Defendant to pay all court, investigative, and prosecution costs of this case per § 407.130; and

9. Granting any further relief that this Court deems proper.

Respectfully submitted,

**ANDREW BAILEY**
Attorney General

/s/ Steven Reed
Steven Reed, #40616
Steven.Reed@ago.mo.gov
Keith Wade, #74889
Keith.Wade@ago.mo.gov
Assistant Attorneys General
P.O. Box 899
Jefferson City, MO 65102
Phone: (573) 751-0023
Fax: (573) 751-2041

ATTORNEYS FOR PLAINTIFF

# AG Platkin: New Jersey Division of Consumer Affairs Reaches Settlement with Dollar General Over Allegations of Pricing Violations

**For Immediate Release: November 28, 2023**

Office of the Attorney General
– Matthew J. Platkin, *Attorney General*
Division of Consumer Affairs
– Cari Fais, *Acting Director*
Division of Law
– Michael T.G. Long, *Director*

**For Further Information:**

**Media Inquiries-**
Lisa Coryell
OAGpress@njoag.gov

**TRENTON** – Attorney General Matthew J. Platkin and the Division of Consumer Affairs ("Division") today announced that Dollar General Corp. ("Dollar General"), a national discount retail chain with 186 stores in New Jersey, has agreed to pay $1.2 million to resolve allegations by the Division's Office of Weights and Measures ("OWM") that the chain repeatedly engaged in merchandise pricing violations at several retail stores across the state. The settlement, which includes a $1.18 million civil penalty, is the largest ever obtained by OWM.

According to the State's allegations, the Tennessee-based retailer violated New Jersey's Consumer Fraud Act ("CFA") and Weights and Measures Act ("WMA") by selling a variety of merchandise that scanned at the cash register for higher prices than were posted where the merchandise was displayed for sale.

OWM pricing inspections of 58 New Jersey stores in November 2022 and February 2023 found more than 2,000 instances in which the price charged at the register for a particular product was higher than the posted price, in some cases as much as $5.95 higher.

"New Jersey, under the leadership of Governor Murphy, has demonstrated a strong commitment to protecting consumers from unfair practices that disproportionately burden low- and moderate-income New Jerseyans," **said Attorney General Platkin**. "This settlement advances those efforts by imposing a significant civil penalty against a national retailer for engaging in pricing practices that deceived and defrauded New Jersey residents."

The allegations resolved by the settlement reflect an ongoing pattern of pricing violations at Dollar General stores in New Jersey. Prior OWM inspections of Dollar General stores statewide from 2018 to 2022 have led to a total of $43,678 in assessed fines against the retailer for pricing violations.

"Dollar General claims to provide everyday essentials at affordable prices in communities often underserved by other retailers, but time and time again the chain has been caught overcharging customers through deceptive pricing tactics," **said Cari Fais, Acting Director of the Division of Consumer Affairs**. "New Jersey is committed to ensuring transparency and fairness in its marketplace.  Today we hold Dollar General accountable for disregarding our consumer protection laws and unlawfully boosting its profits at the expense of consumers who can least afford it."

In addition to paying a $1.18-million civil penalty and reimbursing the Division's investigative costs and attorney's fees, the settlement requires Dollar General to make changes to its business practices to prevent future violations.

Those changes, contained in a Consent Order filed with the Division today, require Dollar General to:

- comply with all applicable state and federal laws and not engage in any unconscionable business practices or pricing violations as prohibited by the CFA and the WMA;
- ensure that all employees in New Jersey Dollar General stores who have pricing responsibilities participate in pricing training within 90 days of this agreement;
- conduct internal audits for a period of three years, such that each New Jersey Dollar General store is audited at least once a year and that an audit revealing overcharge errors in more than 2% of the products sampled at any one store shall constitute a failed audit;
- within ten business days of a failed audit, submit to the Division the report of the failed audit and a corrective action plan describing how Dollar General intends to prevent future pricing inaccuracies at the store location that failed the audit; and

- retain all reports and records of every internal employee training session and every internal audit for a period of three years and provide them to the Division upon request.

The investigation was conducted by inspectors in the OWM Enforcement Unit, under the supervision of Supervisor of Enforcement Jason Flint and Acting Superintendent David Freed.

Deputy Attorney General Jeffrey Kozier, under the supervision of Consumer Fraud Prosecution Section Chief Jesse Sierant within the Division of Law's Affirmative Civil Enforcement Practice Group, represented the State in this matter.

Consumers who believe that a business is in violation of the New Jersey Consumer Fraud Act or the Weights and Measures Act are encouraged to file an online complaint. Consumers can also call **1-800-242-5846** to receive a complaint form by mail.

\*\*\*

*The mission of the Division of Consumer Affairs, within the Department of Law and Public Safety, is to protect the public from fraud, deceit, misrepresentation and professional misconduct in the sale of goods and services in New Jersey through education, advocacy, regulation and enforcement. The Division pursues its mission through its 51 professional and occupational boards that oversee approximately 750,000 licensees in the state, its Regulated Business section that oversees 60,000 NJ registered businesses, as well as through its Office of Consumer Protection, Bureau of Securities, Charities Registration section, Office of Weights and Measures, and Legalized Games of Chance section.*

\#\#\#

FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
11/01/2022 03:14 PM
CV 2022 11 1812

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO ex rel. | ) | |
| ATTORNEY GENERAL | ) | CASE NO. |
| DAVE YOST | ) | |
| 30 E. Broad Street, 14th Floor | ) | JUDGE |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT AND REQUEST FOR** |
| | ) | **DECLARATORY JUDGMENT,** |
| DOLLAR GENERAL CORPORATION | ) | **INJUNCTIVE RELIEF,** |
| d/b/a DOLLAR GENERAL | ) | **CONSUMER RESTITUTION, AND** |
| 100 Mission RDG | ) | **CIVIL PENALTIES** |
| Goodlettsville, TN 37072 | ) | |
| | ) | |
| Defendant. | ) | |

## JURISDICTION AND VENUE

1.  Plaintiff, State of Ohio, through Attorney General Dave Yost, having reasonable cause to believe that violations of Ohio's consumer protection laws have occurred, brings this action in the public interest and on behalf of the State of Ohio under the authority vested in the Attorney General by R.C. 1345.07.

2.  The actions of Defendant Dollar General Corporation, as described below, have occurred in Ohio, including in Butler County, and, as set forth below, are in violation of the Consumer Sales Practices Act ("CSPA"), R.C. 1345.01 et seq., and its Substantive Rules, Ohio Administrative Code ("O.A.C") 109:4-3-01 et seq.

3.  Jurisdiction over the subject matter of this action lies with this Court pursuant to R.C. 1345.04 of the CSPA.

4.  This Court has venue to hear this case pursuant to Ohio Civ. R. 3(C)(3) because Butler County is one of the Ohio counties in which the Defendant conducted activity that gave rise to the claim for relief.

1

## DEFENDANT

5.    Defendant is a Tennessee corporation that has been registered with the Tennessee Secretary of State since May 29, 1998.

6.    Defendant's principal place of business is 100 Mission RDG, Goodlettsville, Tennessee 37072.

7.    Defendant engaged in consumer transactions using the name Dollar General.

8.    Defendant registered the trade name, Dollar General, with the Ohio Secretary of State on March 2, 2015.

9.    Defendant is a "supplier," as that term is defined in R.C. 1345.01(C), as Defendant engaged in the business of effecting "consumer transactions," either directly or indirectly, by soliciting or selling goods or services to "consumers" for purposes that were primarily for personal, family or household use, as those terms are defined in R.C. 1345.01(A), (C) and (D).

## STATEMENT OF FACTS

10.    Defendant has been at all times relevant to this action engaged in the business of selling consumer goods in the State of Ohio, including in Butler County.

11.    Defendant offers sales of household goods at multiple store locations throughout Ohio using advertisements on their shelves to display the price of goods.

12.    When the goods are scanned for purchase at the register, the price that is charged to the consumer is different than the price advertised on the shelf.

13.    Consumers are damaged when they pay prices higher than the advertised price, whether they realize the pricing difference at the point of sale or not.

2

## **CAUSE OF ACTION: VIOLATIONS OF THE CSPA**

### **Count I – Unfair and Deceptive Acts and Practices**

14.     Plaintiff incorporates by reference, as if completely rewritten herein, the allegations set forth in Paragraphs One through Thirteen (1-13) of this Complaint.

15.     Defendant committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A) and R.C. 1345.02(B)(8), by representing that a specific price advantage exists, if it does not.

16.     The acts or practices described above have been previously determined by Ohio courts to violate the CSPA, R.C. 1345.01 et seq.  Defendants committed said violations after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

### **Count II - Bait Advertising**

17.     Plaintiff incorporates by reference, as if completely rewritten herein, the allegations set forth in Paragraphs One through Thirteen (1-13) of this Complaint.

18.     Defendant committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A), and the Bait Advertising Rule, O.A.C. 109:4-3-03, by making offers of sales of goods when such offers are not a bona fide effort to sell such a good.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.     DECLARE, pursuant to R.C. 1345.07(A)(1), that each act or practice complained of herein violates the CSPA, R.C. 1345.01 et seq., and its Substantive Rules, O.A.C. 109:4-3-01 et seq., in the manner set forth in this Complaint.

B.    ISSUE A PERMANENT INJUNCTION, pursuant to R.C. 1345.07(A)(2), enjoining Defendant, doing business under its own name or any other names, its agents, representatives, salespersons, employees, successors, or assigns, and all other persons acting in concert and participation with Defendant, directly or indirectly, from engaging in the acts or practices of which Plaintiff complains and from further violating the CSPA, R.C. 1345.01 et seq., and its Substantive Rules, O.A.C. 109:4-3-01 et seq., including, but not limited to, violating the specific statutes and rules alleged to have been violated herein.

C.    ASSESS, FINE, AND IMPOSE upon Defendant a civil penalty of $25,000 for each separate and appropriate violation described herein, pursuant to R.C. 1345.07(D).

D.    ORDER Defendant, pursuant to R.C. 1345.07(B), to pay actual damages to all consumers injured by the conduct of Defendant.

E.    ISSUE AN INJUNCTION prohibiting Defendant from engaging in business as a supplier in any consumer transaction in Ohio until such time as Defendant has satisfied all monetary obligations ordered by this Court or any other Ohio court, in connection with a consumer transaction.

F.    GRANT the Plaintiff its costs in bringing this action including, but not limited to, the costs of collecting on any judgment awarded.

G.    ORDER Defendant to pay all court costs.

H.    GRANT such other relief as the Court deems to be just, equitable, and appropriate.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

/s/ *Lisa M. Treleven*
LISA M. TRELEVEN (0086628)

4

Assistant Attorney General
Consumer Protection Section
411 Vine Street, 17th Floor
Cincinnati, Ohio 45202
(513)852-1527 (phone)
(866)347-2545 (fax)
Lisa.Treleven@OhioAGO.gov
Counsel for Plaintiff, State of Ohio

MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
02/07/2023 01:51 PM
CV 2022 11 1812

## IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel.<br>ATTORNEY GENERAL<br>DAVE YOST | )<br>)<br>) | CASE NO. CV 2022 11 1812 |
| | )<br>) | JUDGE OSTER |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| DOLLAR GENERAL CORPORATION<br>d/b/a DOLLAR GENERAL, *et al.* | )<br>) | STIPULATED ORDER |
| | ) | |
| Defendants. | ) | |

### STIPULATED ORDER

The State of Ohio ex rel. Attorney General Dave Yost ("Plaintiff") and Dollar General Corporation and Dolgen Midwest, LLC ("Dollar General") agree to the following terms and conditions as a compromise to resolve Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction filed on January 11, 2023.

### DEFINITIONS

(1) "Business Day" shall mean every day that is not a Saturday, Sunday, or federal holiday.

(2) "Charged Price" shall mean the price that displays at the point-of-sale for which the consumer is to be charged upon payment.

(3) "Price Override" shall mean changing the Charged Price to the amount listed on or alleged to be listed on the Shelf Price Label.

(4) "Price Verification" shall mean comparing a Charged Price with a Shelf Price Label.

(5) "Receipt" shall have its ordinary meaning when used in this Stipulated Order, except as used in Paragraph 10, which shall have the meaning specified therein.

(6) "Shelf Price Label" shall mean the mechanism used to display a price for a specific item when displayed on a shelf, which may include, but is not limited to, a shelf sticker, paper insert, or the like.

## TERMS AND CONDITIONS

(1) If a consumer alleges to an employee that the Charged Price is higher than the Shelf Price Label for an item the consumer purchased or is attempting to purchase, in accordance with Dollar General's already existing policy, the employee shall:

    a. Adjust the price to the amount the consumer contends is on the Shelf Price Label or upon Price Verification by the employee.

    b. No action is required upon seeing proof that the Shelf Price Label is the same as or more than the Charged Price.

(2) Dollar General shall implement a policy reflecting that in any instance in which Paragraph 1 results in a Price Override, Dollar General shall make reasonable efforts to ensure the Shelf Price Label matches the Charged Price as soon as practicable.

(3) Within seven business days of the entry of this Order, Dollar General shall bring Paragraphs 1 and 2 of this Order to the attention of employees in Ohio stores and communicate the following:

    a. What is to occur when a pricing discrepancy exists pursuant to Paragraph 1; and

    b. What is to occur after a price discrepancy has been found to exist pursuant to Paragraph 2.

(4) Dollar General shall make reasonable efforts to obtain written or electronic confirmation from each store employee evidencing that above Paragraph 3 has been communicated to him or her.

(5) A sign communicating the policy in above Paragraph 3(a) shall be posted, within fifteen business days of entry of this Stipulated Order, clearly and conspicuously in each Ohio Dollar General store either on the door or at each register.

(6) Dollar General has performed a price verification review for approximately 98% of Dollar General stores in Ohio. Dollar General will complete a price verification review for the remaining Ohio stores within fourteen days of entry of this Stipulated Order.

(7) Dollar General shall provide sufficient coverage for employees to update Shelf Price Labels, which may include, but is not limited to, printing and applying new Shelf Price Labels containing updated prices.

(8) By March 1, 2023, Dollar General shall begin maintaining records sufficient to show that each week, each Dollar General retail location in Ohio (a) received the updated Shelf Price Labels; (b) printed the updated Shelf Price Labels; and (c) an employee at the Dollar General retail location used reasonable efforts to complete the application of the updated Shelf Price Labels in the appropriate locations.

(9) Dollar General shall direct their district managers to perform price checks of at least 25 items in each Ohio store every forty-five days, and at least 5 of the items will be identified as "on sale" or promotional items at the time of the price check.

    a. If more than 2 items show discrepancies between Shelf Price Labels and Charged Prices, the district manager shall confer with the store manager.

    b. If more than 5 items show discrepancies between Shelf Price Labels and Charged Prices, the district manager or store manager shall inform the appropriate corporate designee.

(10) Dollar General shall implement a policy that upon receipt of a County of Ohio Auditor's Price Verification Report that indicates a "fail rate" of above two percent, that report must be submitted to Dollar General's corporate designee by a Dollar General employee within two business days of receipt of the report. For purposes of this Paragraph, "receipt" shall not include simply being informed about a Price Verification Report; instead, "receipt" means that a Dollar General employee receives a paper copy of a Price Verification Report as provided by an Ohio County Auditor or inspector as evidenced by the employee's signature on the report.

(11)        Dollar General, upon initial receipt of a County of Ohio Auditor's Price Verification Report that indicates a "fail rate" of above two percent, either from the Auditor or its inspector (as described in Paragraph 10) or from the Plaintiff (as described in Paragraph 12), shall:

   a.  Document the receipt of the report; and

   b.  Within seven days of receipt of the report by Dollar General, adjust the Shelf Price Labels of the failing overcharge items, or request that corporate change the price to eliminate the discrepancy, and document completion of such steps.

(12)        For any Price Verification Reports that Plaintiff receives in the Consumer Protection Section, as related to this matter, directly from an Ohio County Auditor from the date of execution of this Agreement forward, Plaintiff shall send a copy of the report to the appropriate Dollar General corporate designee within seven days of receipt.

(13)        For any consumer complaint that Plaintiff receives directly from a consumer related to Dollar General stores from date of execution of this Agreement forward, Plaintiff shall send a copy of the consumer complaint to the appropriate corporate designee at Dollar General within seven business days of the complaint being entered and processed into the Consumer Protection section database.

(14)        Dollar General shall use reasonable efforts to document compliance with the terms of this Order. Not more than once every fifteen business days, Plaintiff may request, in writing, records documenting compliance with this Order from counsel for Dollar General. This request need not be made pursuant to a formal discovery request, but must be reasonable. Records shall be provided to Plaintiff within seven business days. After this Court Order is lifted or at the conclusion of this litigation, Dollar General is under no obligation to maintain these records unless such further agreement is made or ordered.

(15)        Documentation required under this Stipulated Order shall be retained by Dollar General until the conclusion of this litigation or unless a further Court Order dictates otherwise.

(16)    If Plaintiff believes Dollar General is in noncompliance with this Order, Plaintiff must submit a notice in writing to counsel for Dollar General informing them of why noncompliance is alleged. Within seven business days of Plaintiff's notification, counsel for Plaintiff and counsel for Dollar General are to meet and confer via telephone on actions taken by Dollar General to cure the alleged noncompliance and whether Plaintiff believes Dollar General remains noncompliant. If the dispute cannot be resolved, Plaintiff or Dollar General may seek a hearing with the Court regarding this Order.

(17)    Nothing in this Order restricts Plaintiff's ability to seek any available remedies for alleged noncompliance with this Stipulated Order, and Plaintiff shall have the ability to seek any and all penalties determined appropriate by the Court for contempt for violating this Order. Nothing in this Stipulated Order restricts what Plaintiff may request as a remedy for violations alleged in its Second Amended Complaint. Nothing in this Stipulated Order restricts Dollar General's ability to contest any alleged noncompliance/violations or the amount of any remedies/penalties sought by Plaintiff.

(18)    Neither party waives or concedes any legal or factual points as a result of this Stipulated Order.

(19)    This Stipulated Order is not an admission of liability on the part of Dollar General or that a discrepancy exists between Shelf Label Prices and Charged Prices in any particular instance. Nor is this Stipulated Order an admission that Dollar General acted or failed to act. Nothing in this Stipulated Order restricts Dollar General's ability to argue that an Auditor's Price Verification Report was not performed correctly pursuant to applicable standards or that an undercharge should not count as a price discrepancy for purposes of the CSPA.

(20)    This Stipulated Order applies only to Ohio stores and is limited in duration until the conclusion of this litigation or unless a further Court Order dictates otherwise.

(21)    If no time period is specified for implementation above, the time period for such implementation shall be twelve business days from entry of this Stipulated Order.

(22)     The provisions of this Stipulated Order do not apply to Ohio Dollar General stores that are closed for remodeling or relocation. Such stores, as well as any new Ohio Dollar General stores that open in the future, shall have twenty-one days from re-opening or opening in order to comply with the provisions of this Stipulated Order.

(23)     In order to comply with certain provisions of this Stipulated Order, Dollar General must rely on thousands of individual employees, and therefore, perfect performance at all times may not be practically possible. Dollar General shall use its good-faith best efforts to comply with this Stipulated Order.

(24)     Parties recognize that this does not complete litigation in this matter.


IT IS SO ORDERED

_____
Hon. Judge Oster

2/7/23
Date


Jointly submitted by:

On behalf of Plaintiff:

/s/ Lisa M. Treleven
LISA M. TRELEVEN (0086628)
MELISSA S. SMITH (0083551)
CHRISTOPHER BELMAREZ (0101433)
Assistant Attorney General
411 Vine Street, 17th Floor
Cincinnati, Ohio 45202
(513)852-1527 (phone)/(866)347-2545 (fax)
Lisa.Treleven@OhioAGO.gov
Counsel for Plaintiff, State of Ohio




On behalf of Defendants:

_s/Kimberly E. Ramundo_
Kimberly Ramundo (0066570)
Thompson Hine LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202
Telephone: (513) 352-6656
Facsimile: (513) 241-4771
kim.ramundo@thompsonhine.com
Counsel for Dollar General Corp. and Dolgen Midwest, LLC

and

_s/R. Trent Taylor_
R. Trent Taylor (admitted *pro hac vice*)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3917
Telephone: (804) 775-1182
Facsimile: (804) 225-5409
rtaylor@mcguirewoods.com
Counsel for Dollar General Corp. and Dolgen Midwest, LLC

An Official **Vermont** Government Website

State of Vermont
**Agency of Agriculture Food and Markets**

MENU

# VT to Receive $1.75 Million From Dollar General For Pricing Inaccuracies

**Vermont Agency of Agriculture Weights and Measures Program Identifies 362 Pricing Violations**



Montpelier, VT - Attorney General T.J. Donovan announced that his office has reached a $1.75 million settlement with DG Retail, LLC, also known as Dollar General, for violations of Vermont's Consumer Protection Act. Under the settlement, Dollar General resolved claims that it sold products that were advertised on the shelf at a lower price than the price at the register, even after being told at least 50 times by state inspectors from the Agency of Agriculture, Food and Markets to correct the pricing inaccuracies. The Vermont Foodbank will receive $100,000 pursuant to the settlement.

"Deceptive advertising will not be tolerated," Attorney General Donovan said. "Knowing that Dollar General caters to low-income Vermonters makes their repeatedly misrepresenting prices particularly egregious. I'm pleased that part of this settlement will directly benefit those Vermonters who struggle with food insecurity."

Dollar General operates 36 retail stores across all 14 counties in Vermont. Dollar General stores sell a wide variety of groceries and household products. Pursuant to Vermont's Weights and Measures laws, inspectors from the Agency of Agriculture routinely visit Dollar General stores to ensure that the shelf prices match the prices charged at the register. At any given inspection, inspectors randomly check the shelf prices of 50-100 products and compare them to the register prices. If the price charged at the register exceeds the shelf price, it is known as an "overcharge error." Since October 2013, inspectors have found 362 overcharge errors at 22 different Dollar General stores. Of the 362 overcharge errors, the price charged at the register exceeded the shelf price by an amount ranging from $0.02 to $6.00 per item, with a median overcharge amount of $0.35.

"Consumer protection is part of our mission at the Agency of Agriculture, Food and Markets," said Secretary of Agriculture Anson Tebbetts. "When someone shops at a store they should be assured they are getting what they paid for. The Agency's scanner inspection program provides integrity at the check-out line." More information about the Agency's enforcement of the Weights and Measures laws can be found here.

Under the terms of the settlement, in addition to the $1.75 million payment, Dollar General is required to implement a Pricing Accuracy Policy to ensure that Vermonters are charged the price reflected on a product. Dollar General will also conduct pricing audits to ensure that their products are priced accurately. A copy of the settlement is available here.  Since 2013, Dollar General has paid at least $241,700 in penalties to the Agency of Agriculture, Food and Markets.

For more information or questions, please contact Shannon Salembier, Vermont Assistant Attorney General, 802-828-3171.

Home

Contact Us

Administration

Animal Health

Agricultural Development

Dairy Business Innovation Center

Farm First

Food Safety Programs

Inclusion, Diversity, Equity & Accountability

Land Use & Renewable Energy

License and Registrations

Milk Commission

Public Health & Agricultural Resource Management

Public Information & Public Records

Vermont Agriculture & Environmental Laboratory

Water Quality

Weights & Measures

2023 Flooding Disaster Response and Recovery Resources



**AGENCY OF AGRICULTURE, FOOD & MARKETS**

**www.Agriculture.Vermont.gov**

116 State Street

Montpelier, Vt 05620-2901

**802.828.2430**

**Public Records Requests Contact:**

**Scott Waterman** | Director of Communications and Policy | Scott.Waterman@vermont.gov

- Media Inquiries
  **802.622.4662**
- Licensing & Registration
  **802.828.2436**
- Business Development
  **802.828.1619**
- Feed, Seed, Fertilizer & Lime
  **802.828.5050**
- Working Lands
  **802.917.2637**
- Public Health & Resource Management
  **802.828.1732**

- Laboratory
  **802.585.6073**
- Animal Health
  **802.828.2421**
- Dairy
  **802.828.2433**

- Consumer Protection / Weights & Measures
  **802.828.2433**
- Produce Program
  **802.461.6152**
- Meat Inspection
  **802.828.2426**

- Water Quality
  **802.828.2431**
- Act 250
  **802-461-6798**
- Pesticide
  **802.828.1732**



Return to top

Copyright © 2024 State of Vermont All rights reserved. |  **Policies**  **Accessibility Policy**  **Privacy Policy**  **Feedback Survey**



## DATCP Announces Settlement with Dollar General for Price Accuracy Violations

**FOR IMMEDIATE RELEASE:** November 20, 2023
**Contact:** Caleb Kulich, Public Information Officer, (608) 621-1290,
caleb.kulich@wisconsin.gov

MADISON, Wis. – Today the Wisconsin Department of Agriculture, Trade and Consumer Protection (DATCP) announced a major settlement with Dollar General Corporation resolving 662 alleged violations of Wisconsin price accuracy laws and 53 alleged violations of refund policy disclosure requirement laws by the retailer. Under the settlement, Dollar General does not admit to any violation of Wisconsin law, but will pay $850,006.11 in civil forfeitures, surcharges, and fees.

DATCP conducted price verification inspections at 238 Dollar General stores in Wisconsin between January 30 and February 10, 2023. DATCP Weights and Measures inspectors and municipal inspectors from Appleton, Green Bay, Kenosha, Madison, Menasha, Milwaukee, Reedsburg, and South Milwaukee checked 7,344 products sold by Dollar General to ensure that prices charged at the register matched, or were lower than, prices posted on store shelves. Of these items, DATCP alleged that 662 scanned at a higher price than was posted, resulting in customers being overcharged for 9% of the inspected products. On average, these products scanned at a 17% higher cost than the stated price.

If a customer is overcharged for an item, Wisconsin law requires that merchants using electronic price scanner systems refund at least the difference between the posted price and the price charged at point of sale. These merchants are legally required to inform customers of this law by posting a sign in a conspicuous manner; however, DATCP alleged that Dollar General stores were missing this required signage at 45 stores during the initial inspection, and at 8 stores upon re-inspection.

"The accuracy of prices on store shelves is among the most basic and essential protections consumers have," said DATCP Secretary Randy Romanski. "Consumers should be able to trust that the prices advertised to them are accurate, and they have a right to be informed of the laws protecting them."

These inspections follow a 2018 settlement wherein Dollar General paid $10,586.50 for similar alleged violations. Between that settlement and the 2023 statewide inspection, 89 routine price accuracy inspections were conducted at Dollar General stores in Wisconsin. DATCP concluded 76 of those inspections failed to meet the national standard of 98% or greater accuracy. DATCP sent 11 warning letters documenting these issues to Dollar General during this period.

Dollar General Corporation has paid $850,006.11 to settle the alleged 2023 price accuracy and price refund signage violations. Additionally, the business has made changes to prevent future violations, including internal price accuracy checks at every store in Wisconsin at least once every 45 days. Dollar General reports that it has invested, and continues to invest, in improving its price accuracy practices in Wisconsin. Dollar General has spent approximately $70,000 to verify price accuracy since learning of the alleged violations in January and expects to spend approximately $300,000 annually to support price accuracy in Wisconsin going forward. DATCP continues to work with Dollar General to protect Wisconsin consumers through inspections and staff training.

###

Find more DATCP news in our newsroom, on Facebook, Twitter, and Instagram.