**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- X
JOSEPH WOLF, CARMEN WOLF,  :    Case No. 7:23-cv-00558 (PMH)
ON BEHALF OF THEMSELVES AND THOSE : 
SIMILARLY SITUATED, :
    :
        Plaintiffs, :
    :
        v. :
    :
DOLGEN NEW YORK, LLC D/B/A DOLGEN, :
    :
        Defendant. :
------------------------------------------------------------------- X

## DEFENDANT DOLGEN NEW YORK, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Philip A. Goldstein, Esq.  
MCGUIREWOODS LLP  
1251 Avenue of the Americas, 20th Floor  
New York, New York 10020-1104  
Phone:  (212) 548-2100  
Fax:  (212) 548-2150  
*pagoldstein@mcguirewoods.com*

Richard Trent Taylor (*pro hac vice*)  
Travis C. Gunn (*pro hac vice*)  
MCGUIREWOODS LLP  
Gateway Plaza  
800 East Canal Street  
Richmond, VA 23219  
Phone: (804) 775-1000  
Fax: (804) 775-1061  
*rtaylor@mcguirewoods.com*  
*tgunn@mcguirewoods.com*

*Counsel for Defendant Dolgen New York, LLC ("Dollar General")*

1

#199787945v7< - DG - Reply ISO MSJ

# TABLE OF CONTENTS

I.    Plaintiffs Cannot Prove Dollar General's Conduct Is Materially Misleading................................................................................................1

II.   Plaintiffs Cannot Prove Actual Injury...........................................................5

III.  Plaintiffs Cannot Prove Causation.................................................................5

IV.   The GBL Safe Harbor Provides A Complete Defense To Plaintiffs' Suit .............6

V.    The AML Specifically Governs Pricing Accuracy, Foreclosing A GBL Claim .....8

VI.   Plaintiffs' Recovery Is Barred By The Voluntary Payment Doctrine ....................9

VII.  Plaintiffs Lack Standing To Seek Injunctive Relief ..............................................10

VIII. Punitive Damages Are Unavailable Under GBL § 349 .........................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexandra v. Alcon Labs., Inc.*,
   2024 WL 623707 (S.D.N.Y. Feb. 14, 2024) (Halpern, J.)...........................................................5

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020)........................................................................................................10

*Bildstein v. MasterCard Int'l Inc.*,
   329 F. Supp. 2d 410 (S.D.N.Y. 2004).........................................................................................4

*Chufen Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2020)........................................................................................................1

*Colpitts v. Blue Diamond Growers*,
   527 F. Supp. 3d 562 (S.D.N.Y. 2021).........................................................................................4

*Cooper v. Anheuser-Busch, LLC*,
   553 F. Supp. 3d 83 (S.D.N.Y. 2021)...........................................................................................4

*Derbaremdiker v. Applebee's Int'l, Inc.*,
   2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ...........................................................................2

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
   790 N.E.2d 1155 (N.Y. 2003)......................................................................................................9

*Dimond v. Darden Rests., Inc.*,
   2014 WL 3377105 (S.D.N.Y. July 9, 2014) ...............................................................................2

*Dutchess Cnty. Dep't of Soc. Servs. v. Day*,
   749 N.E.2d 733 (N.Y. 2001).....................................................................................................8, 9

*Eidelman v. Sun Prods. Corp.*,
   2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017).............................................................................3

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013).........................................................................................................2

*Gift & Luggage Outlet, Inc. v. People*,
   756 N.Y.S.2d 717 (N.Y. Sup. Ct. 2003) .....................................................................................9

*Himmelstein v. Matthew Bender & Co.*,
   37 N.Y.3d 169 (2021) ..................................................................................................................3

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kahn v. Walmart Inc.*,
    107 F.4th 585 (7th Cir. 2024) ............................................................................3

*Marcus v. AT & T Corp.*,
    938 F. Supp. 1158 (S.D.N.Y. 1996)....................................................................7

*McKenna v. Wright*,
    386 386 F.3d 432 (2d Cir. 2004)....................................................................6, 10

*Newman v. RCN Telecom Servs., Inc.*,
    238 F.R.D. 57 (S.D.N.Y. 2006) ..........................................................................9

*O'Keefe v. Walgreens Boots All., Inc.*,
    172 N.E.3d 1159 (Ill. App. 2020) .......................................................................6

*Pizzaro v. Sazarac Co.*,
    2024 WL 4290647 (S.D.N.Y. Sept. 25, 2024).....................................................6

*Pyskaty v. Wide World of Cars, LLC*,
    2018 WL 11544551 (S.D.N.Y. Apr. 9, 2018).....................................................10

*Segvia v. Vitamin Shoppe, Inc.*,
    2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017) .....................................................5

*In re Sling Media Slingbox Advert. Litig.*,
    202 F. Supp. 3d 352 (S.D.N.Y. 2016)..................................................................5

*Tudor v. Jewel Food Stores, Inc.*,
    681 N.E.2d 6 (Ill. Ct. App. 1997) ........................................................................1

*Wise v. Combe Inc.*,
    2024 WL 1178851 (S.D.N.Y. Mar. 19, 2024) (Halpern, J.) ..............................5, 6

*Zuckerman v. VMG Direct Mktg., Inc.*,
    290 A.D.2d 330 (1st Dep't 2002) ........................................................................2

**Statutes**

Agriculture and Marketing Law...............................................................................8, 9

GBL § 349 ........... ……………………………………………………………… *passim*

GBL § 350 ........…………………………………………………………………2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

**Other Authorities**

1 NYCRR § 220.14............................................................................................................7

Fed. R. Civ. P. 12...........................................................................................................3

NIST Handbook 130 ....................................................................................................6, 7

This case was manufactured by Plaintiffs' counsel, using their own family members as Plaintiffs. Instead of being reasonable consumers who were deceived, Plaintiffs were informed of alleged price discrepancies at Dollar General and even took photos of the very items they claim that they were shocked to later learn had different prices at checkout. This does not add up, and Plaintiffs make little attempt to rebut the contrived nature of this lawsuit. Nor do Plaintiffs grapple with the significant shortcomings in their case—such as a complete failure to rebut Dollar General's expert evidence. Summary judgment should be granted here.

## I.    Plaintiffs Cannot Prove Dollar General's Conduct Is Materially Misleading.

**Fully Disclosed.** The alleged inaccurate shelf-label prices underlying Plaintiffs' claims are not materially misleading because the point-of-sale price was fully disclosed. Plaintiffs concede that a register display, before purchase, disclosed the point-of-sale price for each product and the total transaction price. 09-27-24 Mot. for Summary Judgment ("MSJ") at 7-9; 11-29-24 Opp. to Summary Judgment ("Opp.") at 5-6. Nor do Plaintiffs dispute the effectiveness of this disclosure: the register display permits a customer, including Plaintiffs, to accurately understand the point-of-sale price of each product before purchase.[1] *Id*. *Unrebutted* expert evidence shows that customers typically use safeguards like register displays to avoid a price discrepancy. MSJ at 13. These undisputed facts end their GBL § 349 claim.[2] "[T]here can be no [§] 349(a) claim when the allegedly deceptive practice was fully disclosed." *Chufen Chen v. Dunkin' Brands, Inc.*, 954

---

[1] Plaintiffs' comparison to reverse-side labels is inapt. Opp. at 4. Plaintiffs did not have to hunt for the accurate information. Instead, Dollar General directly disclosed that information.

[2] While the register display is sufficient, that *pre-purchase disclosure* is bolstered by *post-purchase disclosure* on receipts. It is undisputed that Plaintiffs' receipts disclosed the point-of-sale price. MSJ at 4; Opp. at 5-6. This disclosure is not "too late" in the process, as Plaintiffs argue, given the undisputed facts that Dollar General has a Price Match policy, which Mr. Wolf benefitted from, that allows customers to pay a lower shelf-label price. MSJ at 4-5; Opp. at 8-9; *see also Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 8 (Ill. Ct. App. 1997) (a "money-back guarantee if the scanned price differs from the shelf price" helped defeat consumer deception claim).

#199787945v7< - DG - Reply ISO MSJ

F.3d 492, 501 (2d Cir. 2020).

Plaintiffs try to avoid this result by arguing that the disclosure was ineffective because it was not included on the inaccurate shelf label.  Opp. at 5-6.  This argument ignores the totality of the circumstances giving rise to the transaction, and as the parties agree, "context is crucial."  *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).  While Plaintiffs ask the Court to consider the entire transaction to determine that they can prove a GBL § 349 claim, Plaintiffs then say the Court must turn a blind eye to the parts of that transaction that are fatal to their claim.  Plaintiffs cannot ignore those parts of the challenged transaction adverse to their theory of liability.  *See, e.g.*, *Zuckerman v. VMG Direct Mktg., Inc.*, 290 A.D.2d 330, 330-31 (1st Dep't 2002) (no GBL § 349 claim when the defendant's promotional materials disclosed the at-issue shipping charges); *Dimond v. Darden Rests., Inc.*, 2014 WL 3377105, at *1-2, 7-9 (S.D.N.Y. July 9, 2014) (similar); *Derbaremdiker v. Applebee's Int'l, Inc.*, 2012 WL 4482057, at *5 (E.D.N.Y. Sept. 26, 2012) (similar).[3]  The full context must include the register display and the receipts.

In sum, Plaintiffs' position is not supported by the law.  As they see it, a retailer who **inadvertently**[4] states an inaccurate price, but then informs the customer of the correct price before sale, is liable under GBL § 349.  That is not the law.  *Dimond*, 2014 WL 3377105, at *7 ("Where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to plaintiff, an action under GBL § 349 will not lie.").  Summary judgment is warranted.

**Reasonable Consumer Behavior.**  Separately, the alleged inaccurate shelf-label prices underlying Plaintiffs' claims are not materially misleading because Plaintiffs fail to prove that

---

[3] Plaintiffs try to distinguish cases because they "do not pertain to false advertising."  Opp. at 7 & n.2.  Plaintiffs did not bring a false advertising claim under GBL § 350, but a deceptive business practices claim under GBL § 349, *see* ECF 26, ¶¶ 57-66—which Dollar General's cases address.
[4] Plaintiffs point to no evidence to support their baseless allegations that "Dollar General's conduct was more than negligent."  Opp. at 24.

reasonable consumers would be misled.  Plaintiffs must prove that an inaccurate shelf-label price would be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Himmelstein v. Matthew Bender & Co.*, 37 N.Y.3d 169, 178 (2021).  Plaintiffs have no evidence about the impact of an alleged inaccurate shelf label on reasonable consumers in circumstances that undisputedly include: (1) the register display effectively conveys the accurate point-of-sale price before purchase; (2) the receipt conveys the accurate point-of-sale price after purchase; and (3) customers can use Dollar General's Price Match policy to obtain a price override or refund.

In contrast, Dollar General *has* evidence on this point, and its unrebutted expert testimony establishes that these safeguards keep reasonable consumers from being deceived.  MSJ at 13.  Plaintiffs have no response to Dollar General's expert testimony, which itself compels judgment.

Seeking to paper over their missing evidence, Plaintiffs incorrectly say that an inaccurate price on a shelf label will, as a matter of law and no matter the circumstances, mislead reasonable consumers.  Opp. at 4-5.  Their only cited authority for this proposition was a case assessing a similar allegation about reasonable consumer behavior under another state's law (Illinois), in another context (Rule 12(b)(6) review), and applying different standards (deciding only whether the allegation was "unreasonable" or "fanciful").  *See Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024).  And the Seventh Circuit recognized that its holding did not apply to summary judgment, when evidence and not just allegations mattered.  *See id.* at 600 n.7, 604.[5]

Plaintiffs are missing just that: evidence.  *See Eidelman v. Sun Prods. Corp.*, 2017 WL 4277187, at *3 (S.D.N.Y. Sept. 25, 2017) (collecting cases holding that whether reasonable

---

[5] To that end, *Kahn* specifically warns that its holding had no impact on a defendant's ability to introduce evidence proving that conduct does not deceive reasonable consumers.  107 F.4th at 600 n.7, 604.  And yet that is precisely how Plaintiffs use *Kahn*, wrongly arguing that *Kahn*'s holding about the plausibility of allegations under Rule 12 review somehow negates Dollar General's expert evidence that reasonable consumers would not be deceived.  Opp. at 8-9.

consumers would be deceived is an issue of fact that requires evidence to resolve).  They point to two pieces of evidence, but neither establishes that an inaccurate shelf price label would mislead reasonable consumers in these circumstances.  *First*, Plaintiffs point to a script for internal Dollar General training on price accuracy awareness that, among other things, explains that customers do not want inaccurate price statements on shelf labels.  Opp. at 8 (quoting DG_WOLF_0011319-21).  This observation—coinciding with Dollar General *also* wanting to avoid such inaccuracies, and thus the training, the register display, the receipts, and the Price Match policy—is not probative of whether reasonable customers would ultimately be misled by an inaccurate shelf label.

*Second*, Plaintiffs point to three instances, from millions of New York transactions, of customer complaints about price discrepancies.  Opp. at 8.[6]  But these customers realized that there were price discrepancies at the time of the sale, undercutting Plaintiffs' point.  *Id*.  And Plaintiffs lack evidence establishing that these customers are reasonable consumers who engaged in reasonable consumer behavior.  *See Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 104 (S.D.N.Y. 2021) (reasonable consumer behavior typically "cannot be resolved without surveys, expert testimony, and other evidence of what is happening in the real world").

**Materiality.**  Finally, Plaintiffs have failed to prove materiality.  Plaintiffs must show that an inaccurate shelf-label price was "misleading in a material way" so that it was "likely to affect [consumers'] choice of, or conduct regarding, a product."  *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 413-14 (S.D.N.Y. 2004).  Plaintiffs claim that *Bildstein* is bad law, Opp. at 10, but it continues to be cited for this point: materiality requires proof that the alleged deception impacts consumer behavior.  *See, e.g.*, *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562,

---

[6] Plaintiffs' exhibit includes several customer complaints, but many do not relate to the issue in this lawsuit: a shelf-label price that did not match the point-of-sale price.

583-84 (S.D.N.Y. 2021). Plaintiffs wrongly argue that this standard is a reliance requirement. *See In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360 & n.12 (S.D.N.Y. 2016). Given Plaintiffs' lack of evidence of materiality, MSJ at 15-16, summary judgment is proper.

## II.    Plaintiffs Cannot Prove Actual Injury.

Being deceived is not the same as being injured under § 349 "because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation." *Alexandra v. Alcon Labs., Inc.*, 2024 WL 623707, at *4 (S.D.N.Y. Feb. 14, 2024) (Halpern, J.). The crux of Plaintiffs' inability to establish injury is their failure to prove that inaccurate shelf-label prices were the *actual* value of their products, while higher point-of-sale prices were an "inflated" value. *See id*. After all, if the jug of milk Mr. Wolf bought had an actual value of $4.25 (what he paid) rather than $4.15 (the alleged shelf-label price that he did not see),[7] than despite the alleged deception, Mr. Wolf received the benefit of his bargain and Plaintiffs were not injured. *See id*. Plaintiffs' retort assumes that the point-of-sale prices were wrongfully inflated and the inaccurate shelf-label price was the product's value. Opp. at 10-12. But this is summary judgment; Plaintiffs need evidence to support that assumption.[8] *See, e.g.*, *Segvia v. Vitamin Shoppe, Inc.*, 2017 WL 6398747, at *4-5 (S.D.N.Y. Dec. 12, 2017) (summary judgment when no evidence of paying "inflated" price). Without evidence, Plaintiffs have not proven injury. *Id*. Summary judgment is warranted.

## III.    Plaintiffs Cannot Prove Causation.

"[C]ausation under the GBL" requires proving that the plaintiff "saw the relevant misleading statements before she purchased the products." *Wise v. Combe Inc.*, 2024 WL 1178851, at *6 (S.D.N.Y. Mar. 19, 2024) (Halpern, J.). Plaintiffs failed to do so. MSJ at 18-19.

---

[7] That Plaintiffs never viewed the shelf-label prices, MSJ at 18-19, further confirms that those shelf-label prices could not be a benefit of Plaintiffs' bargain lost by paying a different price.
[8] Plaintiffs' cited cases are all from the ***motion to dismiss*** stage of proceedings when a plaintiff's mere allegations are enough to establish injury. Opp. at 10-11. That standard does not apply here.

Plaintiffs say that their lack of evidence does not matter because, given that they paid a price premium, they can prove causation without having seen an inaccurate shelf-label price. Opp. at 12-13. But to prove a price premium, Plaintiffs must prove that their products' actual worth was less than what they paid, or that they would not have bought their products had they known the actual price. *See Pizzaro v. Sazarac Co.*, 2024 WL 4290647, at *14 (S.D.N.Y. Sept. 25, 2024) (collecting cases on how to plead a price premium under the GBL). But Plaintiffs have not proven, and cannot prove, having paid a price premium for any product. MSJ at 15-18. Their reliance on allegations and assumptions is insufficient at summary judgment. *See McKenna v. Wright*, 386 386 F.3d 432, 436 (2d Cir. 2004).

Under their own reasoning, without evidence of a price premium inherent to the purchase of their products, Plaintiffs needed to prove that they read the allegedly deceptive shelf-label prices before purchase. Opp. at 12-13. They cannot—there is no evidence that they purchased the products at issue because of the shelf price labels. Thus, their failure to prove their pre-purchase review means they cannot prove causation. *See Wise*, 2024 WL 1178851, at *6. Summary judgment is proper.

### IV.    The GBL Safe Harbor Provides A Complete Defense To Plaintiffs' Suit.

The National Institute of Standards and Technology ("NIST") "is a division of the U.S. Department of Commerce, which clearly qualifies as a regulatory body." *O'Keefe v. Walgreens Boots All., Inc.*, 172 N.E.3d 1159, 1163 (Ill. App. 2020). NIST publishes Handbook 130, which contains rules governing pricing accuracy at retail stores. MSJ at 19. To that end, courts often apply consumer protection claim safe harbors when, as here, NIST standards apply to the challenged conduct. *Id*. at 20-21 (citing cases). While Plaintiffs argue these cases are irrelevant because they involve a statute "which *specifically* incorporated the NIST," Opp. at 15, this point does not distinguish these cases. As in those cases, New York specifically incorporates the pricing

accuracy rules in NIST Handbook 130.  *See* 1 NYCRR § 220.14.  Even under Plaintiffs' argument, then, Handbook 130 has "preemptive force" given its adoption in New York.  Opp. at 16.

All to say, Dollar General's pricing accuracy conduct in New York *is* "subject" to a federal agency's rules in NIST Handbook 130.[9]  GBL § 349(d).  If Dollar General's pricing accuracy conduct "complies" with those regulations, compliance is a "complete defense" to liability.  *Id*.

It did comply.  Handbook 130 permits a 2% rate of price discrepancies ***at each store***.  MSJ at 19-20.  Contrary to Plaintiffs' argument, Dollar General's pricing accuracy conduct at the store where Plaintiffs allegedly experienced a price discrepancy *does not* fail Handbook 130's rules even if another Dollar General store, at some point, had a greater than 2% rate of price discrepancies.  Opp. at 17.  The evidence shows that the relevant store *always* complied with Handbook 130 by *never* having a greater-than 2% rate of price discrepancies.  MSJ at 21.

Nor can Plaintiffs avoid the GBL safe harbor by observing that their personal shopping experiences were not aimed at enforcing the regulatory scheme.  Opp. at 16-17.  The GBL safe harbor applies when the challenged conduct complies with rules and regulations, even when the plaintiff's experiences did not advance or enforce those regulations.  *See, e.g.*, *Marcus v. AT & T Corp.*, 938 F. Supp. 1158, 1173 (S.D.N.Y. 1996) (customers' GBL claims based on billing practices were barred because that billing conduct complied with a regulatory scheme).

In sum, Dollar General's pricing accuracy conduct at the store where Plaintiffs shopped complied with a federal agency's rules.  The GBL safe harbor applies and provides a complete defense to Plaintiffs' lawsuit.  *See* GBL § 349(d).  Summary judgment is proper on this basis.

---

[9] Plaintiffs note that Handbook 130 states that it does not, *on its own authority*, displace state law. Opp. at 14-15.  But that is not Dollar General's argument.  Instead, the GBL safe harbor permits compliance with federal rules like Handbook 130 to create a complete defense to liability.

## V.       The AML Specifically Governs Pricing Accuracy, Foreclosing A GBL Claim.

New York has a specific Agriculture and Marketing Law ("AML") that governs pricing accuracy at retail stores.  In a detailed statutory scheme, the AML requires, among other things, shelf-label prices to match the point-of-sale price.  AML § 197-b(2)(a), (b).  These requirements are enforced through specified procedures and allow each retail store to have up to a 2% rate of price discrepancies.  *Id.*, § 197-b(3)(a), (b).  "[O]nly" when there is a greater than 2% rate of price discrepancies at a store (or another violation of the AML), the commissioner or the municipal director of weights and measures may impose penalties of no more than $600.  *Id.*, § 197-b(4)(a), (b).  This specific statutory scheme in the AML, enacted in 2006, governs price discrepancies at Dollar General stores to the exclusion of a claim under the general prohibition of deceptive business practices in GBL § 349, enacted in 1970.  *See Dutchess Cnty. Dep't of Soc. Servs. v. Day*, 749 N.E.2d 733, 736 (N.Y. 2001) ("Another well-established rule of statutory construction provides that a prior general statute yields to a later specific or special statute.").[10]

Plaintiffs argue that these AML provisions do not foreclose their claims under the GBL because there is no conflict between the AML and GBL.  Opp. at 19-20.  That view is incorrect. Contrary to the AML: (1) Plaintiffs, rather than a commissioner, seek to impose liability for price discrepancies; (2) Plaintiffs seek to impose liability that exceeds $600; and (3) Plaintiffs would impose liability despite not showing a violation of the AML (including a failure to prove a greater than 2% rate of discrepancies at the store where they shopped).  The AML conflicts with Plaintiffs' GBL claim, and the AML governs given this conflict.  *See Dutchess*, 749 N.E.2d at 736.

Plaintiffs contend that, because the AML's explicit text does not prohibit a claim under the GBL, the AML presents no obstacle to a GBL claim.  Opp. at 19-20.  Plaintiffs cite no case where

---

[10] Because the AML is a *specific* law, it does not matter whether it is a *special* law.  Opp. at 18.

the specific statute had to explicitly identify the general statute, and *Dutchess* imposes no such

requirement.  When "the Legislature has promulgated a detailed and specific statutory scheme

prohibiting certain conduct, granting the [government] enforcement authority, and imposing

specific penalties for proven violations," that "comprehensive scheme" "specifically enacted" to

address the allegedly wrongful conduct governs at the exclusion of a GBL § 349 claim.  *Gift &

Luggage Outlet, Inc. v. People*, 756 N.Y.S.2d 717, 720-21 (N.Y. Sup. Ct. 2003). A GBL claim

imposing liability parallel to a specific scheme "would upset the statutory scheme and impose

double penalties for the same violation in a manner not intended by the Legislature." *Id*. at 721.[11]

So too here.  The AML specifically regulating price discrepancies governs and forecloses

Plaintiffs' claim under the GBL.  *See, e.g.*, *id*.  Summary judgment is warranted.

## VI.  Plaintiffs' Recovery Is Barred By The Voluntary Payment Doctrine.

Plaintiffs' GBL § 349 claim fails if there was full disclosure of the point-of-sale price and

Plaintiffs voluntarily paid that price.  *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,

790 N.E.2d 1155, 1156 (N.Y. 2003).  Dollar General proved, and Plaintiffs do not dispute, that the

register display effectively disclosed the point-of-sale price before purchase.  MSJ at 7-9; Opp. at

5-6.  This fact requires applying the voluntary payment doctrine to Plaintiffs' § 349 claim.  *See,

e.g.*, *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006).

Plaintiffs argue that there is a genuine dispute about full disclosure of the point-of-sale

price based only on the premise that a shelf-label price was different from the point-of-sale price.

Opp. at 23.  But Plaintiffs did not prove that they viewed the shelf-label price before purchase.

---

[11] Plaintiffs also say they can base a GBL claim on conduct that violates a different statute, even without a private right of action to enforce that other statute.  Opp. at 20-22.  This view does not answer the specific-versus-broader-statute principle that requires respecting that the Legislature's enactment of a statutory scheme governing specific conduct, with its own set of penalties, governs at the exclusion of a GBL claim.  *See Gift*, 756 N.Y.S. 2d at 720-21 (rejecting this same argument).

MSJ at 18-19; Opp. at 12-13.  Thus, an allegedly inaccurate shelf-label price, which Plaintiffs never read, does not create a genuine dispute about full disclosure of the point-of-sale price because the register display conveyed the point-of-sale price to Plaintiffs.  MSJ at 8.

### VII.  Plaintiffs Lack Standing To Seek Injunctive Relief.

Plaintiffs lack standing to seek injunctive relief.  As "past purchasers," Plaintiffs know the circumstances of the alleged misconduct and how to avoid any potential price discrepancy.  Thus, there is no threat of imminent, future harm.  *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147-49 (2d Cir. 2020).  Plaintiffs have no evidence showing likely future price discrepancies *at the store where they shop*, or that they cannot use their knowledge to avoid paying a point-of-sale price that is higher than a lower shelf-label price.  Opp. at 23-24.  Invoking policy, *see id.*, does not change the constitutional requirements to seek injunctive relief.  *See Berni*, 964 F.3d at 148-49.  Without evidence establishing Plaintiff's standing to seek injunctive relief, summary judgment is proper.

### VIII.  Punitive Damages Are Unavailable Under GBL § 349.

Plaintiffs cannot seek punitive damages under GBL § 349.  *Pyskaty v. Wide World of Cars, LLC*, 2018 WL 11544551, at *2 n.1 (S.D.N.Y. Apr. 9, 2018).  Moreover, Plaintiffs put forward no evidence to support an award of any punitive damages.  *See* GBL § 349(h).  Instead, the evidence disproves such damages.  MSJ at 25.  In response, Plaintiffs rely on mere allegations of intentional and willful conduct.  Opp. at 24-25.  Allegations alone are insufficient.  *See McKenna*, 386 F.3d at 436.  The Court should enter summary judgment on Plaintiffs' punitive damages claim.

### CONCLUSION

For these reasons and those discussed in Dollar General's motion, and for all other reasons apparent from the record, the Court should enter summary judgment for Dollar General.

Dated: January 15, 2025                                  DOLGEN NEW YORK, LLC
         New York, NY

10

By Counsel:

*s/ Philip A. Goldstein*
Philip A. Goldstein
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020-1104
Phone: (212) 548-2100
Fax:    (212) 548-2150
Email: pagoldstein@mcguirewoods.com

R. Trent Taylor (*Pro hac vice*)
Travis C. Gunn (*Pro hac vice*)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Phone: (804) 775-1000
Fax:    (804) 775-1061
Email: rtaylor@mcguirewoods.com
Email: tgunn@mcguirewoods.com

*Counsel for Dolgen New York, LLC*

11